FILED
June 23, 2009
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0001912502

DOWNEY BRAND LLP
R. DALE GINTER (Bar No. 100784)
JAMIE P. DREHER (Bar No. 209380)
KELLY L. POPE (Bar No. 235284)
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
dginter@downeybrand.com
jdreher@downeybrand.com
kpope@downeybrand.com

Attorneys for Official Committee of Unsecured Creditors

SCHNADER HARRISON SEGAL & LEWIS
GREGORY C. NUTI (Bar No. 151753)
KATHRYN N. RICHTER ( Bar No. 100129)
KEVIN W. COLEMAN (Bar No. 168538)
One Montgomery Street, Suite 2200
San Francisco, CA 94104-5501
Telephone: (415) 364-6700
Facsimile: (415) 364-6785

Attorneys for Bradley D. Sharp, Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>SK FOODS, L.P.,<br><br>        Debtor.<br><br>―――――――――――<br><br>In re:<br><br>RHM INDUSTRIAL/SPECIALTY FOODS, INC., a California Corporation, d/b/a/ Colusa County Canning Co.,<br><br>        Debtor. | Case No. 09-29162<br><br>Case No. 09-02161<br><br>Chapter 11<br><br>Docket Control No. FWP-1<br><br>OPPOSITION TO SCOTT SALYER'S MOTION FOR PROTECTIVE ORDER RE DEPOSITION AND COUNTER-MOTION TO COMPEL SALYER'S ATTENDANCE AT DEPOSITION AND FOR COSTS<br><br>Date:    June 24, 2009<br>Time:   10:00 a.m.<br>Dept:   D<br>Judge:  Hon. Robert S. Bardwil |

TO THE HONORABLE ROBERT S. BARDWIL, U.S. BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors in the above-captioned case (the "Committee") and Bradley D. Sharp, Chapter 11 Trustee (the "Trustee"), by and through their attorneys of record, hereby oppose Scott Salyer's Motion for Protective Order re Deposition and move this Court for an order compelling Scott Salyer ("Salyer") to appear and testify at his deposition on June 25, 2009 as re-noticed and for costs, including attorneys' fees for Salyer's failure to appear for his deposition noticed for June 22, 2009. In support of this opposition and counter-motion, the Committee and the Trustee respectfully represent the following:

## I.

## BACKGROUND

On June 9, 2009, the Trustee filed a Motion for Order Determining that Wastewater Discharge Agreements with Related Parties Constitute "Executory Contracts" for Purposes of 11 U.S.C. §365 (the "Wastewater Motion"). The Wastewater Motion seeks a determination that the purported termination of certain agreements between the Debtors and related parties SSC Farming, LLC, SSC Farms I, LLC and SSC Farms II, LLC (collectively, "Wastewater Affiliates") is not enforceable.

On June 18, 2009, this Court ordered that the Wastewater Motion is deemed to be an adversary proceeding, and set an evidentiary hearing on June 29, 2009. Because the Court set the evidentiary hearing on an expedited basis, the Court also ordered that the parties may take depositions on one business day's notice. The Court further ordered the parties to submit testimony of cooperative witnesses by way of declaration, exchange and lodge copies of their exhibits, and separately lodge proposed findings of fact and conclusions of law all on or before June 24, 2009.

Pursuant to the Court's scheduling order issued on June 18, 2009, the Trustee noticed the deposition of Salyer to take place on Monday, June 22, 2009, at 10:00 a.m. However, counsel for the Trustee was informed by Salyer's counsel that Salyer would not appear for his deposition. Accordingly, on June 19, 2009, Stephen Dye, counsel for the Trustee, sent a letter

1011332.3
2
OPPOSITION TO MOTION FOR PROTECTIVE ORDER

to Malcolm Segal, counsel for Salyer, asking for confirmation as to whether Salyer would appear for his deposition as noticed on June 22, 2009. A true and correct copy of Mr. Dye's letter is attached as Exhibit "A" to the concurrently filed Exhibit List in Support of Opposition to Scott Salyer's Motion for Protective Order re Deposition and Counter-Motion to Compel Salyer's Attendance at Deposition and for Costs ("Exhibit List").

Mr. Segal responded by letter on June 19, 2009 ("Segal Letter") that Salyer would appear for a deposition, but requested that the deposition be conducted on Thursday or Friday, June 25 or 26. However, Mr. Segal's offer to belatedly produce his client contained an unprecedented and unacceptable qualification that the Trustee's counsel provide an outline of the prospective questions so as to permit him to evaluate the proposed testimony. Mr. Segal concluded with a rather oblique statement that Salyer intends to appear, and the only question is "whether he can do so without jeopardy to his constitutional rights." A true and correct copy of the Segal Letter is attached as Exhibit "B" to the Exhibit List.

Mr. Dye responded that the Trustee expected Salyer to appear for his deposition as noticed. Mr. Dye further pointed out that it is not the Trustee's obligation to advise Salyer and his counsel in advance of the questions Salyer will be asked. A true and correct copy of Mr. Dye's email dated June 19, 2009 in response to the Segal Letter is attached as Exhibit "C" to the Exhibit List.

On Sunday evening, less than 24 hours before Salyer's deposition was scheduled to commence, Salyer filed a motion seeking an order that Salyer's deposition should not occur on June 22, 2009 as noticed, but instead should occur, if at all, on June 25 or 26, 2009. In addition, Salyer's motion requests an order requiring the Trustee to provide Salyer's counsel with an outline of his prospective questioning at the proposed deposition on or before June 24, 2009.

///

///

///

///

1011332.3

3

## II.

## COSTS, INCLUDING ATTORNEYS' FEES SHOULD BE AWARDED FOR SALYER'S FAILURE TO APPEAR FOR HIS DEPOSITION AS NOTICED ON JUNE 22, 2009

As noted above, the Court ordered that the parties may take depositions on one business day's notice. The Trustee properly noticed Salyer's deposition in accordance with the Court's scheduling order. Filing a motion for protective order does not excuse Salyer from appearing at his deposition. "[I]t is for the court, not the deponent or his counsel, to relieve him of the duty to appear." Pioche Mines Consol., Inc. v. Dolman, 333 F.2d 257, 269 (9th Cir. 1964).

Salyer is the key witness in this adversary proceeding. At the time that the agreements at issue in this adversary proceeding were purportedly terminated, Salyer controlled both the Debtors and the Wastewater Affiliates. In other words, Salyer controlled the parties on both sides of the agreements. Further, as alleged in the Wastewater Motion (deemed to be the complaint), the sequence of events leading up to the purported termination of the agreements suggests that the termination may have been motivated by Salyer's desire to leverage a favorable deal for himself. In addition, Salyer, as manager of several of the Wastewater Affiliates, has taken the position that the agreements are not executory because of the purported termination. It was therefore vital that the Trustee and the Committee have an opportunity to depose Salyer prior to the June 24, 2009 deadline to lodge proposed findings of fact and conclusions of law.

If the Court does issue an order continuing the deposition to June 25 or 26, it is not at all clear that Salyer will actually appear for deposition on the later date. Rather, several statements in the Segal Letter and in the motion for protective order suggest that Salyer may yet refuse to appear based upon his Fifth Amendment privilege. See Exhibit B (questioning whether Salyer can appear for deposition without jeopardizing his constitutional rights); Scott Salyer's Motion for Protective Order Re Deposition, pp. 1-2 (requesting order that the deposition scheduled by the Trustee should not occur on June 22, "but should instead occur, *if*

1011332.3
4

*at all*, on June 25 or 26, 2009") (emphasis added).

The Segal Letter badly misstates the issue of Salyer's Privilege by posing the false question of " . . . whether he [Salyer] can do so without jeopardy to his constitutional rights" Segal Letter, Last Sentence. There is <u>no</u> threat or jeopardy to Salyer's Fifth Amendment rights. His right against self-incrimination will be absolutely honored. Counsel for the Trustee and Committee recognize that Salyer may invoke his Fifth Amendment privilege to any question he wishes. Neither the Trustee nor the Committee pose any threat to Salyer's constitutional rights.

The law is clear that Salyer must appear for his deposition, regardless of whether he anticipates invoking the Fifth Amendment privilege in response to some of the questions. See Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1263 (9th Cir.2000).

If Salyer invokes his Fifth Amendment privilege, the parties have a right to incorporate this fact (and the consequences thereof) into the papers they submit to the Court in advance of the evidentiary hearing. The Trustee and the Committee therefore have a right to depose Salyer prior to the June 24, 2009 deadline to submit papers to the Court. This opportunity is now lost and will be discussed at the June 24, 2009, hearing.

If a party fails to appear for deposition, sanctions may be imposed even in the absence of a prior court order. Fed. R. Civ. Proc. 37(d)(1)(A)(i); Henry v. Gill Industries, Inc., 983 F2d 943, 946-947 (9th Cir. 1993). Further, unless the failure to appear at deposition was substantially justified or other circumstances make an award of expenses unjust, a court must require the party failing to appear at deposition, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure. Fed. R. Civ. Proc. 37(d)(3). Salyer failed to appear for his properly noticed deposition. He had no substantial justification for his failure to appear.

Accordingly, the Committee and the Trustee respectfully request that the Court issue an order compelling Salyer to appear and testify at his deposition on June 25, 2009 as re-noticed and for costs, including attorneys' fees for Salyer's failure to appear for his deposition noticed for June 22, 2009.
1011332.3

5

OPPOSITION TO MOTION FOR PROTECTIVE ORDER

# III.

# SALYER IS NOT ENTITLED TO AN OUTLINE OF QUESTIONS IN ADVANCE OF HIS DEPOSITION

Under the guise of a motion for protective order, Salyer requests that the Court order the Trustee to provide Salyer's counsel with an outline of his prospective deposition questions, for the purported purpose of assisting Salyer's counsel in evaluating whether the deposition sought by the Trustee will implicate Salyer's Fifth Amendment privilege. There is no legal basis for requiring the Trustee to provide an outline of his prospective deposition questions. Nor does Salyer need such an outline to evaluate whether and how to assert the Fifth Amendment privilege.

Deposition questions may relate to "any nonprivileged matter that is relevant to any party's claim or defense…" Fed. R. Civ. Proc. 26(b)(1). The complaint in this adversary proceeding contains an extensive statement of the facts upon which the Trustee bases his claims, including Salyer's alleged involvement and motives. Salyer and his attorneys therefore need only review the complaint to know the topics that may be covered at Salyer's deposition. Salyer and his attorneys do not need an outline of the deposition questions to consider the potential Fifth Amendment issues that may arise at the deposition.

From his motion, it is clear that Salyer has, in fact, already determined that the deposition may implicate his Fifth Amendment privilege. Thus, the only reason for the requested outline of deposition questions is so that Salyer and his counsel can decide in advance of the deposition exactly how to answer each question. That is not the way a deposition works.

Salyer cites no authority requiring a party to provide a deponent with an outline of the prospective questions in advance of a deposition. No such authority exists because, regardless of the potential Fifth Amendment issues, it is not the Trustee's duty to lay out his deposition questions to Salyer in advance of the deposition. Rather, Salyer must appear at his deposition and decide on a question by question basis whether to assert the privilege. See Doe ex rel. Rudy-Glanzer v. Glanzer, supra, 232 F.3d at 1263 (stating that "[t]he only way the privilege

10113323
6
OPPOSITION TO MOTION FOR PROTECTIVE ORDER

can be asserted is on a question-by-question basis, and thus as to each question asked, the party has to decide whether or not to raise his Fifth Amendment right"); Garcia-Quintero v. Gonzales, 455 F3d 1006, 1019 (9th Cir. 2006) (same); U.S. v. Feldman, 324 F.Supp.2d 1112 (C.D. Cal. 2004). Moreover, Salyer must claim the Fifth Amendment privilege personally rather than through counsel. See Garcia-Quintero, supra, 455 F.3d at 1019.

For example, in Feldman, the defendant who had been ordered to appear for a judgment debtor examination under Rule 69 and California Code of Civil Procedure § 708.110, filed an ex parte application for a protective order contending, among other things, that the judgment debtor examination would violate his right against self-incrimination. When the defendant did not appear for the examination, the court converted the ex parte application to a motion. Feldman, supra, 324 F.Supp.2d at 1115. In a published opinion, the district court denied the defendant's motion for a protective order, holding that the defendant's attempt to assert a blanket self-incrimination privilege was not acceptable. Id. at 1119. The court stated that the defendant must "present himself for questioning, and as to each question elect to raise or not to raise the defense." Id. (quoting United States v. Drollinger, 80 F.3d 389, 392 (9th Cir. 1996).)

Salyer is not entitled to the requested outline for an additional reason. An attorney's deposition outline is created in preparation for trial. It necessarily reveals the attorney's strategy and thoughts on what information to seek from a witness, and how to best obtain that information. As such, it is work product and is protected from disclosure. See Fed. R. Civ. Proc. 26(b)(3)(A); Hickman v. Taylor, 329 U.S. 495, 510-511 (1947).

The fact that Salyer anticipates asserting the Fifth Amendment privilege at his deposition does not give him the right to an advance peak at the Trustee's deposition questions. If a party was required to provide an outline every time the deponent raised the Fifth Amendment as an issue, every deponent would always claim that he or she needs such an outline to consider possible Fifth Amendment objections. Such a rule would defeat the very nature of a deposition by allowing every deponent to carefully craft answers in advance of his or her deposition.

For the foregoing reasons, the Committee and the Trustee respectfully request that the Court deny Salyer's request for an order requiring the Trustee to provide Salyer's counsel with an outline of his prospective deposition questioning.

IV.

**CONCLUSION**

For all of the foregoing reasons, the Committee and the Trustee respectfully request that the Court deny Salyer's motion for a protective order in its entirety, and issue an order compelling Salyer to appear and testify at his deposition on June 25, 2009 as re-noticed and for costs, including attorneys' fees for Salyer's failure to appear for his deposition noticed for June 22, 2009.

DATED: June 23, 2009           DOWNEY BRAND LLP

By: _____
R. DALE GINTER
Attorneys for Official Committee of Unsecured Creditors

DATED: June 23, 2009           SCHNADER HARRISON SEGAL & LEWIS

By: _____
KATHRYN N. RICHTER
Attorneys for Bradley D. Sharp, Chapter 11 Trustee