**FILED**

July 13, 2009

CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0001951937

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SK FOODS, LP, a California | ) | Case 09-29162-D-11 |
| Limited Partnership, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| RHM INDUSTRIES/SPECIALTY FOODS, INC., | ) | Case 09-29161-D-11 |
| A California Corporation, | ) | |
| d/b/a Colusa County Canning, | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |


---oOo---

Reporter's transcript of proceedings held at the

United States Courthouse, Sacramento, California on

THURSDAY, JUNE 25, 2009

Honorable Robert S. Bardwil, Presiding

---oOo---


Reported by:  Patricia A. Hernandez, CSR #6875

**DIAMOND COURT REPORTERS**

1107 2ND Street, Suite 210
Sacramento, California 95814
(916) 498-9288

```
 1              A P P E A R A N C E S

 2              – – – – – – – – – –

 3  FOR THE TRUSTEE:
    BRADLEY D. SHARP:        GREGORY C. NUTI
 4                           KEVIN W. COLEMAN
                             Attorneys at Law
 5                           SCHNADER, HARRISON SEGAL & LEWIS
                             1 Montgomery Street, Suite 2200
 6                           San Francisco, CA  94104-5501
                             (415) 364-6714
 7

 8

 9  SPECIAL COUNSEL FOR
    CHAPTER 11 TRUSTEE:      RICHARD A. LAPPING
10                           JOHN D. FREDERICKS
                             MARCUS O. COLABIANCHI
11                           Attorneys at Law
                             Winston & Strawn, LLP
12                           101 Calfornia Street
                             San Francisco, CA  94111-5894
13                           (415) 591-1485

14

15  FOR SSC FARMS, LLC;
    SSC FARMS ONE and
16  SSC FARMS TWO:           DONALD PUTTERMAN
                             Attorney at Law
17                           KASOWITZ, BENSON TORRES & FRIEDMAN,
                             101 California Street, Suite 2050
18                           San Francisco, CA  94111
                             (415) 421-6140
19

20

21  FOR THE OFFICIAL
    COMMITTEE OF UNSECURED
22  CREDITORS:               DALE GINTER
                             Attorney at Law
23                           Downey Brand
                             621 Capitol Mall, 18th Floor
24                           Sacramento, CA  95814-4731
                             (916) 444-7000
25
```

```
 1                    A P P E A R A N C E S

 2                    _ _ _ _ _ _ _ _ _ _

 3  FOR SCOTT SALYER:        PAUL J. PASCUZZI
                             Attorney at Law
 4                           Felderstein, Fitzgerald,
                             Willoughby & Pascuzzi
 5                           400 Capitol Mall, Suite 1450
                             Sacramento, CA  95814-4434
 6                           (916) 329-7400

 7                           MALCOLM S. SEGAL
                             Attorney at Law
 8                           Segal & Kirby
                             770 L Street, Suite 1440
 9                           Sacramento, CA  95814
                             (916) 441-0828

10

11

12  FOR BANK OF MONTREAL:    MARC A. LEVINSON
                             Attorney at Law
13                           Orrick, Herring & Sutclisse
                             400 Capitol Mall, Suite 3000
14                           Sacramento, CA  95814-4407
                             (916) 447-9200

15

16                           JAMES SPIOTTO
                             Attorney at Law
17                           Chapman & Cutler
                             111 West Monroe Street
18                           Chicago IL  60603-4080
                             (312) 845-3763

19

20

21  FOR NOR-CAL TOMATO
    GROWERS ASSOCIATION:     WILLIAM BATES
22                           Attorney at Law
                             BINGHAM McCUTCHEN
23                           1900 University Avenue
                             East Palo Alto, CA  94303-2223
24                           (650) 849-4998

25
```

```
1                    A P P E A R A N C E S

2                    - - - - - - - - - - -

3  FOR JP MORGAN CHASE
   EQUIPMENT FINANCE:        BRENT C. GARDNER
4                            Attorney at Law
                             Lewis & Roca
5                            40 N. Central Avenue
                             Phoenix, AZ  85004
6                            (602) 262-5739

7

8  FOR MORNING STAR:         JULIE OELSNER
                             Attorney at Law
9                            400 Capitol Mall, 11th Floor
                             Sacramento, CA  95814
10                           (916) 558-6000

11

12 FOR CAL-AP INTERNATIONAL,
   SELECT ONIONS, UESUGI
13 FARMS, DIAMOND FRUIT AND
   VEGETABLE, GILL ONIONS,
14 HIGUERAL PRODUCE AND
   RIVER POINT FARMS:        MARION I. QUESENBERY
15                           Attorney at Law
                             Ryan & Janowsky, LLP
16                           P.O. Box 20799
                             Oakland, CA  94620
17                           (510) 705-8894

18

19 FOR GENERAL MILLS
   OPERATIONS:               SAMUEL C. WISOTZKEY
20                           Attorney at Law
                             Kohner, Mann & Kailas
21                           4650 N. Port Washington Road
                             Milwaukee, WI  53212-1059
22                           (414) 962-5110

23

24

25
```

```
 1                   A P P E A R A N C E S

 2                   – – – – – – – – – –

 3  FOR OLAM WEST COAST &
    OLAM TOMATO PROCESSORS:  ALBERT J. BERRYMAN
 4                           Attorney at Law
                             Baker, Manock & Jensen
 5                           5260 North Palm Avenue, 4th Floor
                             Fresno, CA  93704
 6                           (559) 432-5400

 7                           MARK GORDON
                             Attorney at Law
 8                           McDonough, Holland & Allen
                             500 Capitol Mall, 18th Floor
 9                           Sacramento, CA  95814
                             (916) 444-3900

10

11  FOR B & G FOODS, INC.:   ROBERT GEBHARD
                             Attorney at Law
12                           Sedgwick Law Corporation
                             One Market Plaza, 8th Floor
13                           San Francisco, CA  94105-1101
                             (415) 781-7800

14

15  FOR CAL. CHILI,
    CURRY FARMS and
16  WINCHESTER FARMS:        EFFIE ANASTASSIOU
                             PETER WILLIAMS  (telephonically)
17                           Attorneys at Law
                             Anastassiou and Associates
18                           P.O. Box 2210
                             Salinas, CA  93902
19                           (831) 754-2501

20

21  FOR VAN BROTHERS:        MEGAN A. LEWIS
                             Attorney at Law
22                           Wilke, Fleury, Hoffett, Gould &
                             400 Capitol Mall, 22nd Floor
23                           Sacramento, CA  95814
                             (916) 441-2430

24

25
```

```
1                    A P P E A R A N C E S

2                    – – – – – – – – – –

3  FOR ODENBERG
   ENGINEERING:              DONNA PARKINSON
4                            Attorney at Law
                             Parkinson and Phinney
5                            400 Capitol Mall, 11th Floor
                             Sacramento, CA  95814
6                            (916) 449-1444

7

8  FOR WEST LAKE FARMS:      VINCENT ROLDAN
                             Attorney at Law
9                            DLA Piper, LLP
                             1251 Avenue of the Americas
10                           New York, NY  10020-1104
                             (212) 335-4569
11

12

13 FOR R.F. MacDONALD:       MICHAEL McQUAID
                             Attorney at Law
14                           Carr McClellan Ingersol Thompson &
                             216 Park Road
15                           Burlingame, CA  94010
                             (650) 342-9600
16

17

18 ALSO PRESENT:            BRADLEY D. SHARP, Trustee

19
                             GLEN CLARK, Managing Director
20                           LESLIE NOLAN, Vice President
                             Duff and Phelps
21

22                           STEVEN SMITH
                             Olam Food Processors
23

24                           STEVE PETERSON
                             FRED ROBBINS
25                           General Mills Representatives
```

```
 1                          ---oOo---

 2                  THURSDAY, JUNE 25, 2009

 3                        PROCEEDINGS

 4                          ---oOo---

 5        THE COURT:  All right.  Good morning once again.  This

 6   is the 10:00 o'clock calendar.  We have a number of things on

 7   regards to RHM Industrial Specialty and SK Foods, LP.  I will

 8   take courtroom appearances first.

 9        MR. COLEMAN:  Good morning, your Honor.  Kevin Coleman

10   and Greg Nuti, Schnader, Harrison, Segal and Lewis, proposed

11   counsel to Bradley Sharp, the Chapter 11 Trustee.  And Mr.

12   is present in the courtroom this morning.

13        MR. LAPPING:  Good morning, your Honor.  Richard

14   With me are John Fredericks and Marcus Colabianchi from

15   and Strawn, special counsel to the Chapter 11 trustee.

16        MR. GINTER:  Good morning, your Honor.  Dale Ginter of

17   Downey Brand, LLP, proposed counsel for the Official

18   of Unsecured Creditors.

19        MR. PUTTERMAN:  Good morning, your Honor.  Donald

20   Putterman,  Kasowitz, Benson, Torres and Friedman, LLP, for

21   Farms, LLC; SSC Farms One, LLC; and SSC Farms Two, LLC.

22        MR. PASCUZZI:  Good morning, your Honor.  Paul

23   Felderstein, Fitzerald, Willoughby and Pascuzzzi for Scott

24   Salyer.

25        Also in the courtroom is Malcolm Segal of Segal and
```

also for Scott Salyer

      MR. GARDNER:  Brent Gardner, Lewis and Roca, on behalf

Chase Equipment Finance, Inc.

      MR. LEVINSON:  Good morning, your Honor.  Marc

of Orrick, Herring and Sutclisse on behalf of Bank of

as agent for the secured lender group.

      MR. SPIOTTO:  Good morning, your Honor.  James Spiotto

from Chapman and Cutler on behalf of Bank of Montreal,

the secured lenders.

      MR. WISOTZKEY:  Good morning, your Honor.  Samuel

Wisotzkey of Kohner, Mann and Kailas in Milwaukee

General Mills Operations.

      Also in the courtroom with me today are

of General Mills, Steve Peterson and Fred Robbins.

      THE COURT:  All right.

      MR. GEBHARD:  Good morning, your Honor.  Robert

of the Sedgwick Law Group here for B & G Foods, Inc.

      MR. BERRYMAN:  Good morning, your Honor.  Albert

Berryman, Baker, Manock and Jensen along with Mark Gordon of

McDonough, Holland and Allen appearing for Olam West Coast,

Incorporated, and Olam Tomato Processor, Incorporated.

      Mr. Stephen Smith from Olam is also present in the

courtroom.

      THE COURT:  All right.

      MR. QUESENBERY:  Good morning, your Honor.  Marion

```
 1  Quesenbery of Ryan and Janowsky for Cal-Ap International,

 2  Diamond Fruit, Gill Onions, Higueral Produce, River Point

 3  Select Onion and Uesugi Farms, all pack and produce lien

 4  creditors.

 5        MR. BATES:  Good morning, your Honor.  Bill Bates,

 6  Bingham McCutchen, for Nor-Cal Tomato Growers Association.

 7        MS. ANASTASSIOU:  Good morning, your Honor.  Effie

 8  Anastassiou on behalf of Cal. Chili, Curry Farms and

 9  Farms.  We are all pack and produce lien creditors.

10        MS. LEWIS:  Good morning, your Honor.  Megan Lewis of

11  Wilkie, Fleury, Hoffelt, Gould and Birney representing Van

12  Brothers.

13        MS. PARKINSON:  Good morning, your Honor.  Donna

14  Parkinson, Parkinson Phinney, representing Odenberg

15  Inc., tomato sorters.

16        MS. OELSNER:  Good morning, your Honor.  Julie Oelsner

17  from Weintraub, Genshlea and Chediak representing the Morning

18  Star Group.

19        THE COURT:  Any other courtroom appearances?  All

20  There are none.

21        I will take phone appearances.

22        MR. WILLIAMS:  Good morning, your Honor.  Peter

23  of Anastassiou and Associates with counsel in the courtroom,

24  Effie Anastassiou, representing Cal. Chili, Curry Farms and

25  Winchester Farms.
```

1      MR. ROLDAN:  Good morning, your Honor.  Vincent Roldan

 2 DLA Piper, counsel for West Lake Farms.

 3      MR. McQUAID:  Good morning, your Honor.  Michael

 4 McQuaid, Carr, McClellan, Ingersol and Thompson representing

 5 R.F. MacDonald Company, Inc., equipment leasor.

 6      THE COURT:  Are there any other phone appearances?

 7      All right.  Mr. Coleman, you may proceed.

 8      MR. COLEMAN:  Thank you, your Honor.  Well, we do have

 9 number of things on the calendar.  We had filed late last

10 a proposed agenda for the hearing.  I don't know if you had a

11 chance to take a look at that.

12      THE COURT:  I did.

13      MR. COLEMAN:  I was actually going to suggest that we

14 take what is on the agenda slightly out of order because I

15 that resolutions that we have been able to reach will

16 substantially narrow the matters that the Court will be

17 to address over the course of the hearing.

18      THE COURT:  Before we do that let me just ask,

19 procedurally the initial motion to approve bidding procedures

20 and the order that resulted is motion control number RAL-212;

21 correct?

22      MR. COLEMAN:  I believe so, yes, your Honor.

23      THE COURT:  There were two subsequent motions filed in

24 the recent past, I believe around the 15th.  One was a motion

25 approve a sale and the second was a motion to assume an

contract.

A week ago or so the Court when it was dealing with housekeeping issues at the end of a hearing inquired as to the sale motion was necessary when I was of the opinion or at least the belief that the bidding procedures order really addressed the sale aspect, and the Court denied a motion or a request for an order shortening time on that specific motion. Do you recall?

MR. COLEMAN:  Yes, I recall the discussion.

THE COURT:  That is the motion that was the motion control number RAL-22 which appears to be on -- which appears be the motion control number under which the order was -- the sale order was proposed this morning.  The debtor renewed its request for an order shortening time on motion control number RAL-23, and I did grant that order shortening time.

So my understanding of what is on calendar today is RAL-21 and RAL-23, and I still am not sure why RAL-23 is necessary in that the order that was issued under motion number RAL-21 outlined and specifies the procedures for and assigning a contract.  I did look and tried to compare, the best I could conclude was that RAL-23 adds maybe a couple new contracts to the Exhibit A, and for that reason I granted the order shortening time with RAL-23.

Now, are you following me?

MR. COLEMAN:  Yes.

1    THE COURT:  So am I missing something, or today if the

2  Court issues an order approving the sale, it's under RAL-21?

3    MR. COLEMAN:  If I can allow Mr. Lapping to respond.

4    MR. LAPPING:  Yes, your Honor, that's fine.

5    THE COURT:  All right.  I just want to -- and

6  Mr. Lapping, RAL-23 which is the motion to assume and assign

7  contracts, I'm summarizing that the reason that that was

8  as opposed to the stand-alone order on RAL-21 is because

9  was a handful of contracts that were added to RAL-23?

10    MR. LAPPING:  That's correct, your Honor.  As we

11  proceeded we did add some, and that became one of the reasons

12  for the motion.

13    THE COURT:  All right.  I just wanted to

14  may proceed.

15    MR. COLEMAN:  Thank you, your Honor.  I guess what I

16  would like to take up first is a motion to approve the

17  post-compromise between the Trustee and to some extent other

18  parties and albeit SSC, all of the SSC farming entities with

19  regard to our disputes whether or not the waste water

20  agreements were properly terminated prior to bankruptcy.

21    THE COURT:  I applaud the parties.  I know that they

22  had a lengthy session and I know that they have been spending

23  lot of time preparing for the various activities in this case

24  and that they were successful in reaching a settlement that

25  mediated by Judge McManus.  The question is what notice has

1  provided?

2      MR. COLEMAN:  Well, we did serve notice last night

3  we filed the motion on the U.S. Trustees's office, the

4  for the Creditors' Committee and attorneys for the bank

5      I will tell your Honor that given the shortness of

6  we have not had time to broadcast notice to all creditors as

7  would be preferred in a circumstance like this but --

8      THE COURT:  What happens if I continue that hearing to

9  Monday and notice goes -- I will comment that I issued an

10  limiting mailing, and one of the aspects that mailing is

11  for is 9019 compromises.  So you would not have to -- I

12  would be the limited notice.  What happens if we proceed with

13  the sale motion and I simply continue the hearing on the

14  compromise to Monday?

15      MR. COLEMAN:  Well, I think the practical risk that we

16  face is that if we don't have an answer today, we have to

17  continue to, you know, prepare for the trial assuming that if

18  there is an objection and for some reason the Court does not

19  approve it.  I guess --

20      THE COURT:  I can tell you it would take something

21  am not -- let me comment.  I have reviewed the compromise.  I

22  understand the landscape of this case.  I am very much

23  to approve the compromise.  I just want to make sure T's are

24  crossed and the I's are dotted for appeal or any other

25      Is the trustee satisfied with the notice that has been

1  given for approval of the compromise?

2      MR. COLEMAN:  Well, I guess to answer the question

3  directly, I think that the notice was as much as we could do

4  under the circumstances.  I would not characterize it as

5      THE COURT:  Does that cause heartburn?  I mean my

6  is I am wondering if just prudence doesn't dictate to

7  the hearing on the compromise to Monday.  Is there a reason

8  to?

9      MR. COLEMAN:  Well, I guess what I would ask is if

10 address certain issues or certain aspects of the motion, give

11 parties an opportunity to address or raise any objections

12 they think that they might now get the Court's comments on

13 Then if we get through that, I would propose we do kick it

14 until Monday and we will get a fuller notice out and give

15 one last chance to complain about it.  But I guess what I

16 like to --

17     THE COURT:  You would like to have the Court address

18 today?

19     MR. COLEMAN:  I would, because if we can -- if we at

20 least understand that we are not going to be dealing with the

21 objections of anybody who is in the courtroom today, that

22 allow us to move forward with a variety of other things.

23     THE COURT:  All right.

24     MR. COLEMAN:  And we did want to get -- there is a

25 change to the proposed compromise with the SSC entities,

1  would want to put that on the record today.

2       MR. PASCUZZI:  Your Honor, may I address?  Paul

3  your Honor.

4       The problem with your Honor approving the compromise

5  today is that if -- without approval of the compromise, the

6  entities and the Salyer objections to the sale are not

7  So I understand the Court's concern about timing and

8  we are not prepared to go forward.

9       THE COURT:  Mr. Pascuzzi, let me ask you this:  I'm

10  presented with a conundrum or dilemna.  If notice -- if I

11  ruling, and I am fully aware that I can approve the

12  and it is my inclination that that's what I am going to do;

13  if notice is inadequate, who is that going to come back to

14  on its appeal?

15       MR. PASCUZZI:  Well, I understand, your Honor.  You

16  it's kind of an issue with sales and that we view this as

17  and parcel of your approval of the sale.  So certainly

18  some risks but there are also some protections to parties

19  sale that has been approved and to compromise in connection

20  the sale, and I would argue, your Honor, that all of these

21  issues have been T'ed up and that really in sum we are

22  our objection to the sale.  So in connection with the sale

23  hearing, that is what we are doing.

24       Now, certainly out of an abundance of caution and

25  to make sure that notice is the best as possible we T'ed it

```
 1  as a 9019 motion, but I think that the Court can approve the
 2  settlement today as a resolution of the objection to the sale
 3  and move forward with the sale today, which as you understand
 4  course is very important.
 5          THE COURT:  All right.
 6          MR. PUTTERMAN:  Donald Putterman for the SSC entities.
 7          Beyond endorsing what Mr. Pascuzzi had to say, your
 8  Honor, the settlement as modified yesterday which was
 9  by Mr. Coleman, if anything is more favorable to the
10  We were willing to gor -- we were willing to go along with
11  because we think that it is extremely important to resolve
12  get the sale done and keep the plant operating in time for
13  pack for the sake of the growers and the employees, and I
14  urge your Honor to move forward and approve it today.
15          MR. GINTER:  Good morning.  Dale Ginter on behalf of
16  Committee.
17          I appreciate the conundrum the Court is in with the
18  notice.  This has been a very difficult deal to bring the
19  parties together and more importantly perhaps to hold them
20  together, and I think that on balancing the risk the
21  would be in favor of your Honor going forward today.
22          THE COURT:  All right.  Let me ask, is there anyone in
23  the courtroom that opposes the compromise?
24          Well, before I do that, you say that there has been a
25  modification to the compromise?
```

1     MR. COLEMAN:  Yes, your Honor.  I can describe what --

2  I can describe the original proposal and then the

3  that was necessary.

4       Essentially under the agreement that was reached two

5  days ago with Judge McManus the Trustee agreed to pay a sum

6  equal to two years worth of the fees due under the relevant

7  discharge agreements at the time of closing, plus a cure --

8  amount required to cure defaults.  We estimate the aggregate

9  amount of that money to be something like 1.3 million

10  That money would be paid to the SSC entities, the counter

11  parties to those agreements.  It would be completely

12  from any later claims that may be asserted by the Trustee,

13  Creditors Committee subsequently and the Trustee and the

14  So the idea being that money was just hands-off completely

15  any claims by the estate because, as I believe you recall, we

16  have a pending complaint seeking substantive consolidation of

17  the assets of these entities and the estate.  So that was one

18  provision of the agreement.

19       The second was a condition to the SSC entities

20  obligation to go forward under the agreement was that the

21  Trustee obtain the agreement of the successful bidder at our

22  auction to purchase approximately 4 million dollars worth of

23  tomatoes that are being grown by the SSC entities and other

24  Salyer related -- the farming entity as we call it.  We were

25  unable to -- well, excuse me.  As with the -- or somewhat as

1 with the money that would be paid on account of the discharge

2 agreements, any money that was paid to the farming entities

3 under the tomato contracts would be free and clear of any

4 by, in this instance, the Trustee, any subsequently appointed

5 trustee, the Creditor Committee and the estate.  Not

6 any claims by the banks.

7          The last feature of the agreement was that the

8 would make his best efforts to obtain an agreement with the

9 successful purchaser of the assets to enter into an agreement

10 with another company called West Lake, West Lake Farms, I

11 believe, to do the harvesting.

12          THE COURT:  Right.

13          MR. COLEMAN:  And then in exchange for all of that,

14 discharge agreements would be modified to a two-year term

15 one-year option to extend.  We would have the ability to --

16                    ---oOo---

17              [Discussion off the record.]

18                    ---oOo---

19          MR. COLEMAN:  Oh, yes.  I'm sorry.  Then the executory

20 contracts would be -- they would be deemed executory

21 They would be modified.  We could assume them.

22          THE COURT:  Correct.

23          MR. COLEMAN:  Then the final feature of this was that

24 Mr. Salyer's daughters and their trust would be dismissed

25 without prejudice from our supplement consolidation action.

1        We attempted over the course of yesterday to try to

2   secure the agreement of Olam or the successful bidder to

3   purchase the tomatoes.  It was not possible to reach the

4   under which they were willing to do that, so we were facing a

5   situation of not being able to perform an essential condition

6   what had been the agreement prepared on Tuesday.  Since that

7   time we have had further discussions with the SSC entities,

8   they have agreed to modify the arrangements so that the

9   is only required to make his best efforts to secure the

10  the tomatoes.

11       And then in exchange for that, if he is successful in

12  getting a deal on the harvesting side of this, any funds that

13  get paid through, well, loosely described as the Salyer

14  would be free and clear.

15       THE COURT:  Enjoy the same protection?

16       MR. COLEMAN:  Enjoy the same protections, yes.  Not

17  protections from any claims by the banks but the more limited

18  protection that had been afforded to the tomato money.

19        The Official Committee of Unsecured Creditors has

20  negotiated for a provision that would cap the aggregate

21  of I guess what I will call the insulated money to $5.3

22  So I mean we believe that on balance the proposal is fair and

23  equitable; that, you know, as modified it certainly would

24  the standards of the ANC case.

25        So I guess I would ask -- before I go into that, I

1 would I ask for counsel of the SSC entities and Mr. Salyer if

2 they would conform their agreement to these terms?

3     MR. PUTTERMAN:  One slight correction.  I believe,

4 Honor, that the cap on the aggregate insulated money is

5 the aggregate of the tomato and the harvest, the tomato and

6 harvest money.  The cap does not apply to the waste water

7 contract money.

8     With that correction, your Honor, as I indicated a

9 few minutes ago, we gave up a -- I'm sorry.

10                    ---oOo---

11              [Discussion off the record.]

12                    ---oOo---

13     MR. PUTTERMAN:  Mr. Pascuzzi has just corrected me.  I

14 think the cap is to everything, including everything.

15     MR. GINTER:  That's correct.

16     MR. PUTTERMAN:  Okay.  My apologies, your Honor.

17 have been done a little bit rushed this morning.

18     We gave up a considerable benefit in the settlement

19 had been negotiated on Tuesday before Judge McManus, and that

20 was basically the certainty of having a home for a very

21 substantial tomato crop.  Nonetheless, balancing all of the

22 considerations, and again particularly bearing in mind the

23 employees of the debtors, many of whom have worked for many

24 years, and the growers who have had long-time

25 felt we had confidence in the Trustee's agreement to use his

```
 1  best efforts, and we felt that under the circumstances this
 2  the appropriate thing to do, and we do fully support the
 3  settlement.
 4         THE COURT:  All right.
 5         MR. PASCUZZI:  Paul Pascuzzi, your Honor.
 6         One other benefit to the estate that is described in
 7  papers and isn't a change or anything from what was in the
 8  motion is that the estate or the parties to the substantive
 9  consolidation proceeding waive any Rule 11 claim for the
10  of the daughters and their trusts in the adversary
11  and that is just for --
12         THE COURT:  But that was part of the initial
13         MR. PASCUZZI:  It was part of the initial settlement.
14  want to make sure as we were describing it, and we are in
15  agreement, your Honor.
16         THE COURT:  Okay.  Let me ask:  Is anyone opposing the
17  settlement as modified in court this morning?  I will take
18  courtroom appearances first.  All right.  No one in the
19  courtroom opposes the compromise as modified in the
20         Is there anyone on the phone making a phone
21  that opposes the compromise in essence which allows the
22  go forward, that opposes the compromise as modified in court
23  today?
24         MR. ROLDAN:  Your Honor, this is Vincent Roldan,
25  to West Lake Farms.
```

1      We are opposed to settlement at this point.  For the

2 record, West Lake reserves its right.  I didn't receive -- I

3 didn't receive the motion until -- the e-mailing receipt just

4 came in just a few moments ago.  It sounds as though on the

5 record that the settlement does not affect the assumption

6 contracts, the assumption of the West Lake contracts to a

7 successful bidder Olam, and if I could just ask the Trustee

8 counsel to Olam to make that clarification that West Lake's

9 contracts are not impaired by the settlement with the Salyer

10 entities, then I think we are okay.

11      MR. COLEMAN:  Your Honor, yes, I can confirm that

12 in the proposed settlement with the SSC entities would in any

13 way affect West Lake's rights.

14      THE COURT:  All right.

15      MR. GINTER:  Your Honor, if I might be heard a moment.

16 Could I request a brief recess while I go and attempt to

17 with my Committee?  We learned of this change at about 10:00

18 this morning, and I'm getting conflicting votes from my

19 Committee on this issue.  I don't presently have the

20 to agree to the deal that was just put on the record.

21      MR. BERRYMAN:  Your Honor, Albert Berryman for Olam.

22      I believe there was a question that West Lake's

23 addressed for Olam to comment on, and we understand the

24 that Trustee's counsel has represented, that there will be no

25 effect on the West Lake tomato contracts.

1          THE COURT:  I looked at the settlement terms this

2     and I did not see that it had any bearing on any other

3     contracts other than the contracts, the purported contracts

4     exist or don't exist between or among the parties now.

5          I will take a short recess, but I think that that is

6     something that needs to be figured out very quickly.

7          MR. GINTER:  Understood, your Honor.

8          THE COURT:  I will resume -- how long do you need?

9          MR. GINTER:  Could we do fifteen minutes, your Honor?

10         THE COURT:  All right.  I will resume at 11:15.

11         MR. COLEMAN:  Thank you, your Honor.

12                            ---oOo---

13                         [Brief recess.]

14                            ---oOo---

15         THE COURT:  Good morning once again and please be

16    All right.  Before we proceed I am going to implement a

17    make this proceeding go hopefully more smoothly.  Everyone is

18    instructed to turn off their cell phones.

19                            ---oOo---

20                     [Discussion off the record.]

21                            ---oOo---

22         THE COURT:  All right.  Mr. Coleman.

23         MR. COLEMAN:  Your Honor, thank you for allowing us to

24    take a break.  I think it was time well spent.  The ten or

25    fifteen minutes we were out in the hallway I think saved us

1  hours of proceedings before you and other things.

2      My understanding, and I'll ask Mr. Ginter to confirm,

3  is that the Creditors Committee is now fully supportive of

4  the agreement with the SSC entities as modified on the record

5  today.

6      MR. GINTER:  Yes, your Honor, the Trustee and I were

7  to speak with the Committee Chairman, and the Committee is

8  on board.

9      THE COURT:  All right.  I believe where we had left

10  then, I had polled those inside the courtroom and there was

11  objection to the compromise as proposed.

12      I polled those on the telephone, and I think we had

13  West Lake I believe it was.  The creditor just wanted

14  confirmation that it didn't alter their contract rights one

15  or the other.

16      Is there anyone on the phone that wishes to be heard

17  objects to the proposed compromise as modified?  All right.

18  There is no one.

19      All right.  Mr. Coleman.

20      MR. COLEMAN:  I guess, your Honor, I would ask that in

21  light of the fact that most of the interested parties in this

22  case are actually in the courtroom today, that you would

23  the compromise so that we can proceed with the other matters.

24      THE COURT:  With the parties understanding that

25  risk, I have given it thought and I have looked at the

1 compromise, I have considered the modifications and I am

2 prepared to go ahead and approve the compromise today.

3      With that, let me just -- what I anticipate doing is

4 the sale motion is approved today, I will put certain

5 on the record in regards to the exigent circumstances and

6 urgentness to have the debtor sell the assets, and this

7 compromise is a component that without the compromise the

8 would not go forward today and may not be able to go

9 all.  With the compromise which has been negotiated among the

10 Trustee, Mr. Salyer, some related entities, the Creditors

11 Committee and with the bank, the major secured lender, notice

12 has been short but there has been notice.  Most of the major

13 players are in court today or on the phone.  Nobody opposes

14 compromise.

15      Under these circumstances I am prepared to make

16 findings that, you know, in considering the likelihood of

17 success on the merits, the litigation involved and the amount

18 interest of the creditors, that it is appropriate to

19 compromise today.

20      I will comment, I think it's something of a gray area.

21 Mr. Pascuzzi indicated that, in essence, it's the horse

22 that takes place on the sales motion, and I don't know if it

23 needs to be approved as a compromise but for precautionary

24 reasons I will, though, approve the compromise.  Really it

25 seemed to me a majority of the actual concessions were in

1  agreement that, in fact, the underlying contracts are

2  in nature and may be assumed, quantifying the cure

3  things along those lines which often take place in the

4  of a sale and contract assignment motion.

5      But notwithstanding, under the circumstances of this

6  case I am prepared to go ahead and approve the compromise.

7      I would suggest two things before I leave this issue.

8  Mr. Coleman, if your office would submit an order shortening

9  time allowing for hearing of the compromise motion today at

10 10:00 o'clock consistent with the service that your office

11 affectuated or whomever it is yesterday afternoon or evening,

12 submit an order shortening time on that motion so that at

13 we have that procedural issue tied up.

14      MR. COLEMAN:  Would you like a motion along with

15 just submit the order?

16      THE COURT:  Well, did you not -- I thought a motion

17 filed today?  I looked at this document.  I thought that I

18 it was either a notice of the settlement or a motion to

19 the settlement.  There was a motion filed --

20      MR. COLEMAN:  There was a motion filed today.

21      THE COURT:  You may submit an order shortening time on

22 that motion as requested in open court today.  So you don't

23 to do an application, just recite the request for the order

24 shortening time in open court, under the circumstances it was

25 granted, and the notice can be consistent with the notice of

```
 1  the --

 2        MR. COLEMAN:  We'll do that, your Honor.  And then I

 3  have -- I think we can upload --

 4        THE COURT:  On the order approving the settlement, who

 5  it that is going to sign off on the form of that order?

 6        MR. PASCUZZI:  Your Honor, this is Paul Pascuzzi.

 7        I think we should as well as Mr. Putterman for the

 8  SSC entities.

 9        MR. COLEMAN:  I think we also would need the Creditor

10  Committee's counsel's signature.

11        MR. GINTER:  Yes.

12        MR. COLEMAN:  And the attorney for the bank group, the

13  agent for the bank group.

14        THE COURT:  All right.  You may submit an appropriate

15  order with those signatures.

16        MR. PASCUZZI:  Your Honor, one more thing in

17  with the settlement consistent with your Honor's statement

18  comments as to the urgency of that matter to the extent that

19  6004(h) or even 4001(a)23 with the ten-day stay, we ask that

20  the Court waive those to the extent they're applicable.  Also

21  number 3.

22        THE COURT:  Under the circumstances I'm prepared to go

23  ahead, and you may insert that in the order.

24        MR. PASCUZZI:  Thank you, your Honor.

25        MR. COLEMAN:  Okay.  I think that makes many other
```

1  on the agenda a little easier.

2      I guess what I would turn to is items or item 4 on the

3  agenda which is our -- well, which is Mr. Salyer's motion for

4  protective order and our counter motion to compel his

5  at a deposition.  I think that the resolution of the

6  mutes that motion.

7      THE COURT:  So calendar item number 2-RHM, that is a

8  motion for protective order, and the companion motion in the

9  SK Foods is calendar item 5.  Are those motions going to be

10 withdrawn or are they going to be denied?

11     MR. PASCUZZI:  Your Honor, to the extent they are

12 withdrawing their request to depose Mr. Salyer because that

13 in connection with the litigation over the discharge

14 that has now been settled, there is no needed for a

15 order.  So as long as they are withdrawing their deposition

16 request, we can drop the motion.

17     MR. COLEMAN:  Yes, your Honor, in light of the

18 of the settlement there is no need to go forward with the

19 deposition.

20     THE COURT:  So Mr. Pascuzzi, it is your motion.  Is

21 motion being withdrawn by the moving party?

22     MR. PASCUZZI:  Yes, your Honor.

23     THE COURT:  So calendar item number 2 and calendar

24 number 5, those motions are withdrawn by the moving party.

25      On the motion to approve the compromise, I'm assuming

1 that with the compromise the parties will also submit a

2 stipulation for dismissal of what I have turned into as an

3 adversary proceeding?

4      MR. COLEMAN:  We will also do that, your Honor.

5      THE COURT:  All right.

6      MR. COLEMAN:  Okay.  With that, I guess I would turn

7 podium over to Mr. Lapping who will address the motion to

8 approve the sale and the companion motion with respect to

9 executory contracts.

10      MR. LAPPING:  Good morning, your Honor.  Obviously we

11 have good news.  We do have a sale to approve.  I believe I

12 going to walk through this and try to take both motions at

13 same time since they are very inter related.  I'm going to

14 about APA that we filed with the exhibits and how that

15 from various other things, our report on the auction and our

16 conclusion of identifying the successful bidder.

17      I will walk through the various objections, and then

18 will need you to determine whether there are any that are

19 unresolved that need to be addressed.

20      We will talk about some various technical

21 adjustments that affect the scope of assumption assignment of

22 various documents.  We will talk about the due diligence that

23 was done, and we would like to proceed, if possible, by an

24 of proof but I'll explain that when we get there.

25      Then finally we have submitted -- I know that a red

of the proposed orders for the assumption and for the

can walk through those because obviously those terms I assume

your Honor will have some questions about, and we can offer

explanations, hopefully.

When we filed the asset purchase agreement, which was

negotiated at great effort, we included some exhibits, and

that I guess I want to focus on is Exhibit 1.5 and Exhibit

wherein the number of executory contracts and leases that

identified as being assumed by the buyer, Olam West Coast,

and actually its designee just for the record is Olam Tomato

Processors, Inc., will be the ultimate purchaser.  In that

process we did reduce the number of contracts from the cure

which was very long.  Now we have a shorter list, and it may

have gotten even shorter to some extent.

Then we also discovered in the technical side some

contracts that we need to assume, and we will describe to

Honor the stipulations we have with respect to that.

We held the auction yesterday.  It commenced

at 9:00 a.m. at the offices of Winston and Strawn in San

Francisco.  We only had one qualified bidder at that

second qualified or second bidder who initially qualified was

not able to obtain all of the qualifications and particularly

the funding for its operation post closing.

At the auction which because of the negotiations that

your Honor heard about earlier between, you know, in an

1 to add the Salyer settlement to and draft it on to the

2 purchase agreement, it actually was not concluded until 7:15

3 in the evening, at which point we went on the record and with

4 no other bidders determined that our stocking horse bidder

5 Olam was going to, in fact, be the winning bidder at 39

6 dollars as described in detail in the asset purchase

7      So we have a number of objections.  If I may, I would

8 like to walk through those basically in the order that they

9 appear on the docket.

10      Docket number 223 is an objection by Ed Curry, dba

11 Farms, based on the cure amount.  And the resolution of

12 that this particular contract will not be assumed.

13 is possible that it will be treated separately under our PACA

14 fund.  The banks have set up a fund to pay qualified PACA

15 after we do the final due diligence on their qualifications.

16 while it's not necessarily the case, we do have a fund for

17 But in the event that -- you know, to the extent that Curry

18 objected to the assumption of its contract, the answer is we

19 are -- it will not be assumed.

20      THE COURT:  Okay.

21      MR. LAPPING:  The next docket number 261 is Salinas

22 Valley Memorial Valley Systems.  Again, this was an objection

23 based on the cure amount, and again this lease, which is a

24 of an office building, will not be assumed.

25      Number 267, West Lake Farms, Inc.  West Lake's

1 is being assumed.  However, as noted on page 3 line 23 of the

2 objection, there is no amount presently owing.  The amount

3 was proposed is an amount that would essentially have been

4 if we had rejected the contract and represents the estimated

5 value of tomatoes going forward.  With the assumption of this

6 contract, those tomatoes will be paid for.  I believe that

7 agreed price -- and I will pause because I know West Lake's

8 attorney is on the phone.

9        MR. ROLDAN:  That's correct, your Honor.  I understand

10 that West Lake's contracts are being assumed, and I did

11 APA.  It appears all the liabilities under the contracts are

12 being assumed, including the payments of the tomatoes, so it

13 appears that our objection has been addressed.

14        THE COURT:  Those on the phone, you will need to

15 yourselves.  Mr. Roldan, go ahead and just state your name.

16        MR. ROLDAN:  Yes, your Honor.  I apologize for not

17 identifying myself.  Vince Roldan, counsel to West Lake

18 and I just spoke.

19        MR. LAPPING:  Item or rather docket number 271 through

20 273 was an objection from B & G Foods, Inc.  Again, the

21 resolution for that one is that we will not be assuming that

22 contract.  I believe counsel for B & G is present today.

23        MR. GEBHARD:  Yes, your Honor, that is me.

24        MR. LAPPING:  That was Mr. Gebhardt.

25        And item 284, the Bank of Montreal filed a protective

objection in the event that things went arye.  They have not,
I believe that objection has been resolved.

      MR. SPIOTTO:  Yes, your Honor.

      MR. LAPPING:  That was Mr. Spiotto.

      The Odenberg Engineering contract is being assumed.
is item -- or rather docket number 288 through 290.  I
that resolves the objection.  Counsel for Odenberg is

      MS. PARKINSON:  That's correct.

      MR. LAPPING:  We had a lengthy objection from Kraft
Foods, pleadings number 292 through 294 and 296 through 298.
Here again the resolution of that is that the contract will
be assumed.  I don't believe the counsel for Kraft is
but we are not assuming the contracts.  So the objection I
is rendered mute.

      Item or docket number 300 through 301 is an objection
General Mills.  Counsel for General Mills is present.  This
was a fairly involved compromise.  As part of the assumption
essentially we agreed to a cure amount that was acceptable to
General Mills.  We agreed with them that their equipment that
was owned by General Mills and is present as part of the
Williams plant in particular and possibly -- I don't think
had any in Lemoore but certainly in one of the plants that
asserted an ownership right, we conceded that, in fact, it's
true, they own the equipment.  It's not being sold, it is
being -- their contract will be assumed, in particular one of

1  their three contracts.  They identified several, but the one

2  that is really the operating one is from 2003 forward, and we

3  have a detailed explanation of how that works in the proposed

4  order for the assumption and cure of the contracts, the

5  assignment.  But esssentially that is the nub of it, that it

6  will be assumed, and they have agreed to reduced cure

7  order to enable us to do that and finance and get all of

8  parties to move in cohesion.

9        THE COURT:  Very well.

10        MR. WISOTZKEY:  Your Honor, Sam Wisotzkey on behalf of

11  General Mills.

12        I reviewed the red lines to the assignment order last

13  night, and that appears to accurately reflect the agreement

14  we reached with the Trustee.

15        THE COURT:  Very well.

16        MR. LAPPING:  Next we have a series of claims by

17  of Marion Quesenbery.  They are number 303.  I believe they

18  your clients, Diamond Fruit, number 304, Gill Onions, number

19  305, Select Onions, number 306, River Point Farms and number

20  308, Higueral Produce.  Again, these were all objections

21  on cure amounts.  They are potentially within the PACA funds

22  subject to due diligence.  The contracts will not be assumed,

23  and we believe that resolves those objections.

24        MR. QUESENBERY:  Yes, unfortunately it does, your

25  We hope to reach new agreements with Olam, but thank you.

1          THE COURT:  Very well.

2          MR. LAPPING:  The next objection that we received is

3    Chase Equipment Finance, Inc., numbers 309 and 310.  This one

4    was concluded by moving the -- essentially Chase had a

5    combination of leases and secured financing and it related to

6    equipment mostly in Williams but some in Lemoore, I believe.

7    The resolution of that was to -- on Exhibit 1.6 there is a

8    reflection of an amount that will be paid to Chase as part of

9    the proceeds to essentially cure defaults under the leases

10   essentially pay them off for the value of their equipment.  I

11   believe counsel for Chase is present.

12         MR. GARDNER:  Your Honor, Brent Gardner on behalf of

13   Chase Equipment Finance, Inc.

14         We have reached an agreement.  I haven't seen all of

15   signatures on that agreement but I understand that it's been

16   signed on by the Trustee and by the agent for the secured

17   lenders.  We have also signed that.  The agreement

18   that there will be approval of the sale and that the sale

19   close.

20         Now, it's a cart and horse problem that we have here

21   unlike the situation that we had with the executory contracts

22   wherein the -- if those anticipated things don't occur, if

23   sale doesn't close, then we need to be able to reserve our

24   objections.  So provided -- provided those things do happen,

25   then we have reached an agreement that the parties have

1  to.

2      THE COURT:  All right.  I was assuming that any

3  modification to an agreement is premised on the closing of

4  sales transaction.

5      MR. LAPPING:  That is the understanding, your Honor.

6      MR. GARDNER:  That is certainly the case with ours.

7      MR. LAPPING:  I am going to take one out of order,

8  Honor, because it actually wasn't filed but there was a

9  reference to it earlier, and it relates to Exhibit 1.6.  We

10  approached by R.F. MacDonald, and I believe their attorney is

11  the phone, about an assumption or cure of their lease.  It

12  unclear.  We viewed it as a financing, not an actual

13  we reached an agreement to pay $196,135 which was a final

14  payment, and I believe that is reflected on Exhibit 1.6.  I

15  believe their counsel is on the phone.

16      THE COURT:  All right.

17      MR. McQUAID:  Yes, your Honor.  Michael McQuaid for

18  R.F. MacDonald.

19      That is my understanding that we reached a stipulation

20  that R.F. MacDonald will be paid $196,135 on or before

21      THE COURT:  All right.

22      MR. LAPPING:  Going back to the docket order, we

23      MR. GARDNER:  Excuse me.  May I?  I'm sorry to

24  your Honor.  I just wanted to point out on the Chase

25  one of the things that it is subject to is Court approval of

1  that agreement.  We all contemplate that we will be

2  the Court some formalized motion to approve that agreement.

3      THE COURT:  Well, let me ask.  I was contemplating

4  it would be embodied in the sale order.  I mean I am not --

5  we looking -- I mean my understanding is that this needs to

6  close by the end of the month.  So if that is the case, you

7  not contemplating filing a new motion or is it a stipulation?

8      MR. GARDNER:  It's not something that we have really

9  addressed, but I'm certain that it can be done to coincide

10  the --

11      THE COURT:  I'll leave the parties to their own

12  on this but, you know, I guess what I am -- just off the

13  my head, we are not seeing that it would be something such as

14  motion we would have to set for a hearing, just a stipulation

15  embroiled in the sale order that I would receive is fine.

16      MR. GARDNER:  Your Honor, there is an agreement that

17  been signed by Chase and by the Trustee and by the agent

18  secured banks.

19      MR. SPIOTTO:  And I think it recognizes, as your Honor

20  mentioned, that it is all subject to the transaction closing.

21  We can attach that to the sales order if that is acceptable

22  just, you know, indicate in the order, put a paragraph in

23  your Honor has approved.

24      THE COURT:  Very well.

25      MR. SPIOTTO:  Thank you, your Honor.  That will work.

1          MR. LAPPING:  Let's see.  On docket -- Richard Lapping

2     again.

3          On docket numbers 332 through 334 we had an objection

4     from ConArga Foods.  We corresponded with them as well and

5     stipulated that we would not assume their contract, and

6     therefore their objection is muted.

7           The last three objections that we had based on the

8     amounts were from Scott Salyer, item or docket number 337,

9     Farming, et al, 339 and 338, I believe, and I believe those

10    objections are resolved by the current settlement.

11                         ---oOo---

12                 [Discussion off the record.]

13                         ---oOo---

14         MR. LAPPING:  They are not.  They are actually not

15    entirely resolved.  I think I'll let Mr. Pascuzzi address

16    this.

17         MR. PASCUZZI;  Your Honor, there are just some minor

18    points and I think they are really drafted of the APA.  On

19    fixed assets schedule there are some vehicles, eight

20    cars and some bins, 10,000 wooden bins that we contend are

21    property of the debtors.  I believe the cars have been

22    and I believe the bins have been removed, so it's a matter of

23    just verifying the eight trucks.

24         Counsel has represented to me that they are not trying

25    sell anything that the debtors don't own, and that they will

look into it and get it resolved.  I am comfortable with

your Honor, and if we have an issue, we will be back before

Court.

        The other issue has to do with how the discharge

agreements are dealt with in the asset purchase agreement.

        THE COURT:  Discharge agreements?  You mean the

contracts?

        MR. PASCUZZI:  The discharge contracts that we have

compromised, any issues about whether they were terminated.

There should be -- the way the asset purchase agreement is

structured is they are subcontracting the rights to Olam

those discharge agreements.  There should be three

because there are three discharge agreements, and counsel has

acknowledged that that is correct.

        I have an issue with one of the terms in the

regarding use, not purporting to restrict the owner's of the

property's use, only Olam's use.  That I believe will be able

get resolved as well.

        Then Section 1.10 of the asset purchase agreement

about the waste discharge property, and there are some issues

about whether that is an overly-broad description of the

property that is subject to the discharge agreements, but I

spoken to counsel about it and I am confident we will get

resolved with some drafting or some provisions in the order.

I believe we will get those resolved, your Honor.

1    I'm prepared to step down and let things move forward.
2 just ask that I sign off on the order so that we make sure we
3 get it done.

4       MR. LAPPING:  Your Honor, addressing these in order --
5 well, let me do them in reverse.

6       I think counsel pointed out to me what I understand to
7 a meets and bounds description of the land doesn't quite
8 coincide with what is actually in the contracts and that
9 can be reformed, we believe, under the terms of the order
10 allows for non material changes in the contract to be made
11 adjusted.

12        With respect to the bins, the bins are not part --
13 will not be sold.  They are not part of the contract.

14       My understanding is that the cars are still on the
15 subject to question of ownership is something that will be
16 decided.  We will only be selling them if what we own -- if
17 own it, and I'm not sure that we know how that will be
18 at this point.

19       MR. BERRYMAN:  Your Honor, may I be heard?  Albert
20 Berryman for Olam.

21       There are two vehicles that were discussed yesterday
22 I believe is what Mr. Pascuzzi and Mr. Lapping are
23 As we sit here this morning those vehicles are still on the
24 asset purchase list.  However, we have agreed to discuss
25 There is a concept over their ownership, that and SK.  The

1 Trustee has pointed out to us that he would not be able to

2 something that he doesn't own, and we acknowledge that

3 But I think people will agree as we sit here right now that

4 issue is not resolved.

5 　　　　MR. LAPPING:  That's correct, your Honor.  The cars

6 listed but the ownership is uncertain.

7 　　　　THE COURT:  All right.

8 　　　　MR. LAPPING:  I think the only other objection that

9 was to the sale itself, and I think that was also by the

10 Farming entities which I believe has now been resolved as

11 settlement is contingent on our approving the sale.

12 　　　　MR. PASCUZZI:  Correct, your Honor.

13 　　　　THE COURT:  All right.  The objections by Salyer,

14 Mr. Salyer and related entities in regard to the actual sale,

15 those objections have been approved?

16 　　　　MR. LAPPING:  I believe that's correct, your Honor.

17 　　　　THE COURT:  Mr. Pascuzzi?

18 　　　　MR. PASCUZZI:  Yes, Your Honor, contingent on approval

19 the settlement.

20 　　　　THE COURT:  All right.

21 　　　　MR. LAPPING:  I believe the only other objection

22 have that is a live one is the Morning Star objection.

23 an objection that basically, as I understand it, is that

24 are allegedly trade secrets that relate back to a dispute

25 had it's genesis it says in early 2006.  There is no evidence

submitted other than a representation that a complaint was
in State Court.

We think that the objection is not well taken.  As the
Court has already been informed, Morning Star is a competitor
these companies and would benefit from the liquidation and
piecemeal of their equipment so that they are not in
and its objection suggests that it does not identify any
secrets.  It's hard to envision what the trade secrets in the
tomato business really could be, and we believe that the
objection is not well taken.

THE COURT:  All right.

MS. OELSNER:  Your Honor, Julie Oelsner on behalf of
Morning Star.

We are not objecting to the sale as proposed today.
made a limited objection because there is litigation
State Court which is stayed by the operation of the filing of
this case.

The representation that we would have preferred
be piecemeal is totally irrelevant and untrue.  We simply
to put the parties on notice that due to this litigation, the
allegations are there and we do believe trade secret
documentation from Mr. [inaudible] as well as Morning Star
its entities may be in possession of the Trustee.  I asked
Trustee this morning if there could be some process made to
protect our alleged secrets that have been taken by a former

1  employee.

2        That is all that we are asking, your Honor, that both

3  parties are put on notice that.  Number one, we don't think

4  any of our trade secrets can be sold, and I don't think the

5  Trustee is saying that.  And secondly, that should any of our

6  trade secrets, confidential information or personal

7  be found by the Trustee or the buyer, that those are

8  and preserved, number one, as non assets to the estate and

9  they are evidence in the litigation.

10        THE COURT:  Ms. Oelsner, I thought I saw some language

11  the proposed sale order that dealt with your client's

12  Was I wrong?

13        MS. OELSNER:  I haven't -- I didn't see that.  I did

14  that the parties are -- that the buyer is required to protect

15  and keep the documents from the seller for seven years, books

16  and records for seven years.

17        THE COURT:  I was looking at prior things this

18  I could have confused it.  All right.

19        Well, let me ask this, Ms. Oeslner, what are you

20  for?

21        MS. OELSNER:  Well, perhaps, your Honor, some

22  to the Trustee that they take some action to protect any of

23  evidence and our trade secrets.  We don't want them

24  to a third party.

25        If the third party, the buyer obtains them, that they

1 can't be used, they can't be transmitted.  They are not

2 and I don't think the Trustee actually intended to sell

3 something that they don't own.

4      THE COURT:  Well, I guess there -- I am guessing that

5 there is a dispute as to what it is.

6      MS. OELSNER:  We have been barred from doing any

7 discovery so we couldn't be more definitive in our limited

8 objection.

9      THE COURT:  All right.

10      MR. LAPPING:  Your Honor, we don't have any budget to

11 undertake some sort of search and rescue mission for whatever

12 data.  We don't know what we are looking for, we don't know

13 where it would be, and I don't think there is any overt

14 to sell something that, you know, has been allegely secret

15 somehow.  I'm just not sure that there is a real denoting

16 whatever concern this is other than what might exist under

17 that may or may not be applicable to this situation.

18      THE COURT:  All right:

19      MR. BERRYMAN:  Albert Berryman on behalf of the buyer.

20      We heard about this by communication between counsel

21 Morning Star and Mr. Gordon about five days ago, I think, and

22 that is all that we know, and we don't know anything about

23 evidentiary basis for this or anything.

24      THE COURT:  My perception here -- my comment is that

25 Ms. Oelsner wants to put the parties on notice.  That

1  been given and the parties are proceeding accordingly;

2  that they are -- I don't think there is anything in the

3  order that is going to carve out a specific piece of

4  as that is an unknown.  So the sale will proceed with that

5  notice being provided.

6      MR. OELSNER:  Your Honor, I think that is a fair

7  representation.

8      THE COURT:  All right.

9      MR. LAPPING:  Well, that, your Honor, I believe -- I

10 think -- I believe that covers all of the objections that

11 aware of.

12     THE COURT:  All right.  Let me ask, does anyone object

13 the sale or to the assumption and assignment of contracts

14 than as has been outlined by Mr. Lapping?  All right.

15 no one.  We will proceed with the objections having been

16 resolved.

17     MR. LAPPING:  Your Honor, in the process of finalizing

18 the documentation we came up with some additional contracts

19 got added to the final version of the asset purchase

20 and my associate, Mr. Colabianchi, will describe the

21 and the process that we have undertaken.

22     THE COURT:  Was that the purpose of motion control

23 RL-23, in essence?

24     MR. COLABIANCHI:  That's correct, your Honor.

25     THE COURT:  All right.

1    MR. COLABIANCHI:  Marcus Colabianchi on behalf of the

2  Trustee.

3    Your Honor, Exhibit A to document control number RL-23

4  a comprehensive list of the documents or the agreements, I

5  should say, that the Trustee sought to assume and assign.  It

6  on the asset purchase agreement pared down list of the

7  agreements that the Trustee seeks to assume and assign.

8    There were three contracts in particular that were

9  after we filed the assumption motion, and those agreements

10 are -- the counter parties are Len K Hart, [ph.], Van

11 Glenn/Colusa Irrigation District.  They all pertain to

12 agreements.  Yesterday we reached a stipulation with all

13 counter parties.  They support the assumption of the

14 so those issues are resolved.

15    THE COURT:  All right.

16    MR. LAPPING:  Your Honor, if I could I would like to

17 proceed with the description of the due diligence and exigent

18 circumstances by offer of proof.

19    THE COURT:  All right.  You may.

20    MR. LAPPING:  We have in the courtroom today Mr. Glen

21 Clark who is a Managing Director of Duff and Phelps, and with

22 him is Leslie Nolan, [ph.], who is a Vice President of Duff

23 Phelps.  Both Mr. Clark and Ms. Nolan were instrumental on

24 behalf of the parties to get a sale put together.  I know

25 they were engaged initially on March 23rd of 2009 and

from the beginning that the ability to sell this plant --

that this plant had to be sold, these plants had to be sold

by the time that the tomatoes became ready to process, and

essentially -- we have been granted a little bit of a break

from good weather, but essentially everybody had July 1 as

date.

I think that both Mr. Clark and Ms. Nolan would

that time was of the essence and that they engaged in a

comprehensive and detailed listing of possible parties who

might be in a position in the industry to make a purchase of

this nature and of this magnitude.  After the list was

with senior management at both the banks and with the

a list of some 47 companies were contacted for the sale.  Of

these, some 42 expressed interest in possibly doing a

and ultimately 33 of these entities signed confidentiality

non disclosure agreements that enabled them to delve down and

take part in a review of the data room.

In addition, a data room was organized and created.

is a web-based facility in which all of the critical

that were either decided to be relevant or requested by

were placed and available for notice and view by potential

purchasers.

Tne site visits were conducted, meaning that 10 of

entities came out and visited the Williams and the Lemoore

sites, walked the facilities and were able to kick the tires,

figuratively, understanding what the nature of the process

going to be.

Finally we got down to the point where we had two

who had expressed a strong interest and submitted bids.

them was West Cal which was a newly organized entity that was

interested in purchasing the Lemoore facility only but was

unable to obtain financing for post-closing operations in

for the auction.  The second of course is Olam which was the

winning bidder.

We would submit that on the basis of these efforts by

these professionals who are experts in the food industry

the process of mergers and acquisitions of food companies,

the efforts comprised adequate exposure of these assets to

market, and that we have obtained solid evidence that we have

the best possible price under the circumstances.

THE COURT:  All right.  Does anyone object to taking

those statements by way of offer of proof?  There is no one.

They will be admitted.

MR. LAPPING:  Thank you, your Honor.  I also am aware

that in our proposed orders there is a request for a

good faith, and I believe your Honor has seen --

THE COURT:  The declaration of Stephen --

MR. LAPPING:  That's correct.

THE COURT:  Stephen -- is it Stephen Smith?

MR. LAPPING:  Stephen B. Smith, who is with us in the

courtroom today, has submitted a declaration in that regard.

THE COURT:  I am prepared -- is there anyone

finding of a good faith purchaser?

I am prepared to make that finding based on the record

and declaration of Mr. Smith.

MR. LAPPING:  Thank you, your Honor.

Finally we come to the orders -- the proposed orders.

We have with us a number of red line copies and I think -- I

believe these are red lined against the last proposed orders

that were submitted with the -- well, previously submitted in

the record.

THE COURT:  Mr. Lapping, let me ask, I mean one of the

things -- I have reviewed the proposed order.  I was given it

this morning and I looked at it briefly.  One of the things

jumped out at me is this motion, the order is persuant to

RAL-21, and that was the motion that approved the bid

procedures; correct?  I think that is what we --

MR. LAPPING:  Yes, your Honor, that's right.  We are

going to change that from 22 to 21.

THE COURT:  And the sale -- the 363(b) sale, and there

language in the proposed order that has this blanket 363(b)

language that I'm not comfortable with.

MR. LAPPING:  Well, your Honor, you mentioned that

last hearing, and we then sent out a revised notice of the

to add all of those provisions so that there was no question

1  that --

2       THE COURT:  But I mean a 363 sale, a 363(b) and a 363

3  sale, if there is a particular lien or interest that is

4  to having the assets be sold free and clear under one of the

5  enumerated items of the 363(f), I'm willing to consider that.

6  You can point me to the record.  But this blanket language, I

7  mean I have seen those orders before and the Court isn't --

8  not a title company, if you will.

9       Where I am going with this is even -- the language in

10  the order is that anybody that received notice under

11  Rule 2002, the assets are being sold free and clear of their

12  lien on interest.  If there is a particular lien or interest

13  that the assets are being sold free and clear of, I need to

14  that identified.  Service needs to be filed under Bankruptcy

15  Rule 7004 as they have a material interest in the

16  It's separate and apart from the notice requirement from a

17  363(b) sale.  Do you follow me?

18       MR. LAPPING:  Well, I think I do, your Honor.  I mean

19  there are a number of -- I mean all of the PACA leases, for

20  example, were selling free and clear of packing liens.  We

21  resolving them by essentially paying them off.  We are

22  free and clear of Chase liens.  We are selling free and clear

23  the R.F. MacDonald liens.

24       THE COURT:  All right.  Those are all by consent;

25  correct?

1    MR. LAPPING:  They are by consent, your Honor, and

2    is part of 363(f).

3    THE COURT:  And I go back to what I just said, that

4    particularly identified liens or interest that the assets are

5    being sold free and clear of, and if you can point me to

6    the enumerated provisions under 363(f) such as consent, I am

7    prepared to do that.  But it's the broad, all-encompassing

8    language that I am not comfortable with.

9    MR. LAPPING:  Well, your Honor, we believe that we

10   the consent of all of those parties.

11   THE COURT:  The parties that you just identified?

12   MR. LAPPING:  And possibly others because we have

13   received no objections, and I think the buyer -- the buyer's

14   expectations, and I will let them address this, is that there

15   you know, the idea was to provide broad notice so that if

16   anybody asserted a particular interest or lien --

17   THE COURT:  Well, two things --

18   MR. LAPPING:  -- that they could come forward.

19   THE COURT:  Two things.  Motion control number RAL-21

20   did not, to my recollection, talk about this all-encompassing

21   lien-free sale language.  The first time I saw it was in

22   control number 22 and that was -- there was an order denying

23   that motion being brought on shortened time.

24   MR. LAPPING:  Well, your Honor, I understood you were

25   denying the motion for shortening time.  I was not under -- I

1  did not realize you were --

2      THE COURT:  Well, then, the motion is not before me

3  today.

4      MR. LAPPING:  Well, I thought we -- we scheduled it

5  subject to providing notice, and which we did provide

6  all 3,500.  We blanketed -- all creditors received notice of

7  both motions.

8      THE COURT:  Well, let me hear from the buyers.  I will

9  share with you this has surfaced before.  Mr. Levinson, this

10 can't come as a surprise to you.  The same issue came up in

11 another case where if there is -- for a court to make a

12 lien-free sale, in my opinion it needs to specifically

13 a provision under 363(f) and their needs to be evidence

14 And if you are doing a sale free and clear of a lien, it's an

15 adversary proceeding as to that particular creditor's

16 and notice needs to be provided by 7004.

17      It's different if you are just giving notice of a

18 which you need to comply with 2002, but I will be surprised

19 this comes as news to anyone today that this has not been

20 pitched up, in my eyes, as some type of blanket wholesale

21 lien-free sale motion.

22      MR. BERRYMAN:  Your Honor, Albert Berryman on behalf

23 the buyer.

24      This element of the sale of these assets is critical

25 the buyer, and we added the APA agreement Section 5.8.2 that

1  the seller would obtain an order from the Court that these

2  assets are being acquired free and clear of any liens or

3  interest of any party and --

4      THE COURT:  Where does the Court get the authority for

5  that if you haven't identified -- I mean just from a due

6  standpoint if a lien is not identified?

7      MR. BERRYMAN:  Well, if there is some unknown lien

8  out there who did not get notice of this, I don't think we

9  say that they would be effected, but there was notice given

10  literally every creditor in this case that this agreement was

11  going to be submitted and a sale order was going to be

12  that would provide for the transfer of these assets free and

13  clear of all liens and interest, and this was a very

14  element, is a very important element to Olam.

15      MR. LAPPING:  Could I have one moment, your Honor?

16      THE COURT:  You may.

17              ---oOo---

18      [Discussion off the record.]

19              ---oOo---

20      MR. LAPPING:  Your Honor, I think the process that we

21  have engaged in has yielded a couple of things.  One, we did

22  identify a number of parties who stepped forward and

23  and we have resolved their objections, and they have leins

24  they have essentially consented.

25      THE COURT:  Then I am comfortable.

1    MR. LAPPING:  We are fine.  And then after that, I

 2  the Court's position is reconcilable with the provisions of

 3  agreements specifically in Section 5.8.1.

 4    THE COURT:  This is the asset purchase agreement?

 5    MR. LAPPING:  This is of the asset purchase agreement

 6  which 5.8.1 is under a general section called Bankruptcy

 7  Approval.  The specific approval that we are seeking is in a

 8  paragraph in the middle of that on the next page 17.  If

 9  scanning it, it's down in the middle.  The sentence begins

10  the words, "The sale order contemplated hereby --

11    THE COURT:  I have it highlighted.  "The sale order

12  contemplated --

13    MR. LAPPING:  It says "to the fullest extent allowable

14  under the Bankruptcy Code."  So it's not beyond any -- you

15  this isn't -- if for some reason there is an unknown, you

16  somebody has asserted a lien or an unexpired security

17  or, you know, something that somehow didn't get addressed,

18  either it's allowed by the Bankruptcy Code or it isn't.

19  think, you know, what the Court is raising is probably

20  consistent with the language of the contract.

21    MR. BERRYMAN:  Your Honor, Albert Berryman for the

22    I believe the Court has jurisdiction to obviously

23  the lien holders who are hereby consented and any other party

24  who would claim a lien who received notice of this sale

25  that their liens would be avoided --

```
 1        THE COURT:  Well, what is it --

 2        MR. BERRYMAN:  -- if they did not object.

 3        THE COURT:  If there is a lien-free sale of an

 4   of a creditor, what is the proper mode of service?

 5        MR. BERRYMAN:  I believe that the sale notice under

 6   Rule 2002 would be appropriate.  Any party who received

 7   of this sale motion and did not object can be bound.

 8        THE COURT:  All right.  Let's move on.  I understand

 9   issue.  Whether I agree is another question.

10        MR. LAPPING:  Well, your Honor, in light of that,

11   we should indicate that the motion to approve the sale goes

12   forward under docket control number 21 and 22 because it

13   understanding that in response to the Court's concerns that

14   went out and renoticed motion number 22 so that we added

15   these additional parties.

16        THE COURT:  Well, let me share with you, I was

17   see how things were lining up, and inconsistent with that

18   statement is that when I denied the order shortening time

19   motion to assume the contract, that was renewed.  That

20   application for order shortening time was renewed.  I

21   it and I granted that order shortening time.  I do not recall

22   subsequent request for an order shortening time on motion

23   control number RAL-23.

24        MR. LAPPING:  That's correct, and that is because we

25   understood that the Court had set -- you know, our initial
```

1  to shorten time was for last Friday,

2       THE COURT:  And I denied both of those.

3       MR. LAPPING:  Right, and we had understood that.

4  only thing we talked about at this hearing was the sale

5  We didn't bring up the executory contract motion.  We then

6  reset -- with the Court's direction we continued that hearing

7  today's hearing, Thursday, June 25th, and as a result it

8  calendar we believe based on the Court's direction.  What

9  failed to do was address with anybody the motion to assume

10  contracts, which is why we only submitted one request for an

11  order shortening time.  It was our understanding that --

12       THE COURT:  All right.

13       MR. LAPPING:  -- in both cases that we can go to

14  notice.

15       THE COURT:  I understand the lay of the land.

16       MR. LAPPING:  Okay.  I guess, your Honor, we can go

17  through the two orders, and I don't know, would you prefer

18  you ask me questions on the changes or --

19       THE COURT:  Well, I know that -- let's go ahead on --

20       MR. LAPPING:  Well, okay.

21       THE COURT:  -- the sale order.

22       MR. LAPPING:  The sale order.  I am taking the sale

23  first.  Obviously we are adding the name of the purchaser.

24  are filling out the definition of creditors and interested

25  parties.  We are indicating specifically that there was a

1  bidding, an auction at our offices yesterday, June 24th.

2  is in paragraph 8.

3       In paragraph 9 we have filled out the concept of

4  due diligence and the exigent circumstances.

5       On paragraph 11 a finding that -- or an order to the

6  affect that the sale outside of a plan of reorganization is

7  called for here.

8       New paragraph 13.  This is the modification that --

9  minor modification provision for the APA.

10       Paragraph 16 is new.  Again, this is I think answered

11  the offer of proof.  It has to do with the consideration

12  adequate.

13       Paragraph 17 is simply a build-out on the notion

14  Chapter 11 Trustee has full authority.

15       Those were all findings.  I apologize, I think I said

16  order, but findings.

17       Then new paragraph 24.  This is a reference to not

18  assuming successor liability, which I believe is consistent

19  California law that so long as a party does not assume

20  liabilities, they are not being assumed.

21       Paragraph 27 is a waiver of the ten-day stay under

22  Bankruptcy 6004(h), 6006(d).  I should add, however, that

23  notwithstanding that, it is a condition of the closing that

24  order become final, i.e., the ten-day --

25       THE COURT:  Right.

1    MR. LAPPING:  -- appeal period have lapsed.  I don't

2  to create the impression that our timing has somehow changed.

3        Paragraph 28 I think is again an authority point and

4  that there will not be later, you know, later efforts to

5  the agreement.

6        Paragraph 29 is again a build-out of the notion

7  are authorized or the Trustee, rather, is authorized to

8  documents.

9        Paragraph 31 are changes, potential changes in the

10  timing if the parties so agree.

11        And paragraph 32 I think is an explanation or an

12  abundance of caution type of provision related to excluded

13  assets.

14        THE COURT:  Well, this is what I am inclined to do:  I

15  want to look at that issue.  I am inclined to take a recess

16  resume at 1:00 o'clock.  I want to take a look at a couple of

17  issues on the lien sale assets.

18        MR. LAPPING:  That's fine, your Honor.

19        THE COURT:  All right.

20        MR. LAPPING:  And then paragraph 33 is a recital that

21  will help us in connection with --

22        THE COURT:  The rest of it I am satisfied with.  I

23  reviewed it.  But that is something that I want to take a

24  at, so let me do that, and we will resume at 1:00 o'clock.

25        MR. LAPPING:  Do you want me to address the assignment

1 order at all?

2       THE COURT:  I have taken a look at that and that I

3 have a problem with.

4       MR. LAPPING:  Okay.  We will change the number of

5 your Honor.

6       THE COURT:  Very well.  All right.  We will resume at

7 1:00 o'clock.

8       MR. LAPPING:  Thank you, your Honor.

9       MR. BERRYMAN:  Thank you, your Honor.

10                       ---oOo---

11                   [Lunch recess.]

12                       ---oOo---

13       THE COURT:  Good afternoon and please be seated.

14       Mr. Lapping, we were engaged in a discussion of the

15 status of sale and whether it's free and clear of all liens

16 claims or not.

17       MR. LAPPING:  Yes, your Honor.  Our thoughts after

18 Honor's comments are a couple:  One is that we did go out on

19 notice of the sale being free and clear to a large population

20 creditors and parties in interest that we could identify

21 on as many names as we could pull together from the

22 and I do know that we got a lot of calls from former

23 used to have some sort of relationship and it was expired and

24 longer had a relationship.  So we believe it was pretty

25       We think that there are two ways to look at it, both

which would lead to the approval of the order as written.

is that the order really only binds the parties who got

and so, you know, if a party in interest had a claim that we

didn't identify for some reason as being a particular

that they had notice.  So to the extent that a party has an

interest or secret lien that we didn't give notice to, then

there is an argument that they might have the ability to

that down the road.

However, I would add yet another point of view and

is the point of the view of the secured lenders in this case,

and that is that if they were conducting a foreclosure sale

selling all of these assets pursuant to an Article 9

which this is very analogous to, they have now given notice

only to all contractors on that list but they have given

publication very broadly in the USA Today I think as well

the Fresno Bee and the Sacramento Bee.

So you know, we believe that the notice and due

rights of all parties have been carefully observed.  Indeed

final step we gave notice to the 3,500 plus creditors on the

list six days ago, six days before this hearing, which is not

lot but in the scope of this particular hearing and given the

number of parties who have shown up, we think that, you know,

have given a lot of good notice.

THE COURT:  Mr. Lapping, did that mass mail out

this most recent motion along with the notice?

1    MR. LAPPING:  The motion itself?

         2    THE COURT:  Yes.

         3    MR. LAPPING:  No, your Honor.  It gave a three-page

         4 description, I believe, of the notice including recitation of

         5 all of the --

         6    THE COURT:  I thought I saw on the proof of service

         7 the motion itself was filed -- excuse me -- was served.

         8    MR. LAPPING:  We may have served that on a different

         9 list, your Honor.  I am fairly confident we didn't serve the

        10 entire motion on the 3,500 broader creditor list.

        11    MR. COLABIANCHI:  Your Honor, Marcus Colabianchi on

        12 behalf of the Trustee.

        13    THE COURT:  I am looking at a proof of service that

        14 served June 17th and it's 20 pages.

        15    MR. COLABIANCHI:  That's right, your Honor, we did

        16 provide -- we did serve not only the OSC application but the

        17 underlying motion, the sale motion or Rule 22 on all the --

        18    THE COURT:  The ones that are limited to the special

        19 notice request or was that served on everyone?

        20    MR. COLABIANCHI:  That was served on a total of 520

        21 parties, your Honor, by U.S. Mail first class.

        22    THE COURT:  And where is the notice that was served on

        23 everyone?  I am looking at docket control number 22.

        24    MR. COLABIANCHI:  That I believe, your Honor, is

        25 number 383, and it relates to the notice  -- the amended

1   of auction and sale, and that is docket number 381.

2          THE COURT:  Well, see, that doesn't --

3          MR. COLABIANCHI:  And in that amended -- in that

4   notice, your Honor, we did specify on page 2 of the sale

5   and I quote, "The statutory basis for the sale and the sale

6   motion is 11 USC Section 363, including but not limited to

7   following subsections:  (b), (d), (f), (h), (i), (j), (k),

8   and (m)."

9          THE COURT:  But it doesn't say that you are selling it

10  free and clear of everyone's interest.  It just references

11  code sections.  Well, hold on.  Let me take a look at this.

12           Is there anywhere in this notice that says you are

13  selling the assets free and clear of the liens?

14         MR. LAPPING:  We are not finding it, your Honor, as

15  You know, there is a bold --

16         THE COURT:  Let me share with you, when I took the

17  I was trying to come up with a solution to an issue here, and

18  mean there is two things that I was concerned about.  One

19  Court making a finding under 363(f) to sell free and clear of

20  liens, and my thought was you could by way of offer of

21  have the Trustee come up and say other than the creditors

22  have consented to the sale, any other third party, and the

23  secured lender, any other third party that received notice of

24  this lien-free sale, if they are claiming a lien, it's in

25  dispute.  Do you understand?  That would then give the

least a basis for finding to the extent there is any other

out there that is in dispute.

As far as notice, I still am of the opinion that if

are going to do a lien-free sale, that it's prudent to do so

under Bankruptcy Rule 7004.  Under the circumstances of this

case, I feel I can -- to the extent creditors have received

notice of a lien-free sale, I can approve it with the 2002

notice given under limited -- you know, this is not the

general position but under these circumstances, I can.  But

I don't see anywhere in this notice that it says this is

to be a lien-free sale.

MR. LAPPING:  Well, your Honor, it does so only by

inference.

THE COURT:  All right.  Well, let me ask Mr. Gordon --

Mr. Berryman, I mean.  I am trying to get from point A to

point B.  I will note that some 500 creditors received the

motion.  It does indicate a lien-free sale, and I am prepared

the Trustee puts on evidence that to the extent any of those

creditors assert an interest, a lien in the property, it's

disputed free and clear of those liens.

My comment is I am sure your clients have done the

requisite due diligence, and this is a sale that any claim

pop up in that due diligence period.  But you know, for some

other creditors of the estate that really haven't been

that this is a lien-free sale, I am not prepared just to

1  randomly put that in the order.

2       MR. BERRYMAN:  Your Honor, I don't have any resolution

3  other than to suggest that any creditor who did receive

4  and did not object to a lien-free sale is going to be bound

5  the order.

6       THE COURT:  I'm saying that I think -- I mean, again,

7  it's not an ideal situation, but I think that what we could

8  today based on one, the Trustee offering testimony to the

9  other than the creditors that have consented, if anyone else

10 that has received notice of the lien-free sale asserted a

11 it would be in dispute, is not aware of any other liens that

12 they have, and the ones that have received the motion and the

13 notice, it does in those documents explain that it's a lien-

14 sale.

15      But this notice that went out to the general matrix, I

16 don't see language in there that indicates a lien-free sale.

17      MR. BERRYMAN:  Your Honor, I don't know about -- I

18 understand this was an amended notice, and if there was a

19 previous notice that was served on the greater creditor body,

20 can we deem that this amended notice just simply

21 hearing?

22      THE COURT:  That initial notice -- you can correct

23 I am wrong, but that initially notice was silent in regards

24 any lien-free sale.

25      MR. LAPPING:  I believe your Honor pointed out that

1  was no reference to 363(f), and from memory I believe that

2  is correct.  The Trustee could indeed testify that we have

3  a comprehensive listing of what we believed were the parties

4  with interests; and that indeed if anyone stepped forward at

5  this point, that that would be a disputed interest.

6          MR. BERRYMAN:  Your Honor, if I could have about five

7  minutes to confer with our clients?

8          THE COURT:  That would be fine.  Do you want to take a

9  brief recess?

10         MR. BERRYMAN:  Please.

11         THE COURT:  Is five minutes a sufficient amount of

12         MR. BERRYMAN:  Your Honor, I would ask for ten.

13         THE COURT:  Very well.  Just let the Deputy Court

14  know when you are ready to go forward.

15                        ---oOo---

16                      [Brief recess.]

17                        ---oOo---

18         THE COURT:  Please remain seated.  All right.

19  Mr. Lapping?

20         MR. LAPPING:  Your Honor, counsel with sharper eyes

21  mine have looked at this order again -- I'm sorry -- at the

22  amended notice and have drawn our attention there to a

23  that has the reference to Section 363, and then one, two,

24  the fourth paragraph after that begins with all bold --

25         THE COURT:  Correct.

1    MR. LAPPING:  -- and ends with the phrase, "--

2  the transfer of the property free and clear of interests and

3  encumbrances."  And this is going out to 3,800 parties that

4  been identified as having potential interests in or potential

5  claims.

6    THE COURT:  Well, I will comment that the eyes that

7  looked at this are better than yours and mine because I did

8  see it either.

9    MR. LAPPING:  Actually, your Honor, I remember

10  it now, and my memberly is short as well.

11    THE COURT:  All right.  I have looked at the language.

12  That notice did go out to all creditors listed on the matrix.

13  It is close to the language that I was looking for, not

14  reference to a number of code sections.

15    I am prepared to have you proceed either by way of

16  of proof or put the Trustee on, but what I think is

17  is evidence to the extent any other claim holder or creditor

18  other than those that are consenting to the sale and liens

19  by the bank consenting to the sale, that any other claim

20  the assets would be in dispute.

21    MR. LAPPING:  Your Honor, I think I would offer that

22  could put on evidence if not directly from the Trustee, from

23  others in the courtroom, including the Duff Phelps people who

24  helped set up the data room, that there was a comprehensive

25  listing of everybody who had ever filed a UCC claim, who had

1 ever showed up on any of the title records that related to

2 of the real property, there was a comprehensive effort to

3 identify creditors and any party --

4     THE COURT:  And I am assuming that.  Although it's not

5 stated here, but I think the presumption here is that the

6 body of creditors that simply received this notice, you are

7 aware of any claim that they have, any secured claim that

8 have?

9     MR. LAPPING:  That's correct, your Honor.

10     THE COURT:  And accordingly it would be disputed is

11 I would expect the position to be.

12     MR. LAPPING:  Your Honor, the Trustee is over there

13 nodding in agreement to your statement.

14     THE COURT:  Well, again, unless someone wants to

15 it will be done by offer of proof.  If you want to put Mr.

16 up, have him sworn in and solicit that testimony.  I'm

17 leave that up to you.

18     MR. LAPPING:  I would go by offer of proof, your

19     THE COURT:  All right.  Does anyone object to the

20 by way of offer of proof in so much as advising or indicating

21 that any creditor that has not consented to the sale, that

22 lien that would be asserted by those third parties is in

23 dispute?

24     MR. BERRYMAN:  No objection by Olam, your Honor.

25     THE COURT:  All right.  By the silence I am assuming

1  may proceed by offer of proof.

2      MR. LAPPING:  Thank you, your Honor.  Beyond that,
3  are some clean-up items that we --

4      THE COURT:  I think you will need to present --

5      MR. LAPPING:  Oh, your Honor, I do make this offer of
6  proof:  That anybody who would at this point show up and
7  any kind of an interest or a lien on the property, that the
8  Trustee would assert and take the position that that lien was
9  disputed.

10     THE COURT:  Other than those consenting to the sale?

11     MR. LAPPING:  Other than those consenting to the sale.

12     THE COURT:  All right.  It is accepted and admitted.

13     MR. LAPPING:  Thank you, your Honor.

14     THE COURT:  All right.

15     MR. LAPPING:  Counsel for the California Tomato
16  Association has pointed out that in our order assigning
17  executory contracts that we are purporting to assign expired
18  leases.  I'm sure we meant to say unexpired leases, and we
19  correct that.

20         Counsel for the Salyer entities, Mr. Pascuzzi, has
21  approached the parties in interest and has requested that the
22  order contain a provision to the effect or the following
23  provision which everybody, I understand, is in agreement

24             "The Court reserves jurisdiction to

25             resolve any dispute between the Trustee,

```
 1                    the buyer, and any other party in

 2                    interest over whether certain vehicles

 3                    and bins listed on Exhibit 1.6 to the

 4                    purchase agreements are property of the

 5                    debtors, and this sale order does not

 6                    authorize the sale of any property that

 7                    is not property of the debtors."

 8          THE COURT:  All right.

 9          MR. LAPPING:  I understand that Odenberg Leasing may

10   amend the contract or lease numbers applicable to their

11   contracts or leases.

12          MS. PARKINSON:  That's correct.

13          MR. LAPPING:  Okay.  And we'll have that amendment.

14          I think beyond that we just need to confirm that the

15   order as amended both on the record here today and in the red

16   line version submitted to the Court and to the parties

17   with the terms of the APA in the view of the buyer.

18          MR. BERRYMAN:  Agreed, your Honor.

19          THE COURT:  All right.

20          MR. LAPPING:  Your Honor, I think that is all that we

21   had.  If the Court is inclined to approve these orders, then,

22   amended --

23          MR. FREDERICKS:  Your Honor, John Fredericks of

24   and Strawn on behalf of the Trustee.

25          One other comment on the order.  I think we have
```

1  raised this so it's more by way of clarification, but Chase

2  Equipment Finance has, as we have discussed earlier,

3  that we attach the agreement between the Trustee, the

4  banks and Chase to the order, and we will be making a

5  other revisions to the order that clarify that the Trustee

6  be performing in accordance with the agreement that is being

7  attached.

8          THE COURT:  All right.

9          MR. McQUAID:  Your Honor, Michael McQuaid on behalf of

10  R.F. MacDonald.

11          Earlier Mr. Lapping recited that the stipulation had

12  reached with MacDonald, and I just wanted to make sure that

13  stipulated cure amount of $196,135 and the stipulation of

14  will be paid on or before closing is included in the order.

15          MR. LAPPING:  Your Honor, we have a provision in there

16  that all funds that are to be paid at close, that we actually

17  have a 15 day window to effectuate that.  They are being paid

18  out of an escrow, and we want to make sure that we don't --

19  we leave ourselves a little bit of room in the event that

20  payment is somehow overlooked but that was intended to be

21  Our intent is to pay everything at closing out of escrow.

22  you know, we built in some space for errors and effectuating

23  that.

24          THE COURT:  All right.

25          MR. GINTER:  Dale Ginter on behalf of the Committee.

At paragraph 28, the last sentence of the order, I

with Mr. Spiotto earlier, that purports to cut off any rights

challenge the bank's claim in the final cash collateral

The Committee has for a period of time preserved its right to

challenge the bank's unsecured claim, and we are going to

that sentence to provide that subject to the final cash

collateral order, and the purpose of that is to resolve any

conflicts between the two and to preserve the Committee's

as contained in the final cash collateral order.

         MR. BERRYMAN:  Your Honor, we found a two-word

that we think would clarify something.  In paragraph 32 of

red line order at line 24 on page 8, the term "excluded

is included in that paragraph.  I think that it should add

two words "as defined" between the word "assets" capitalized,

and the phrase "in the purchase agreement" because I don't

there is any reference in this order to capital terms

same meaning that they have in the asset agreement, but I

believe that is the intent of this provision.  The excluded

assets as defined in the APA are not being transferred.

         THE COURT:  Correct.

         MR. BERRYMAN:  But the term excluded assets is not

defined anywhere else in the order.

         MR. LAPPING:  Let me confer, your Honor.

///

///

---oOo---

                        [Discussion off the record.]

                                ---oOo---

     MR. LAPPING:  Okay.  We have that change, your Honor.
think we are submitting, your Honor.

     THE COURT:  All right.  It seems to me that the
thing to do, there is going -- I am going to put some
and conclusions on the record.

     What is the contemplated process for circulating an
and then submitting it to the Court?

     MR. LAPPING:  Your Honor, we plan to try to get
signatures from the Creditor's Committee.  We will be at
offices revising the order, the banks.  Who else?  Chase, and
the buyer and Odenberg.

     THE COURT:  All right.  Does anyone else wish to
on the form of the order?

     MR. McQUAID:  Your Honor, Mike McQuaid.

     As long as the stipulation that was announced on the
record is contained in the order, I don't need to sign off on
it.

     MR. LAPPING:  It is, your Honor.

     THE COURT:  Well, then, all right.  So we won't put
Mr. McQuaid on there as required to sign off.

     MR. WISOTZKEY:  Sam Wisotzkey on behalf of General
     I think we should sign off on the assignment order as

well.

MR. LAPPING:  That is fine with us.

THE COURT:  Well, one of the things that can be done we can continue the hearing to tomorrow at 10:00 and you can present the order at that time.

MR. LAPPING:  Your Honor, I would love to do that that counsel -- I think we would like to get -- we are on a tight schedule.  If we can get this order entered today, to you and entered today, we could put the schedule on the footing it needs to because there are -- you know, after the order is entered and we have now commenced the process to there are a ton of things that need to be done, things that to be bought and applied to the process to get going.

THE COURT:  Well, are you going to get the sufficient parties to sign off on the orders to have it filed today?

MR. LAPPING:  Yes, your Honor, I am confident that we will get everybody to sign off on it before we send it to

THE COURT:  All right.

MR. PASCUZZI:  Your Honor, Paul Pascuzzi.

I don't need to sign off on the order.  I just would it circulated to us so that I can look at it.

MR. LAPPING:  Your Honor, we will get a signature from Mr. Pascuzzi as well.

THE COURT:  All right.  Let's then specifically again identify who is it that is going to --

1    Nancy, do we have the parties who are going to sign

2 on the order?

3        THE CLERK:  If they could repeat who they are.

4        THE COURT:  Those parties who are going to sign off on

5 the order?

6        MR. LAPPING:  They are the buyer --

7        THE CLERK:  Names, please.

8        MR. LAPPING:  Oh, sorry.  You mean --

9        THE CLERK:  Yes, who is going to be signing off.

10        MR. BERRYMAN:  Albert Berryman, Baker, Manock and

11 for Olam West Coast, Inc., and Olam Tomato Processors.

12        MR. PASCUZZI:  Paul Pascuzzi for the Salyer entities.

13        MR. GARDNER:  Brent Gardner, Lewis and Roca, for

14        MR. GINTER:  Dale Ginter, Downey Brand, for the

15 Committee.

16        MR. LEVINSON:  Mark Levinson, Orick, Herring and

17 Sutclisse for the secured lenders.

18        MS. PARKINSON:  Donna Parkinson for Odenberg.

19        MR. WISOTZKEY:  Samuel Wisotzkey, Kohner, Mann and

20 for General Mills.

21        MR. LAPPING:  No one gets to leave, your Honor, until

22 they sign.

23        MR. BERRYMAN:  Your Honor, I would like to amend ours.

24 Albert Berryman for Olam Entities, and if I am not

25 some reason, Mr. Gordon of the McDonough firm --

```
 1          THE COURT:  Either yourself or Mark Gordon?

 2          MR. BERRYMAN:  Correct.  Thank you.

 3          MR. LAPPING:  That would be it, your Honor.

 4          THE COURT:  All right.  And the timeline is -- when do

 5  the parties expect to have it submitted?

 6          MR. LAPPING:  We think by 3:30.

 7          THE COURT:  Well, I'll tell you what, I mean I will be

 8  checking and I mean it will in likelihood be signed within --

 9  depends on when it's in but sometime within -- well, it

10  if it's lodged today it will be signed today.  Let's put it

11  way.

12          MR. LAPPING:  Thank you, your Honor.  That is fairly

13  important for the schedule, and we appreciate your

14  us.

15           The last thing that we had on the agenda, I

16  is the West Lake Farms motion for an order to compel

17  or rejection, and I believe that is mute given that their

18  contract will be assumed.

19          THE COURT:  All right.

20          MR. ROLDAN:  Your Honor, Vincent Roldan, DLA Piper,

21  counsel to West Lake on the phone.

22          That's correct, your Honor.  It sounds like our motion

23  compel is muted by the sale motions and assumption

24  will withdraw our motion to compel without prejudice.

25          THE COURT:  All right.  So calendar items 4 and
```

item 3, those motions are withdrawn by the moving party.

All right.  So the compromise motion has been
the sale motion and the assumption motion have been approved,
and again just so that there is clarity, the sale motion is
approved under motion control number RAL-21, and that was the
amended notice that went out under that motion number; is
correct?

MR. LAPPING:  Let me look.  Yes, your Honor, it looks
like it went out under 21 as you said.

THE COURT:  I think what happened is motion control
number 22 was not on calendar today.  I mean the way that I
summing it up is that you went back and did an amended notice
motion control number 21, and that's -- the certificate or
notice of filing of the amended notice was filed on June
but that is the amended notice that you were talking about
before; correct?

MR. LAPPING:  Yes, it is, your Honor.  We are estopped
from saying anything else.  We have said 21 and that is
is.

THE COURT:  All right.  I do think it appropriate just
under the circumstances to put some findings and
the record.  These will apply equally to the motion to
the compromise which I have already partially indicated.  The
compromise was a lynchpin to the sale, and also to the sale
motion RAL-21 and to the motion to assume the contracts,

1  executory contracts which is RAL-23.

2    The Court's findings and conclusions are as follows:

3    S and K Foods, LP, separately it may be referred to as

4  SK Foods and RHM Industrial Specialty Foods, Inc., which

5  separately referred to as RHM, each filed separate voluntary

6  Chapter 11 proceedings on May 7th, 2009.  SK Foods and RHM

7  be collectively referred to as "debtors".

8    Involuntary petitions were filed against the debtors

9  May 5th, 2009, two days prior to the voluntary petitions.

10  voluntary and involuntary petitions have been consolidated

11  persuant to Bankruptcy Rule 1015.

12    At all times relevant the debtors have been engaged in

13  processing and packaging tomatoes and other perishable

14  agricultural products at two processing plants located in

15  Northern California.

16    The debtors' corporate headquarters are maintained in

17  Monterey, California.

18    At the time the debtor filed the respective Chapter 11

19  cases each debtor filed a motion for appointment of a

20  Accordingly and without opposition Bradley Sharp was

21  as Chapter 11 Trustee in each of the debtors' cases on May

22  2009.

23    At this point in my findings and conclusions I may

24  "debtors" or "trustee" interchangeably, whichever is most

25  appropriate.

1    The Creditor Committee was appointed in this case on

2 May 19th, 2009, and has retained counsel, and the Committee

3 been active in this case since its appointment.

4    The debtors own two major processing and packaging

5 plants.  SK Foods owns a plant in Lemoore, California, and

6 RHM owns a plant in Williams, California.  Both plants were

7 are being operated by SK Foods.

8    As tomatoes are seasonal, the debtors business cycle

9 also seasonal.  Each May and June the debtors expend

10 efforts to prepare for the upcoming tomato packing season.

11 tomato packing season begins on or about July 1 and typically

12 lasts through September.  Based on the increased volume of

13 as well as the increase in temporary -- excuse me --

14 of temporary workers during this period, the debtors'

15 increase dramatically.  As a result, debtors' ability to

16 during the packing season is dependent on the debtors having

17 financing available.

18    As of the petition date the debtors were obligated to

19 syndicate of lenders on a revolving credit line, a temporary

20 access loan and a term loan, and hereafter those parties or

21 those secured creditors will be referred to as the Salyer

22 Credit Lenders.  The amount as of the petition date owing

23 Senior Credit Lenders is in excess of 192 million dollar.

24 senior credit lenders were secured -- were and are secured by

25 substantially all of the real and personal property assets of

1  the debtors.

2  Since filing, the debtors and the trustee have been

3  using the senior credit lenders' cash collateral persuant

4  order of this court.  In consideration for the use of cash

5  collateral, the secured -- the senior credit lenders have

6  granted a replacement lien on post-petition assets.  The

7  trustee's authority to use cash collateral to operate the

8  businesses expires on June 28th, 2009.

9  The Trustee currently does not have the financing to

10  operations through the upcoming tomato packing season which

11  begins in less than a week from today.

12  At all relevant times the debtors' objectives in the

13  filing of this Chapter 11 case was to facilitate a sale of

14  businesses as a going concern prior to the July 1 tomato

15  season.  To that end, the debtors obtained a crude bidding

16  procedure for an auction sale which was conducted yesterday,

17  June 24th, 2009.  Persuant to the bidding procedures order,

18  today's hearing was for the Trustee to obtain court

19  yesterday's sale to the successful bidder.

20  If the Court does not approve this sale, the Trustee

21  not be able to operate the business passed June 28th, and

22  will result in their closure and ultimately a piecemeal

23  liquidation of the estate's assets.  Such a piecemeal

24  liquidation will result in significantly less return to

25  creditors in the estate and the estate, Section 363 of the

1  Bankruptcy Code allows in relevant part for a sale outside of

2  ordinary course.  A sale under Section 363(b) of

3  all of the debtors' assets can be approved where the Court

4  exceptional circumstances.  Specifically where a debtors'

5  are a going concern are in essence perishable or in eminent

6  danger that there will be a substantial depreciation or

7  deterioration in value absent the approval of a sale as

8  substantially all of the assets, the Court has the discretion

9  approve such a sale.

10       The Court finds that such cause exists today for

11  approving a sale of substantially all of the estate's assets

12  outside of a Chapter 11 plan.  In so finding, the most

13  consideration to the Court is whether the assets are being --

14  whether the assets being sold are, in essense, perishable or

15  will decrease in value if the sale does not go forward.  If

16  Court does not approve the sale, the Trustee will not have

17  financial ability to continue operation, as I have said,

18  June 28, which will result in the closure, substantial loss

19  employment, piecemeal liquidation and a dramatic depreciation

20  and deterioration in the value of the estate's assets.

21       As the assets have been sold in an auction setting

22  adequate advertisement, the Court finds the Trustee is

23  fair value for assets, and that the sale is in the best

24  of the creditors and the estates.  Accordingly the sale is

25  approved under Section 363(b).

Turning now to sale of assets free and clear of the Court finds that the sale motion sufficiently and noticed parties for a sale free and clear of liens and encumbrances of the parties receiving notice of this motion. Ideally any party that asserts an interest in an asset that to be sold free and clear of liens should be noticed persuant Bankruptcy Rule 7004. However, the Court does find that all creditors did receive notice of the Trustee's intent to sell assets free and clear of leins, and that such notice was provided persuant to Bankruptcy Rule 2002.

Specifically, the amended notice that Mr. Lapping referred to and the language that he pointed out does comfort the Court that all creditors listed on the general matrix of this case were apprised that the sale was going to be free clear of liens. The Court finds in this particular case that notice given was reasonably calculated under the to apprise interested parties of the Trustee's request to assets free and clear of liens, and accordingly the notice is sufficient.

I just look to In Re: Mulane versus Hanover Bank, 339 306. Also In Re: Espinosa, 545, Fed 3d, 1113.

The Court finds that the Trustee has offered evidence way of offer of proof that any parties other than the parties consenting to the sale free and clear of liens, that any lien being asserted against those parties that have received

notice is in dispute and that the Trustee believes does not
exist.

Accordingly, the Court finds that the sale is free and
clear of liens persuant to Section 3663(f)4 as to those
creditors that have not consented to the sale but have
notice; and that in regards to the secured creditors and
creditors that have consented to the sale, the sale is free
clear of liens and interests persuant to Section 363(f)21.

All right.  Mr. Lapping and Mr. Coleman, any
findings that the parties are requesting at this point?

MR. LAPPING:  Not other than as stated in the written
formal order that we have submitted.

THE COURT:  All right.  Anything else, Mr. Coleman?

MR. COLEMAN:  No, your Honor.

THE COURT:  All right.  Let me ask, do the parties
want -- I will look for the order to the Court.  Do the
want to continue this hearing to a date in the future if
is a glitch?  I mean if I sign the order, the hearing simply
will be removed from calendar.

MR. LAPPING:  Your Honor, Richard Lapping.

Why don't we set something six days out.

THE COURT:  Well, I was thinking either Friday or
so that if the parties can't agree upon something, it's going
to --

MR. LAPPING:  That depends on what you mean by

1  your Honor.

2       THE COURT:  Well, let me -- I understand it needs to

3  reviewed by a number of parties, and I was either going to

4  continue this hearing to 10:00 o'clock tomorrow or 10:00

5  on Monday so that if something happens and they need to, you

6  know, present their issue to the Court, that you have it on

7  calendar; and that if it is signed, it would just be removed.

8  That is up to the parties.

9       MR. LAPPING:  Your Honor, 10:00 o'clock tomorrow would

10  ideal.

11       THE COURT:  All right.

12       MR. BERRYMAN:  That would be ideal for us as well,

13  Honor.

14       THE COURT:  All right.  I will then continue the

15  to 10:00 o'clock tomorrow.  If the order -- and that is the

16  hearing -- I am going to continue both the sale hearing and

17  hearing on approval of compromise.  If the sale motion is

18  before, then so be it.  I'll simply conclude the hearing.  If

19  not, I'll be here to address the issues if they arise.  And

20  sign the sale order and no one is here for the motion on

21  approval of the compromise, I'll simply note that it's been

22  granted and the moving parties are to submit an order.

23  how it stands now.

24       MR. LAPPING:  Thank you, your Honor.

25       THE COURT:  All right.  Any other order of business at

1   this point?  All right.

2          MR. COLEMAN:  I don't believe so.

3          THE COURT:  All right.  I know that it's been a

4   meritorious process.  I know that people have worked hard,

5   commend people in as much progress as you have, and I say

6   luck to you all.

7                        ---oOo---

8              [Whereupon proceedings concluded.]

9                        ---oOo---

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF SHORTHAND REPORTER
STATE OF CALIFORNIA      )
                         )
COUNTY OF SACRAMENTO     )
          I, Patricia A. Hernandez, a Certified Shorthand
Reporter of the State of California, do hereby certify that I
am a disinterested person herein; that I reported the
hearing in shorthand writing; and that I thereafter caused my
shorthand writing to be transcribed into typewriting.
          I further certify that I am not of counsel or
attorney for any of the parties to said hearing, or in any
way interested in the outcome of said hearing.
          IN WITNESS WHEREOF, I have hereunto set my
hand this 8th day of July, 2009.

                              _____
                              Patricia A. Hernandez
                              Certified Shorthand
                              License Number 6875

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$196,135** 36:13,20 70:13

**$5.3** 19:21

## 0

**09-29161-D-11** 1:8

**09-29162-D-11** 1:5

## 1

**1** 2:5 47:5 78:11 79:14

**1.10** 39:19

**1.3** 17:9

**1.5** 30:7

**1.6** 30:7 35:7 36:9,14 69:3

**1:00** 58:16,24 59:7

**10** 47:23

**10,000** 38:20

**10:00** 7:6 22:17 26:10 73:4 83:4,9,15

**10020-1104** 6:10

**101** 2:12,17

**1015** 77:11

**11** 1:6,9 2:9 7:11,15 21:9 57:5,14 62:6 77:6,18,21 79:13 80:12

**11:15** 23:10

**111** 3:17

**1113** 81:21

**11th** 4:9 6:5

**1251** 6:9

**13** 57:8

**1440** 3:8

**1450** 3:5

**15** 70:17

**15th** 10:24

**16** 57:10

**17** 54:8 57:13

**17th** 61:14

**18th** 2:23 5:8 77:21

**1900** 3:23

**192** 78:23

**19th** 78:2

## 2

**2** 28:23 62:4

**20** 61:14

**2002** 50:11 52:18 55:6 63:7 81:10

**2003** 34:2

**2006** 41:25

**2009** 7:2 46:25 77:6,9,22 78:2 79:8,17 85:1

**2050** 2:17

**20799** 4:16

**21** 49:19 55:12 76:9,13,18

**212** 6:10

**216** 6:14

**22** 49:19 51:22 55:12,14 61:17,23 76:11

**2200** 2:5

**2210** 5:18

**223** 31:10

**22nd** 5:22 76:14

**23** 32:1

**23rd** 46:25

**24** 57:17 71:12

**24th** 57:1 79:17

**25** 7:2

**25th** 56:7

**261** 31:21

**262-5739** 4:6

**267** 31:25

**27** 57:21

**271** 32:19

**273** 32:20

**28** 58:3 71:1 80:18

**284** 32:25

**288** 33:6

**28th** 79:8,21

**29** 58:6

**290** 33:6

**292** 33:10

**294** 33:10

**296** 33:10

**298** 33:10

**2-RHM** 28:7

## 3

**3** 27:21 32:1 76:1

**3,500** 52:6 60:19 61:10

**3,800** 66:3

**3:30** 75:6

**300** 33:15

**3000** 3:13

**301** 33:15

**303** 34:17

**304** 34:18

**305** 34:19

**306** 34:19 81:21

**308** 34:20

**309** 35:3

**31** 58:9

**310** 35:3

**312** 3:18

**32** 58:11 71:11

**329-7400** 3:6

**33** 47:15 58:20

**332** 38:3

**334** 38:3

**335-4569** 6:10

**337** 38:8

**338** 38:9

**339** 38:9 81:20

**342-9600** 6:15

**363** 50:2 62:6 65:23
  79:25

**363(b** 49:20 50:2,17
  80:2,25

**363(b)(f** 49:21

**363(f** 50:2,5 51:2,6
  52:13 62:19 65:1

**363(f)21** 82:8

**364-6714** 2:6

**3663(f)4** 82:4

**381** 62:1

**383** 61:25

**39** 31:5

**3d** 81:21

---
4
---

**4** 17:22 28:2 75:25

**40** 4:5

**400** 3:5,13 4:9 5:22
  6:5

**4001(a)23** 27:19

**414** 4:22

**415** 2:6,13,18 5:13

**42** 47:14

**421-6140** 2:18

**432-5400** 5:6

**441-0828** 3:9

**441-2430** 5:23

**444-3900** 5:9

**444-7000** 2:24

**447-9200** 3:14

**449-1444** 6:6

**4650** 4:21

**47** 47:13

**4th** 5:5

---
5
---

**5** 28:9,24

**5.8.1** 54:3,6

**5.8.2** 52:25

**500** 5:8 63:16

**510** 4:17

**520** 61:20

**5260** 5:5

**53212-1059** 4:21

**545** 81:21

**558-6000** 4:10

**559** 5:6

**591-1485** 2:13

**5th** 77:9

---
6
---

**6004(h** 27:19 57:22

**6006(d** 57:22

**602** 4:6

**60603-4080** 3:18

**621** 2:23

**650** 3:24 6:15

**6875** 1:25 85:1

---
7
---

**7:15** 31:2

**7004** 50:15 52:16 63:5

**81**:7

**705-8894** 4:17

**754-2501** 5:19

**770** 3:8

**781-7800** 5:13

**7th** 77:6

---
8
---

**8** 57:2 71:12

**831** 5:19

**845-3763** 3:18

**849-4998** 3:24

**85004** 4:5

**8th** 5:12 85:1

---
9
---

**9** 57:3 60:12

**9:00** 30:19

**9019** 13:11 16:1

**916** 2:24 3:6,9,14
  4:10 5:9,23 6:6

**93704** 5:5

**93902** 5:18

**94010** 6:15

**94104-5501** 2:6

**94105-1101** 5:13

**94111** 2:18

**94111-5894** 2:12

**94303-2223** 3:23

**94620** 4:16

**95814** 3:9 4:9
  5:9,23 6:5

**95814-4407** 3:14

**95814-4434** 3:5

**95814-4731** 2:24

**962-5110** 4:22

---
A
---

**a.m** 30:19

**ability** 18:15 47:1
   60:7 78:15 80:17

**able** 10:15 19:5
   24:6 25:8 30:22
   35:23 39:17 41:1
   47:25 79:21

**absent** 80:7

**abundance** 15:24 58:12

**acceptable** 33:18
   37:21

**accepted** 68:12

**acception** 75:16

**access** 78:20

**accommodating** 75:13

**accordance** 70:6

**accordingly** 45:1
   67:10 77:20 80:24
   81:18 82:3

**account** 18:1

**accurately** 34:13

**acknowledge** 41:2

**acknowledged** 39:14

**acquired** 53:2

**acquisitions** 48:12

**action** 18:25 43:22

**active** 78:3

**activities** 12:23

**actual** 25:25 36:12
   41:14

**actually** 10:13 20:4
   24:22 30:10 31:2
   36:8 38:14 40:8 44:2
   66:9 70:16

**add** 12:11 31:1
   49:25 57:22 60:9
   71:13

**added** 12:9 45:19 46:8
   52:25 55:14

**adding** 56:23

**addition** 47:18

**additional** 45:18
   55:15 82:9

**address** 10:17
   14:10,11,17 15:2
   29:7 38:15 51:14
   54:22 56:9 58:25
   83:19

**addressed** 11:6
   22:23 29:19 32:13
   37:9 54:17

**addressing** 40:4

**adds** 11:21

**adequate** 48:13
   57:12 80:22

**adequately** 81:2

**adjusted** 40:11

**adjustments** 29:21

**admitted** 48:18 68:12

**adversary** 21:10
   29:3 52:15

**advertisement** 80:22

**advising** 67:20

**affect** 22:5,13
   29:21 57:6

**affectuated** 26:11

**afforded** 19:18

**afternoon** 26:11 59:13

**against** 49:9 66:19
   77:8 81:25

**agenda** 10:10,14
   28:1,3 75:15

**agent** 8:6,8 27:13
   35:16 37:17 70:3

**aggregate** 17:8
   19:20 20:4,5

**ago** 11:2 17:5 20:9
   22:4 44:21 60:20

**agreed** 17:5 19:8 32:7

33:18,19 34:6
   35:25 40:24 69:18

**agreement**
   17:4,18,20,21
   18:7,8,9 19:2,6
   20:2,25 21:15 24:4
   26:1 30:5 31:2,6
   34:13 35:14,15,17,25
   36:3,13,24 37:1,2,16
   39:5,10,19 45:19
   46:6 52:25 53:10
   54:4,5 58:5 67:13
   68:23 70:3,6
   71:15,17

**agreements** 12:20
   17:7,11 18:2,14
   28:13 34:25
   39:5,6,12,13,22
   46:4,7,9,12 47:16
   54:3 69:4

**agricultural** 77:14

**ahead** 25:2 26:6 27:23
   32:15 56:19

**al** 38:9

**albeit** 12:18

**Albert** 5:3 8:18 22:21
   40:19 44:19 52:22
   54:21 74:10,24

**allegations** 42:21

**alleged** 42:25

**allegedly** 41:24

**allegely** 44:14

**Allen** 5:8 8:20

**all-encompassing**
   51:7,20

**allow** 12:3 14:22

**allowable** 54:13

**allowed** 54:18

**allowing** 23:23 26:9

**allows** 21:21 40:10
   80:1

**already** 42:4 69:25

76:23

alter 24:14

Alto 3:23

am 11:17 12:1
13:21,22 14:6
15:11,12 23:16
25:1,15 26:6 29:11
36:7 37:4,12 39:1,23
44:4 48:19 49:2,4
50:9 51:6,8 53:25
56:22 58:14,15,22
61:9,13,23
63:3,15,17,21,25
64:23 66:15
67:4,25 72:7 73:16
74:24 76:11 83:16
85:1

amend 69:10 71:5
74:23

amended 61:25 62:3
64:18,20 65:22
69:15,22
76:6,12,14,15 81:11

amendment 69:13

Americas 6:9

among 23:4 25:9

amount 17:8,9 19:20
25:17 31:11,23
32:2,3 33:18 34:6
35:8 65:11 70:13
78:22

amounts 34:21 38:8

analogous 60:13

Anastassiou 5:16,17
9:7,8,23,24

ANC 19:24

announced 72:18

answer 13:16 14:2
31:18

answered 57:10

anticipate 25:3

anticipated 35:22

anybody 14:21 50:10
51:16 56:9 68:6

anyone 16:22 21:16,20
24:16 45:12 48:16
49:2 52:19 64:9 65:4
67:19 72:15

anything 16:9 21:7
38:25 44:22,23
45:2 76:18 82:13

anywhere 62:12
63:10 71:22

APA 29:14 32:11 38:18
52:25 57:9 69:17
71:19

apart 50:16

apologies 20:16

apologize 32:16 57:15

appeal 13:24 15:14
58:1

appear 31:9

appearance 21:20

appearances 7:8
9:19,21 10:6 21:18

appearing 8:20

appears 11:11
32:11,13 34:13

applaud 12:21

applicable 27:20
44:17 69:10

application 26:23
55:20 61:16

applied 73:13

apply 20:6 76:22

appointed 18:4
77:20 78:1

appointment 77:19
78:3

appreciate 16:17
75:13

apprise 81:17

apprised 63:24 81:14

approached 36:10
68:21

appropriate 21:2
25:18 27:14 55:6
66:16 76:20 77:25

approval 14:1 15:5,17
28:17 35:18 36:25
41:18 54:7 60:1
79:18 80:7 83:17,21

approve 10:19,25
12:16 13:19,23 15:11
16:1,14 24:22
25:2,18,24 26:6,18
28:25 29:8,11 37:2
55:11 63:7 69:21
76:22 79:20 80:9,16

approved 15:19
25:4,23 37:23
41:15 49:16 76:2,3,5
80:3,25

approving 12:2 15:4
27:4 41:11 80:11

approximately 17:22

area 25:20

argue 15:20

argument 60:7

arise 83:19

arrangements 19:8

arrearages 26:2

Article 60:12

arye 33:1

aspect 11:6

aspects 13:10 14:10

assert 60:7 63:19
68:6,8

asserted 17:12
33:23 51:16 54:16
64:10 67:22 81:25

asserts 81:5

asset 30:5 31:6

39:5,10,19 40:24
45:19 46:6 54:4,5
71:17 81:5

**assets** 17:17 18:9
25:6 38:19 43:8 44:1
48:13 50:4,11,13
51:4 52:24 53:2,12
58:13,17 60:12 62:13
66:20 71:12,14,19,21
78:25 79:6,23
80:3,4,8,11,13,14,20
,21,23 81:1,9,18

**assign** 12:6 46:5,7
68:17

**assigned** 10:25

**assigning** 11:20 68:16

**assignment** 26:4 29:21
34:5,12 45:13
58:25 72:25

**associate** 45:20

**Associates** 5:17 9:23

**Association** 3:21
9:6 68:16

**assume** 10:25 12:6
18:21 30:2,16 38:5
46:5,7 55:19 56:9
57:19 76:25

**assumed** 26:2 30:9
31:12,19,24
32:1,10,12
33:5,12,25 34:6,22
57:20 75:18

**assuming** 11:19
13:17 28:25 32:21
33:13 36:2 57:18
67:4,25

**assumption** 22:5,6
29:21 30:1 31:18
32:5 33:17 34:4
36:11 45:13
46:9,13 75:23 76:3

**attach** 37:21 70:3

**attached** 70:7

**attempt** 22:16

**attempted** 19:1

**attendance** 28:4

**attention** 65:22

**attorney** 2:16,22
3:3,7,12,16,22
4:4,8,15,20
5:4,7,11,21 6:4,8,13
13:3 27:12 32:8
36:10 85:1

**attorneys** 2:4,11 5:17
13:4

**auction** 17:22 29:15
30:18,24 48:8 57:1
62:1 79:16 80:21

**authority** 22:19
53:4 57:14 58:3 79:7

**authorize** 69:6

**authorized** 58:7

**available** 47:21 74:24
78:17

**Avenue** 3:23 4:5 5:5
6:9

**avoided** 54:25

**aware** 15:11 45:11
48:19 64:11 67:7

**AZ** 4:5

———————————
B
———————————

**Baker** 5:4 8:19 74:10

**balance** 19:22

**balancing** 16:20 20:21

**bank** 3:12 8:5,8
13:4 25:11
27:12,13 32:25 66:19
81:20

**bankruptcy** 1:1
12:20 50:10,14
54:6,14,18 57:22
63:5 77:11 80:1
81:7,10

**banks** 17:13 18:6
19:17 31:14 37:18
47:12 70:4 72:13

**bank's** 71:3,5

**Bardwil** 1:17

**barred** 44:6

**based** 31:11,23
34:20 38:7 49:4 56:8
59:20 64:8 78:12

**basically** 20:20
31:8 41:23

**basis** 44:23 48:10
62:5 63:1

**Bates** 3:21 9:5

**bearing** 20:22 23:2

**became** 12:11 47:3

**become** 57:24

**Bee** 60:16

**beginning** 47:1

**begins** 54:9 65:24
78:11 79:11

**behalf** 8:2,5,8 9:8
16:15 34:10 35:12
42:12 44:19
46:1,24 52:22
61:12 69:24
70:9,25 72:24

**belief** 11:5

**believe** 10:22,24
17:15 18:11 19:22
20:3 22:22 24:9,13
29:11 32:6,22
33:2,6,12 34:17,23
35:6,11
36:10,14,15
38:9,21,22
39:17,25 40:9,22
41:10,16,21
42:9,21 45:9,10
48:21 49:9 51:9
54:22 55:5 56:8
57:18 59:24 60:17
61:4,24 64:25 65:1

71:18 75:17 84:2

**believed** 65:3

**believes** 82:1

**benefit** 20:18 21:6
42:5

**Benson** 2:17 7:20

**Berryman** 5:3
8:18,19 22:21
40:19,20 44:19 52:22
53:7 54:21 55:2,5
59:9 63:15 64:2,17
65:6,10,12 67:24
69:18 71:10,21
74:10,23,24 75:2
83:12

**best** 11:21 15:25 18:8
19:9 21:1 48:15
80:23

**better** 66:7

**beyond** 16:7 54:14
68:2 69:14

**bid** 49:16

**bidder** 17:21 19:2
22:7 29:16
30:20,21 31:4,5 48:9
79:19

**bidders** 31:4

**bidding** 10:19 11:5
57:1 79:15,17

**bids** 48:4

**Bill** 9:5

**binds** 60:2

**Bingham** 3:22 9:6

**bins** 38:20,22 40:12
69:3

**Birney** 5:22 9:11

**bit** 20:17 47:4 70:19

**bite** 15:13

**blanket** 49:21 50:6
52:20

**blanketed** 52:6

**board** 24:8

**body** 64:19 67:6

**bold** 62:15 65:24

**books** 43:15

**bought** 73:13

**bound** 55:7 64:4

**bounds** 40:7

**Box** 4:16 5:18

**Bradley** 2:3 6:18 7:11
77:20

**Brand** 2:23 7:17 74:14

**break** 23:24 47:4
62:16

**Brent** 4:3 8:2 35:12
74:13

**brief** 22:16 23:13
65:9,16

**briefly** 49:14

**bring** 16:18 56:5

**broad** 51:7,15 59:24

**broadcast** 13:6

**broader** 56:13 61:10

**broadly** 60:15

**Brothers** 5:21 9:12
46:10

**brought** 51:23

**budget** 44:10

**building** 31:24

**build-out** 57:13 58:6

**built** 70:22

**Burlingame** 6:15

**business** 42:9 78:8
79:21 83:25

**businesses** 79:8,14

**buyer** 30:9 43:7,14,25
44:19 51:13 52:23,25
54:21 69:1,17

72:14 74:6

**buyers** 52:8

**buyer's** 51:13

---
C
---

**CA** 2:6,12,18,24
3:5,9,14,23 4:9,16
5:5,9,13,18,23
6:5,15

**Cal** 5:15 9:8,24 48:5

**Cal-Ap** 4:12 9:1

**calculated** 81:16

**calendar** 7:6 10:9
11:16 28:7,9,23 56:8
75:25 76:11 82:19
83:7

**California** 2:12

**California** 1:2,5,9,15
2:17 57:19 68:15
77:15,17 78:5,6 85:1

**Canning** 1:9

**cap** 19:20 20:4,6,14

**capital** 71:16

**capitalized** 71:14

**Capitol** 2:23 3:5,13
4:9 5:8,22 6:5

**carefully** 60:18

**Carr** 6:14 10:4

**cars** 38:20,21 40:14
41:5

**cart** 35:20

**carve** 45:3

**case** 1:5,8 12:23
13:22 19:24 24:22
26:6 31:16 36:6 37:6
42:17 52:11 53:10
60:10 63:6 78:1,3
79:13 81:14,15

**cases** 56:13 77:19,21

**cash** 71:3,6,9

79:3,4,7

**cause** 14:5 80:10

**caused** 85:1

**caution** 15:24 58:12

**cell** 23:18

**Central** 4:5

**certain** 14:10 25:4,15
37:9 69:2

**certainly** 15:17,24
19:23 33:22 36:6

**certainty** 20:20

**certificate** 76:13
85:1

**Certified** 85:1

**certify** 85:1

**Chairman** 24:7

**challenge** 71:3,5

**chance** 10:11 14:15

**change** 14:25 21:7
22:17 49:19 59:4
72:4

**changed** 58:2

**changes** 40:10 56:18
58:9

**Chapman** 3:17 8:8

**Chapter** 1:6,9 2:9
7:11,15 57:14
77:6,18,21 79:13
80:12

**characterize** 14:4

**Chase** 4:3 8:3
35:3,4,8,11,13 36:24
37:17 50:22 70:1,4
72:13 74:13

**checking** 75:8

**Chediak** 9:17

**Chicago** 3:18

**Chili** 5:15 9:8,24

**circulated** 73:21

**circulating** 72:9

**circumstance** 13:7

**circumstances** 14:4
21:1 25:5,15 26:5,24
27:22 46:18 48:15
57:4 63:5,9 76:21
80:4 81:16

**claim** 21:9 54:24 60:3
63:22 66:17,19,25
67:7 71:3,5

**claiming** 62:24

**claims** 17:12,15
18:3,6 19:17 31:14
34:16 59:16 66:5

**clarification** 22:8
70:1

**clarify** 70:5 71:11

**clarity** 76:4

**Clark** 6:19 46:21,23
47:7

**class** 61:21

**clean-up** 68:3

**clear** 18:3 19:14
50:4,11,13,20,22
51:5 52:14 53:2,13
59:15,19 62:10,13,19
63:20 66:2
81:1,3,6,9,15,18,24
82:4,8

**Clerk** 65:13 74:3,7,9

**clients** 34:16,18
63:21 65:7

**client's** 43:11

**close** 35:19,23 37:6
66:13 70:16 73:11

**closing** 17:7 30:23
36:3,20 37:20
57:23 70:14,21

**closure** 79:22 80:18

**Coast** 5:3 8:20 30:9
74:11

**code** 54:14,18 62:11
66:14 80:1

**cohesion** 34:8

**coincide** 37:9 40:8

**Colabianchi** 2:10 7:14
45:20,24 46:1
61:11,15,20,24 62:3

**Coleman** 2:4 7:9
10:7,8,13,22 11:9,25
12:3,15 13:2,15
14:2,9,19,24 16:9
17:1 18:13,19,23
19:16 22:11
23:11,22,23 24:19,20
26:8,14,20
27:2,9,12,25 28:17
29:4,6 82:9,13,14
84:2

**collateral** 71:3,7,9
79:3,5,7

**collectively** 77:7

**Colusa** 1:9

**combination** 35:5

**comes** 52:19

**comfort** 81:12

**comfortable** 39:1
49:22 51:8 53:25

**commenced** 30:18 73:11

**commend** 84:5

**comment** 13:9,21 22:23
25:20 44:24 63:21
66:6 69:25

**comments** 14:12
27:18 59:18

**Committee** 2:21 7:17
13:4 16:16,20
17:13 18:5 19:19
22:17,19 24:3,7
25:11 70:25 71:4
72:12 74:15 78:1,2

**Committee's** 27:10
71:8

communication 44:20

companies 42:5
47:13 48:12

companion 28:8 29:8

company 10:5 18:10
50:8

compare 11:20

compel 28:4
75:16,23,24

competitor 42:4

complain 14:15

complaint 17:16 42:1

completely 17:11,14

complies 69:16

comply 52:18

component 25:7

comprehensive 46:4
47:9 65:3 66:24 67:2

comprised 48:13

compromise
13:14,21,23
14:1,7,25
15:4,5,11,19
16:23,25 21:19,21,22
24:11,17,23
25:1,2,7,9,14,19,23,
24 26:6,9 28:5,25
29:1 33:17
76:2,23,24 83:17,21

compromised 39:9

compromises 13:11

ConArga 38:4

conceded 33:23

concept 40:25 57:3

concern 15:7 44:16
79:14 80:5

concerned 62:18

concerns 55:13

concessions 25:25

conclude 11:21 83:18

concluded 31:2 35:4
84:8

conclusion 29:16

conclusions 72:8
76:21 77:2,23

condition 17:19
19:5 57:23

conducted 47:23 79:16

conducting 60:11

confer 65:7 71:23

confidence 20:25

confident 39:23
61:9 73:16

confidential 43:6

confidentiality 47:15

confirm 22:11 24:2
69:14

confirmation 24:14

conflicting 22:18

conflicts 71:8

conform 20:2

confused 43:18

connection 15:19,22
27:16 28:13 58:21

consent 50:24
51:1,6,10

consented 53:24 54:23
62:22 64:9 67:21
82:5,7

consenting 66:18,19
68:10,11 81:24

consider 50:5

considerable 20:18

consideration 57:11
79:4 80:13

considerations 20:22

considered 25:1

considering 25:16

consistent 26:10,25
27:17 54:20 57:18

consolidated 77:10

consolidation 17:16
18:25 21:9

Cont 3:1 4:1 5:1 6:1

contacted 47:13

contain 68:22

contained 71:9 72:19

contemplate 37:1

contemplated 54:10,12
72:9

contemplates 35:17

contemplating 37:3,7

contend 38:20

context 26:3

contingent 41:11,18

continue 13:8,13,17
14:6 73:4 80:17
82:17 83:4,14,16

continued 56:6

contract 11:1,20 20:7
24:14 26:4
31:12,18,25
32:4,6,22 33:5,11,25
38:5 40:10,13
54:20 55:19 56:5
69:10 75:18

contractors 60:14

contracts 11:22
12:7,9 18:3,20
22:6,9,25 23:3
26:1 29:9 30:8,12,16
32:10,11 33:13
34:1,4,22 35:21
39:7,8 40:8
45:13,18,20
46:8,13 56:10
68:17 69:11 76:25
77:1

**control** 10:20
  11:11,12,14,18 45:22
  46:3 51:19,22
  55:12,23 61:23
  76:5,10,13

**conundrum** 15:10 16:17

**copies** 49:8

**corporate** 77:16

**Corporation** 1:9 5:12

**correct** 10:21 12:10
  18:22 20:15 32:9
  33:8 39:14
  41:5,12,16 45:24
  48:23 49:17 50:25
  55:24 64:22
  65:2,25 67:9 68:19
  69:12 71:20
  75:2,22 76:7,16

**corrected** 20:13

**correction** 20:3,8

**corrections** 29:20

**corresponded** 38:4

**counsel** 2:9
  7:11,15,17 9:23 10:2
  20:1 21:24
  22:8,22,24
  32:17,22
  33:7,12,16 35:11
  36:15 38:24 39:13,23
  40:6 44:20 65:20
  68:15,20 73:7
  75:21 78:2 85:1

**counsel's** 27:10

**counter** 17:10 28:4
  46:10,13

**County** 1:9 85:1

**couple** 11:21 53:21
  58:16 59:18

**course** 10:17 16:4
  19:1 48:8 80:2

**court** 1:1 7:5 8:15,24
  9:19
  10:6,12,16,18,23

11:2,6,10
12:1,2,5,13,21
13:8,18,20
14:5,17,23 15:9
16:1,5,17,22
18:12,22 19:15
21:4,12,16,17,22
22:14
23:1,8,10,15,22
24:9,24 25:13
26:16,21,22,24
27:4,14,20,22
28:7,20,23 29:5
31:20 32:14
34:9,15 35:1
36:2,16,21,25
37:2,3,11,24
39:3,6 41:7,13,17,20
42:2,4,11,16
43:10,17
44:4,9,18,24
45:8,12,22,25
46:15,19 48:16,22,24
49:2,12,20 50:2,7,24
51:3,11,17,19
52:2,8,11
53:1,4,16,25
54:4,6,11,19,22
55:1,3,8,16,25
56:2,12,15,19,21
57:25 58:14,19,22
59:2,6,13 60:24
61:2,6,13,18,22
62:2,9,16,19,25
63:14 64:6,22
65:8,11,13,18,25
66:6,11
67:4,10,14,19,25
68:4,10,12,14,24
69:8,16,19,21
70:8,24 71:20
72:6,10,15,22
73:3,14,18,24 74:4
75:1,4,7,19,25
76:10,20
79:4,18,20
80:3,8,10,13,16,22
81:2,7,13,15,22
82:3,13,15,16,22

83:2,6,11,14,25 84:3

**Courthouse** 1:15

**courtroom** 7:8,12,25
  8:13,23 9:19,23
  14:21 16:23 21:18,19
  24:10,22 46:20
  49:1 66:23

**Court's** 14:12 15:7
  54:2 55:13 56:6,8
  63:8 77:2

**covers** 45:10

**create** 58:2

**created** 47:18

**credit** 78:19,22,23,24
  79:3,5

**creditor** 18:5 24:13
  27:9 53:10 55:4
  61:10 64:3,19
  66:17 67:21 78:1

**creditors** 9:4,9
  13:6 25:18 52:6
  56:24 59:20 60:19
  62:21
  63:6,16,19,24 64:9
  66:12 67:3,6 78:21
  79:25 80:24
  81:8,13 82:5,6,7

**creditor's** 52:15

**Creditors** 7:18 13:4
  17:13 19:19 24:3
  25:10

**Creditor's** 72:12

**CREDITORS** 2:22

**critical** 47:19 52:24

**crop** 20:21

**crossed** 13:24

**crude** 79:15

**CSR** 1:25

**cure** 17:7,8 26:2
  30:12 31:11,23 33:18
  34:4,6,21 35:9 36:11

38:7 70:13

**current** 38:10

**currently** 79:9

**Curry** 5:15 9:8,24
    31:10,17

**cut** 71:2

**Cutler** 3:17 8:8

**cycle** 78:8

———————— D ————————

**d/b/a** 1:9

**Dale** 2:22 7:16
    16:15 70:25 74:14

**danger** 80:6

**data** 44:12 47:17,18
    66:24

**date** 47:6 78:18,22
    82:17

**daughters** 18:24 21:10

**day** 70:17 85:1

**days** 17:5 44:21 60:20
    77:9 82:21

**dba** 31:10

**deal** 16:18 19:12
    22:20

**dealing** 11:2 14:20

**dealt** 39:5 43:11

**debtor** 1:6,10 11:13
    25:6 77:18,19

**debtors** 20:23
    38:21,25 47:12
    69:5,7
    77:7,8,12,16,21,24
    78:4,8,9,14,15,16,18
    79:1,2,12,15 80:3,4

**decided** 40:16 47:20

**declaration** 48:22
    49:1,5

**decrease** 80:15

**deem** 64:20

**deemed** 18:20

**defaults** 17:8 35:9

**defined** 71:14,19,22

**definition** 56:24

**definitive** 44:7

**delve** 47:16

**denied** 11:6 28:10
    55:18 56:2

**denoting** 44:15

**denying** 51:22,25

**dependent** 78:16

**depends** 75:9 82:25

**depose** 28:12

**deposition** 28:5,15,19

**depreciation** 80:6,19

**Deputy** 65:13

**describe** 17:1,2 30:16
    45:20

**described** 19:13
    21:6 31:6

**describing** 21:14

**description** 39:21
    40:7 46:17 61:4

**designee** 30:10

**detail** 31:6

**detailed** 34:3 47:9

**deterioration** 80:7,20

**determine** 29:18

**determined** 31:4

**devices** 37:11

**Diamond** 4:13 9:2
    34:18

**dictate** 14:6

**different** 52:17 61:8

**differs** 29:14

**difficult** 16:18

**dilemna** 15:10

**diligence** 29:22 31:15
    34:22 46:17 57:4
    63:22,23

**direction** 43:21
    56:6,8

**directly** 14:3 66:22

**Director** 6:19 46:21

**discharge** 12:19
    17:7 18:1,14 28:13
    39:4,6,8,12,13,20,22

**disclosure** 47:16

**discovered** 30:15

**discovery** 44:7

**discretion** 80:8

**discuss** 40:24

**discussed** 40:21 70:2

**discussion** 11:9 18:17
    20:11 23:20 38:12
    53:18 59:14 72:2

**discussions** 19:7

**disinterested** 85:1

**dismissal** 29:2

**dismissed** 18:24

**dispute** 41:24 44:5
    62:25 63:2 64:11
    66:20 67:23 68:25
    82:1

**disputed** 63:20 65:5
    67:10 68:9

**disputes** 12:19

**District** 1:2 46:11

**DIVISION** 1:2

**DLA** 6:9 10:2 75:20

**docket** 31:9,10,21
    32:19 33:6,15
    36:22 38:1,3,8 55:12
    61:23,24 62:1

**document** 26:17 46:3

**documentation** 42:22
45:18

**documents** 29:22 43:15
46:4 47:19 58:8
64:13

**dollar** 78:23

**dollars** 17:9,22 31:6

**Donald** 2:16 7:19 16:6

**done** 16:12 20:17
29:23 37:9 40:3
63:21 67:15 73:3,12

**Donna** 6:3 9:13 74:18

**dotted** 13:24

**Downey** 2:23 7:17
74:14

**draft** 31:1

**drafted** 38:18

**drafting** 39:24

**dramatic** 80:19

**dramatically** 78:15

**drawn** 65:22

**drop** 28:16

**due** 17:6 29:22
31:15 34:22 42:20
46:17 53:5 57:4
60:17 63:22,23

**Duff** 6:20 46:21,22
66:23

**during** 78:14,16

---

E

**earlier** 30:25 36:9
70:2,11 71:2

**early** 41:25

**easement** 46:11

**easier** 28:1

**East** 3:23

**EASTERN** 1:2

**Ed** 31:10

**effect** 22:25 68:22

**effected** 53:9

**effectuate** 70:17

**effectuating** 70:22

**Effie** 5:16 9:7,24

**effort** 30:6,25 67:2

**efforts** 18:8 19:9
21:1 48:10,13 58:4
78:10

**eight** 38:19,23

**either** 26:18 47:20
54:18 66:8,15 75:1
82:22 83:3

**element** 52:24 53:14

**else** 64:9 71:22
72:13,15 76:18 82:13

**e-mailing** 22:3

**embodied** 37:4

**embroiled** 37:15

**eminent** 80:5

**employee** 43:1

**employees** 16:13 20:23

**employment** 78:13
80:19

**enable** 34:7

**enabled** 47:16

**encumbrances** 66:3
81:4

**endorsing** 16:7

**engaged** 46:25 47:8
53:21 59:14 77:12

**Engineering** 6:3
9:14 33:5

**Enjoy** 19:15,16

**enter** 18:9

**entered** 73:8,9,11

**entire** 61:10

**entirely** 38:15

**entities** 12:18
14:25 15:6 16:6
17:10,17,19,23
18:2 19:7,13 20:1
22:10,12 24:4
25:10 27:8
41:10,14 42:23
47:15,24 68:20
74:12,24

**entity** 17:24 48:5

**enumerate** 52:12

**enumerated** 50:5 51:6

**envision** 42:8

**equal** 17:6

**equally** 76:22

**equipment** 4:3 8:3
10:5 33:19,24
35:3,6,10,13 42:6
70:2

**equitable** 19:23

**errors** 70:22

**escrow** 70:18,21

**Espinosa** 81:21

**essence** 21:21 25:21
45:23 47:8 80:5

**essense** 80:14

**essential** 19:5

**essentially** 17:4 32:3
33:18 35:4,9,10
47:4,5 50:21 53:24

**esssentially** 34:5

**estate** 17:15,17
18:5 21:6,8 43:8
63:24 79:25

**estates** 80:24

**estate's** 79:23
80:11,20

**estimate** 17:8

**estimated** 32:4

**estopped** 76:17

et 38:9

evening 26:11 31:3

event 31:17 33:1
70:19

everybody 47:5
66:25 68:23 73:17

everyone 23:17
61:19,23

everyone's 62:10

everything 20:14
70:21

evidence 41:25
43:9,23 48:14
52:13 63:18 66:17,22
81:22

evidentiary 44:23

example 50:20

except 73:6

exceptional 80:4

excess 78:23

exchange 18:13 19:11

excluded 58:12
71:12,18,21

excuse 17:25 36:23
61:7 78:13

execute 58:7

executory 18:19,20
23:2 26:1 29:9
30:8 35:21 56:5
68:17 77:1

Exhibit 11:22 30:7
35:7 36:9,14 46:3
69:3

exhibits 29:14 30:6

exigent 25:5 46:17
57:4

exist 23:4 44:16 82:2

exists 80:10

expect 67:11 75:5

expectations 51:14

expend 78:9

expenses 78:14

experts 48:11

expired 59:23 68:17

expires 79:8

explain 29:24 64:13

explanation 34:3
58:11

explanations 30:4

exposure 48:13

expressed 47:14 48:4

extend 18:15

extent 12:17 27:18,20
28:11 30:14 31:17
54:13 60:5 63:1,6,18
64:8 66:17

extremely 16:11

eyes 52:20 65:20 66:6

## F

face 13:16

facilitate 79:13

facilities 47:25

facility 47:19 48:6

facing 19:4

fact 24:21 26:1
31:5 33:23

failed 56:9

fair 19:22 45:6 80:23

fairly 33:17 61:9
75:12

faith 48:21 49:3

farming 12:18 17:24
18:2 38:9 41:10

Farms 2:15,16 4:13,14
5:15,16 6:8 7:21
9:2,3,8,9,24,25 10:2
18:10 21:25 31:11,25

32:17 34:19 75:16

favor 16:21

favorable 16:9

feature 18:7,23

Fed 81:21

feel 63:6

fees 17:6

Felderstein 3:4 7:23

felt 20:25 21:1

fifteen 23:9,25

figuratively 48:1

figured 23:6

filed 10:9,23 13:3
26:17,19,20 29:14
30:5 32:25 36:8 42:1
46:9 50:14 61:7
66:25 73:15 76:14
77:5,8,18,19

filing 37:7 42:16
76:14 79:2,13

filled 57:3

filling 56:24

final 18:23 31:15
36:13 45:19 57:24
60:19 71:3,6,9

finalizing 45:17

finally 29:25 48:3
49:7

finance 4:3 8:3
34:7 35:3,13 70:2

financial 80:17

financing 35:5
36:12 48:7 78:17
79:9

finding 48:20
49:3,4 57:5 62:14,19
63:1 80:12

findings 25:4,16
57:15,16 72:7
76:21 77:2,23 82:10

finds 80:3,10,22
   81:2,15,22 82:3

fine 12:4 37:15
   54:1 58:18 65:8 73:2

firm 74:25

first 7:8 12:16 21:18
   51:21 56:23 61:21

Fitzerald 7:23

Fitzgerald 3:4

five 44:21 65:6,11

fixed 38:19

Fleury 5:22 9:11

Floor 2:23 4:9
   5:5,8,12,22 6:5

focus 30:7

food 6:22 48:11,12

Foods 1:5,8 5:11
   7:7 8:17 28:9
   32:20 33:10 38:4
   77:3,4,6 78:5,7

footing 73:10

foreclosure 60:11

foregoing 85:1

form 27:5 72:16

formal 82:12

formalized 37:2

former 42:25 59:22

forward 14:22 15:8
   16:3,14,21 17:20
   21:22 25:8 28:18
   32:5 34:2 40:1 51:18
   53:22 55:12
   65:4,14 80:15

fourth 65:24

Francisco 2:6,12,18
   5:13 30:20

Fred 6:24 8:14

Fredericks 2:10
   7:14 69:23

free 18:3 19:14
   50:4,11,13,20,22
   51:5 52:14 53:2,12
   59:15,19 62:10,13,19
   63:20 66:2
   81:1,3,6,9,14,18,24
   82:3,7

Fresno 5:5 60:16

Friday 56:1 82:22

Friedman 2:17 7:20

Fruit 4:13 9:2 34:18

full 57:14

fuller 14:14

fullest 54:13

fully 15:11 21:2 24:3

fund 31:14,16 79:9

funding 30:23

funds 19:12 34:21
   70:16

future 82:17

———————————
G
———————————

Gardner 4:3 8:2 35:12
   36:6,23 37:8,16
   74:13

Gebhard 5:11 8:16
   32:23

Gebhardt 32:24

general 4:19 6:25
   8:12,14
   33:16,19,20 34:11
   54:6 63:9 64:15
   72:24 74:20 81:13

genesis 41:25

Genshlea 9:17

gets 74:21

getting 19:12 22:18

Gill 4:13 9:2 34:18

Ginter 2:22 7:16
   16:15 20:15 22:15

23:7,9 24:2,6
   27:11 70:25 74:14

given 13:5 14:1 24:25
   45:1 49:13 53:9
   60:13,14,21,23
   63:8 75:17 81:16

giving 52:17

Glen 6:19 46:20

Glenn/Colusa 46:11

glitch 82:18,25

gor 16:10

Gordon 5:7 8:19 44:21
   63:14 74:25 75:1

gotten 30:14

Gould 5:22 9:11

grant 11:15

granted 11:22 26:25
   47:4 55:21 79:6
   83:22

gray 25:20

great 30:6

greater 64:19

Greg 7:10

GREGORY 2:3

group 8:6,17 9:18
   13:4 27:12,13

growers 3:21 9:6
   16:13 20:24 68:15

grown 17:23

guess 12:15 13:19
   14:2,9,15 19:21,25
   24:20 28:2 29:6 30:7
   37:12 44:4 56:16

guessing 44:4

———————————
H
———————————

hallway 23:25

hand 85:1

handful 12:9

hands-off 17:14

Hanover 81:20

happen 35:24

happened 76:10

happens 13:8,12 83:5

hard 42:8 84:4

Harrison 2:5 7:10

Hart 46:10

harvest 20:5,6

harvesting 18:11
  19:12

haven't 35:14 43:13
  53:5 63:24

having 20:20 45:15
  50:4 66:4 71:16
  78:16

head 37:13

headquarters 77:16

hear 52:8

heard 22:15 24:16
  26:17 30:25 40:19
  44:20

hearing 10:10,17 11:3
  13:8,13 14:7 15:23
  26:9 37:14 49:24
  56:4,6,7 60:20,21
  64:21 73:4 79:18
  82:17,18
  83:4,14,16,17,18
  85:1

heartburn 14:5

held 1:14 30:18 66:18

help 58:21

helped 66:24

hereafter 78:20

hereby 54:10,23 85:1

herein 85:1

hereunto 85:1

Hernandez 1:25 85:1

Herring 3:13 8:5
  74:16

highlighted 54:11

Higueral 4:14 9:2
  34:20

Hoffelt 9:11

Hoffett 5:22

hold 16:19 62:11

holder 53:7 66:17

holders 54:23

Holland 5:8 8:20

home 20:20

Honor 7:9,13,16,19,22
  8:4,7,10,16,18,25
  9:5,7,10,13,16,22
  10:1,3,8,22
  12:4,10,15 13:5
  15:2,3,4,15,20
  16:8,14,21 17:1
  20:4,8,16 21:5,15,24
  22:11,15,21
  23:7,9,11,23 24:6,20
  27:2,6,16,24
  28:11,17,22
  29:4,10 30:3,17,25
  32:9,16,23 33:3
  34:10,24 35:12
  36:5,8,17,24
  37:16,19,23,25 38:17
  39:2,25 40:4,19
  41:5,12,16,18
  42:12 43:2,21
  44:10 45:6,9,17,24
  46:3,16 48:19,21
  49:6,18,23 50:18
  51:1,9,24 52:22
  53:15,20 54:21 55:10
  56:16 58:18
  59:5,8,9,17
  61:3,9,11,15,21,24
  62:4,14 63:12
  64:2,17,25
  65:6,12,20 66:9,21
  67:9,12,18,24
  68:2,5,13

69:18,20,23
  70:9,15 71:10,23
  72:4,5,11,17,21
  73:6,16,19,22
  74:21,23
  75:3,12,20,22
  76:8,17 82:14,20
  83:1,9,13,24

Honorable 1:17

Honor's 27:17 59:18

hope 34:25

hopefully 23:17 30:4

Horn 6:14

horse 25:21 31:4
  35:20

hours 24:1

housekeeping 11:3

_____

                I

i.e 57:24

idea 17:14 51:15

ideal 14:4 64:7
  83:10,12

Ideally 81:5

identified 30:9
  34:1 50:14 51:4,11
  53:5,6 66:4

identify 32:14 42:7
  53:22 59:20 60:4
  67:3 73:25

identifying 29:16
  32:17

IL 3:18

I'll 24:2 29:24 37:11
  38:15 75:7
  83:18,19,21

I'm 12:7 15:9 18:19
  20:9 22:18 27:22
  28:25 29:13 36:23
  37:9 40:1,17 44:15
  49:22 50:5 64:6
  65:21 67:16 68:18

impaired 22:9

implement 23:16

important 16:4,11
   53:13,14 75:13 80:12

importantly 16:19

impression 58:2

inadequate 15:13

inaudible 42:22

Inc 1:8 5:11 8:3,17
   9:15 10:5 30:9,11
   31:25 32:20
   35:3,13 74:11 77:4

inclination 15:12

inclined 13:22
   58:14,15 69:21

include 60:24

included 30:6 70:14
   71:13

including 20:14 32:12
   61:4 62:6 66:1,23

inconsistent 55:17

Incorporated 8:21

increase 78:13,15

increased 78:12

indeed 60:18 65:2,4

indicate 37:22
   55:11 63:17

indicated 20:8
   25:21 76:23

indicates 64:16

indicating 56:25
   67:20

Industrial 7:7 77:4

INDUSTRIES/
   SPECIALTY 1:8

industry 47:10 48:11

inference 63:13

information 43:6 45:3

informed 42:4

Ingersol 6:14 10:4

initial 10:19
   21:12,13 55:25 64:22

initially 30:21 46:25
   64:23

inquired 11:3

insert 27:23

insertion 71:10

inside 24:10

instance 18:4

instructed 23:18

instrumental 46:23

insulated 17:11 19:21
   20:4

intended 44:2 70:20

intent 44:13 70:21
   71:18 81:8

inter 29:13

interchangeably 77:24

interest 25:18
   43:11 47:14 48:4
   50:3,12,15 51:4,16
   52:15 53:3,13
   54:16 55:3 59:20
   60:3,4,6 62:10 63:19
   65:5 68:7,21 69:2
   80:23 81:5

interested 24:21 48:6
   56:24 81:17 85:1

interests 65:4 66:2,4
   82:8

International 4:12
   9:1

interrupt 36:23

involuntary 77:8,10

involved 25:17 33:17

irrelevant 42:19

Irrigation 46:11

I's 13:24

isn't 21:7 50:7
   54:15,18

issue 15:16 22:19
   26:7,13 39:2,4,15
   41:4 52:10 55:9
   58:15 62:17 83:6

issued 11:18 13:9

issues 11:3 12:2
   14:10 15:21
   39:9,20 46:14
   58:17 83:19

item 28:2,7,9,23
   32:19,25 33:6,15
   38:8 76:1

items 28:2 50:5
   68:3 75:25

it's 12:2 15:16
   25:20,21 31:16
   33:23,24 35:15,20
   37:8 38:22 41:25
   42:8 50:7,16 51:7
   52:14,17
   54:9,14,18 59:15
   61:14 62:24
   63:4,19 64:7,13 67:4
   70:1 75:9,10 82:23
   83:21 84:3

---

J

James 3:16 8:7

Janowsky 4:15 9:1

Jensen 5:4 8:19

Jensenm 74:10

John 2:10 7:14 69:23

JP 4:3

Judge 12:25 17:5
   20:19

Julie 4:8 9:16 42:12

July 47:5 78:11 79:14
   85:1

jumped 49:15

**June** 7:2 56:7 57:1
  61:14 76:14 78:9
  79:8,17,21 80:18

**jurisdiction** 54:22
  68:24

---

K

**Kailas** 4:20 8:11
  74:19

**Kasowitz** 2:17 7:20

**Kevin** 2:4 7:9

**kick** 14:13 47:25

**Kirby** 3:8 7:25

**Kohner** 4:20 8:11
  74:19

**Kraft** 33:9,12

---

L

**Lake** 6:8 10:2 18:10
  21:25 22:2,6,25
  24:13 31:25 32:17
  75:16,21

**Lake's** 22:8,13,22
  31:25 32:7,10

**land** 40:7 56:15

**landscape** 13:22

**language** 43:10
  49:21,22 50:6,9
  51:8,21 54:20
  64:16 66:11,13 81:12

**Lapping** 2:9 7:13
  12:3,4,6,10
  29:7,10 31:21
  32:19,24 33:4,9
  34:16 35:2 36:5,7,22
  38:1,14 40:4,22
  41:5,8,16,21 44:10
  45:9,14,17
  46:16,20 48:19,23,25
  49:6,12,18,23
  50:18
  51:1,9,12,18,24 52:4
  53:15,20 54:1,5,13
  55:10,24

56:3,13,16,20,22
58:1,18,20,25
59:4,8,14,17 60:24
61:1,3,8 62:14 63:12
64:25 65:19,20
66:1,9,21 67:9,12,18
68:2,5,11,13,15
69:9,13,20
70:11,15 71:23
72:4,11,21
73:2,6,16,22
74:6,8,21
75:3,6,12 76:8,17
81:11
82:9,11,20,25
83:9,24

**lapsed** 58:1

**large** 59:19

**last** 10:9 13:2
  14:15 18:7 34:12
  38:7 49:9,24 56:1
  71:1 75:15

**lasts** 78:12

**late** 10:9

**later** 17:12 58:4

**law** 2:4,11,16,22
  3:3,7,12,16,22
  4:4,8,15,20
  5:4,7,11,12,17,21
  6:4,8,13 8:17 57:19

**laws** 44:16

**lay** 56:15

**lead** 60:1

**learned** 22:17

**lease** 31:23
  36:11,12 69:10

**leases** 30:8 35:5,9
  50:19 68:18 69:11

**Leasing** 69:9

**leasor** 10:5

**least** 11:5 14:20
  26:12 63:1

**leave** 26:7 37:11
  67:17 70:19 74:21

**leins** 53:23 81:9

**Lemoore** 33:22 35:6
  47:24 48:6 78:5

**Len** 46:10

**lender** 8:6 25:11
  62:23

**lenders** 8:9 35:17
  60:10 74:17
  78:19,22,23,24
  79:3,5

**lengthy** 12:22 33:9

**Leslie** 6:20 46:22

**less** 79:11,24

**let's** 38:1 55:8 56:19
  73:24 75:10

**Levinson** 3:12 8:4
  52:9 74:16

**Lewis** 2:5 4:4 5:21
  7:10 8:2 9:10 74:13

**liabilities** 32:11
  57:20

**liability** 57:18

**License** 85:1

**lien** 9:3,9 50:3,12
  51:16 52:14 53:6,7
  54:16,23,24 58:17
  60:6 62:24 63:1,19
  64:10 67:22 68:7,8
  79:6 81:25

**lien-free** 51:21
  52:12,21 55:3
  62:24
  63:4,7,11,17,25
  64:4,10,13,16,24

**liens** 50:20,22,23
  51:4 53:2,13 54:25
  59:15 62:13,20 63:20
  64:11 66:18
  81:1,3,6,15,18,24
  82:4,8

**light** 24:21 28:17
    55:10

**likelihood** 25:16 75:8

**limited** 1:5
    13:10,12 19:17 42:15
    44:7 61:18 62:6 63:8

**limiting** 13:10

**line** 29:25 32:1
    49:8 69:16 71:12
    78:19

**lined** 49:9

**lines** 26:3 34:12

**lining** 55:17

**liquidation** 42:5
    79:23,24 80:19

**list** 30:12,13
    40:14,24 46:4,6
    47:11,13 60:14,20
    61:9,10

**listed** 41:6 66:12
    69:3 81:13

**listing** 47:9 65:3
    66:25

**literally** 53:10

**litigation** 25:17
    28:13 42:15,20 43:9

**little** 20:17 28:1
    47:4 70:19

**live** 41:22

**LLC** 2:15 7:21

**LLP** 2:11,17 4:15
    6:9 7:17,20

**loan** 78:20

**located** 77:14

**lodged** 75:10

**long** 23:8 28:15 30:13
    57:19 72:18

**longer** 59:24

**long-time** 20:24

**loosely** 19:13

**loss** 80:18

**lot** 12:23 59:22
    60:21,23

**love** 73:6

**LP** 1:5 7:7 77:3

**luck** 84:6

**Lunch** 59:11

**lynchpin** 76:24

———————————
M
———————————

**macdonald** 6:13

**MacDonald** 10:5
    36:10,18,20 50:23
    70:10,12

**magnitude** 47:11

**mail** 60:24 61:21

**mailing** 13:10

**maintained** 77:16

**major** 25:11,12 78:4

**majority** 25:25

**Malcolm** 3:7 7:25

**Mall** 2:23 3:5,13
    4:9 5:8,22 6:5

**management** 47:12

**Managing** 6:19 46:21

**Mann** 4:20 8:11 74:19

**Manock** 5:4 8:19 74:10

**Marc** 3:12 8:4

**March** 46:25

**Marcus** 2:10 7:14 46:1
    61:11

**Marion** 4:14 8:25
    34:17

**Mark** 5:7 8:19 74:16
    75:1

**market** 5:12 48:14

**mass** 60:24

**material** 40:10 50:15

**matrix** 64:15 66:12
    81:13

**matter** 27:18 38:22

**matters** 10:16 24:23

**may** 10:7 12:14 15:2
    17:12 25:8 26:2,21
    27:14,23 30:13
    31:7 36:23 40:19
    42:23 44:17 46:19
    53:16 61:8 68:1 69:9
    77:3,4,6,9,21,23
    78:2,9

**maybe** 11:21

**McClellan** 6:14 10:4

**mccutchen** 3:22

**McCutchen** 9:6

**McDonough** 5:8 8:20
    74:25

**McManus** 12:25 17:5
    20:19

**mcquaid** 6:13 10:3
    36:17 70:9 72:17

**McQuaid** 10:4 36:17
    70:9 72:17,23

**mean** 13:11 14:5 19:22
    37:4,5 39:6 49:12
    50:2,7,18,19 53:5
    62:18 63:15 64:6
    74:8 75:7,8 76:11
    82:18,25

**meaning** 45:1 47:23
    71:17

**meant** 68:18

**mediated** 12:25

**meet** 19:23

**meets** 40:7

**Megan** 5:21 9:10

**memberly** 66:10

**Memorial** 31:22

memory 65:1

mentioned 37:20 49:23

mergers 48:12

meritorious 84:4

merits 25:17

Michael 6:13 10:3
36:17 70:9

middle 54:8,9

Mike 72:17

million 17:9,22 19:21
31:5 78:23

Mills 4:19 6:25
8:12,14
33:16,19,20 34:11
72:24 74:20

Milwaukee 4:21 8:11

mind 20:22

mine 65:21 66:7

minor 38:17 57:9

minutes 20:9
23:9,25 65:7,11

missing 12:1

mission 44:11

mode 55:4

modification 16:25
17:2 36:3 57:8,9

modifications 25:1

modified 16:8
18:14,21 19:23
21:17,19,22 24:4,17

modify 19:8

moment 22:15 53:15

moments 22:4

Monday 13:9,14
14:7,14 82:22 83:5

money 17:9,10,14
18:1,2 19:18,21
20:4,6,7

Monroe 3:17

Monterey 77:17

Montgomery 2:5

month 37:6

Montreal 3:12 8:5,8
32:25

MORGAN 4:3

morning 4:8
7:5,9,12,13,16,19,22
8:4,7,10,16,18,25
9:5,7,10,13,16,17,22
10:1,3 11:13 16:15
20:17 21:17 22:18
23:1,15 29:10
40:23 41:22
42:4,13,22,24
43:17 44:21 49:14

mostly 35:6

motion 10:19,20,24,25
11:4,6,7,10,12,14,18
12:6,12,16 13:3,13
14:10 16:1 21:8 22:3
25:4,22
26:4,9,12,14,16,18,1
9,20,22
28:3,4,6,8,16,20,21,
25 29:7,8
37:2,7,14 45:22 46:9
49:15,16
51:19,21,23,25
52:2,21 54:24
55:7,11,14,19,22
56:4,5,9 60:25
61:1,7,10,17
62:4,6 63:17 64:12
75:16,22,24
76:2,3,4,5,6,10,13,2
2,25 77:19 81:2,4
83:17,20

motions 10:23 28:9,24
29:12 52:7 75:23
76:1

move 14:22 16:3,14
34:8 40:1 55:8

moving 28:21,24
35:4 76:1 83:22

Mulane 81:20

mute 33:14 75:17

muted 38:6 75:23

mutes 28:6

myself 32:17

_____

N

Nancy 74:1

narrow 10:16

nature 26:2 47:11
48:1

necessarily 18:5
31:16

necessary 11:4,18
17:3

negotiated 19:20
20:19 25:9 30:6

negotiations 30:24

newly 48:5

news 29:11 52:19

night 10:9 13:2 34:13

Nobody 25:13

nodding 67:13

Nolan 6:20 46:22,23
47:7

non 40:10 43:8 47:16

none 9:20

Nonetheless 20:21

Nor-Cal 3:21 9:6

North 5:5

Northern 77:15

note 63:16 83:21

noted 32:1

nothing 22:11

notice 12:25
13:2,6,9,12,25
14:3,14
15:7,10,13,25

16:18 25:11,12
26:18,25 42:20
43:3 44:25 45:5
47:21 49:24 50:10,16
51:15 52:5,6,16,17
53:8,9 54:24
55:5,6 56:14 59:19
60:2,5,6,13,17,19,23
,25 61:4,19,22,25
62:4,12,23
63:3,7,8,10
64:3,10,13,15,18,19,
20,22,23 65:22 66:12
67:6 76:6,12,14,15
81:4,8,9,11,16,18
82:1,6

noticed 81:3,6

notion 57:13 58:6

notwithstanding
26:5 57:23

nub 34:5

Nuti 2:3 7:10

NY 6:10

---
O
---

Oakland 4:16

object 45:12 48:16
55:2,7 64:4 67:14,19

objected 31:18 53:22

objecting 42:14

objection 13:18 15:22
16:2 24:11
31:10,22
32:2,13,20
33:1,2,7,9,13,15
35:2 38:3,6
41:8,21,22,23
42:3,7,10,15 44:8
67:24

objections 14:11,21
15:6 29:17 31:7
34:20,23 35:24
38:7,10 41:13,15
45:10,15 51:13 53:23

objectives 79:12

objects 24:17

obligated 78:18

obligation 17:20

obtain 17:21 18:8
30:22 48:7 53:1
79:18

obtained 48:14
53:11 79:15

obtains 43:25

obviously 29:10
30:2 54:22 56:23

occur 35:22

o'clock 7:6 26:10
58:16,24 59:7
83:4,9,15

Odenberg 6:3 9:14
33:5,7 69:9 72:14
74:18

Oelsner 4:8 9:16
42:12 43:10,13,21
44:6,25 45:6

Oeslner 43:19

offer 29:23 30:3
46:18 48:17 57:11
62:20 66:15,21
67:15,18,20 68:1,5
81:23

offered 81:22

offering 64:8

office 13:3 26:8,10
31:24

offices 30:19 57:1
72:13

Official 2:21 7:17
19:19

officially 30:18

Oh 18:19 68:5 74:8

okay 20:16 21:16
22:10 27:25 29:6
31:20 56:16,20

59:4,13 69:13 72:4

Olam 5:3 6:22
8:20,21,22 19:2
22:7,8,21,23 30:9,10
31:5 34:25 39:11
40:20 48:8 53:14
67:24 74:11,24

Olam's 39:17

ones 61:18 64:12

one-year 18:15

Onion 9:3

Onions 4:12,13 9:2
34:18,19

oOo 1:13,18 7:1,4
18:16,18 20:10,12
23:12,14,19,21
38:11,13 53:17,19
59:10,12 65:15,17
72:1,3 84:7,9

open 26:22,24

operate 78:15 79:7,21

operated 78:7

operating 16:12 34:2

operation 30:23
42:6,16 80:17

operations 4:19
8:12 48:7 79:10

opinion 11:4 52:12
63:3

opportunity 14:11

opposed 12:8 22:1

opposes 16:23
21:19,21,22 25:13

opposing 21:16 49:2

opposition 77:20

option 18:15

order 10:14,20
11:5,7,12,13,14,15,1
8,23 12:2,8 13:9
26:8,12,15,21,23
27:4,5,15,23

28:4,8,15 31:8
34:4,7,12 36:7,22
37:4,15,21,22
39:24 40:2,4,9 43:11
45:3 49:13,15,21
50:10 51:22
53:1,11 54:10,11
55:18,20,21,22,25
56:11,21,22
57:5,16,24 59:1
60:1,2 64:1,5
65:21 68:16,22
69:5,15,25 70:4,5,14
71:1,3,7,9,12,16,22
72:9,13,16,19,25
73:5,8,11,20
74:2,5 75:16 79:4,17
82:12,16,18
83:15,20,22,25

**orders** 30:1 48:20
49:7,9 50:7 56:17
69:21 73:15

**ordinary** 80:2

**organized** 47:18 48:5

**Orick** 74:16

**original** 17:2

**Orrick** 3:13 8:5

**OSC** 61:16

**others** 51:12 66:23

**ours** 36:6 74:23

**ourselves** 70:19

**outcome** 85:1

**outlined** 11:19 45:14

**outside** 57:6 80:1,12

**overlooked** 70:20

**overly-broad** 39:21

**overt** 44:13

**owed** 32:3

**owing** 32:2 78:22

**owned** 33:20

**owner's** 39:16

**ownership** 33:23
40:15,25 41:6

**owns** 78:5,6

---

**P**

**P.O** 4:16 5:18

**PACA** 31:13,14 34:21
50:19

**pack** 9:3,9 16:13

**packaging** 77:13 78:4

**packing** 50:20
78:10,11,16 79:10,14

**page** 32:1 54:8 62:4
71:12

**pages** 59:4 61:14

**paid** 17:10 18:1,2
19:13 32:6 35:8
36:20 70:14,16,17,20

**Palm** 5:5

**Palo** 3:23

**papers** 21:7

**paragraph** 37:22
54:8
57:2,3,5,8,10,13,17,
21 58:3,6,9,11,20
65:22,24 71:1,11,13

**parcel** 15:17

**pared** 46:6

**Park** 6:14

**Parkinson** 6:3,4
9:13,14 33:8 69:12
74:18

**partially** 76:23

**particular** 31:12
33:21,25 46:8
50:3,12 51:16
52:15 60:4,21 81:15

**particularly** 20:22
30:22 51:4

**parties** 12:18,21
14:11 15:18 16:19

17:11 21:8 23:4
24:21,24 29:1 34:8
35:25 37:11 42:20
43:3,14 44:25 45:1
46:10,13,24
47:9,20 48:3
51:10,11 53:22 55:15
56:25 58:10 59:20,22
60:2,18,22 61:21
65:3 66:3 67:22
68:21 69:16 73:15
74:1,4 75:5 78:20
81:3,4,17,23,25
82:10,15,16,23
83:3,8,22 85:1

**Partnership** 1:5

**party** 28:21,24
43:24,25 53:3
54:23 55:6 57:19
60:3,5 62:22,23 67:3
69:1 76:1 81:5

**Pascuzzi** 3:3,4 7:22
15:2,9,15 16:7 20:13
21:5,13 25:21
27:6,16,24
28:11,20,22 38:15,17
39:8 40:22
41:12,17,18 68:20
73:19,23 74:12

**Pascuzzzi** 7:23

**passed** 79:21 80:17

**past** 10:24

**Patricia** 1:25 85:1

**Paul** 3:3 7:22 15:2
21:5 27:6 73:19
74:12

**pause** 32:7

**pay** 17:5 31:14
35:10 36:13 70:21

**paying** 50:21

**payment** 36:14 70:20

**payments** 32:12

**pending** 17:16 42:15

**people** 14:14 41:3
66:23 84:4,5

**perception** 44:24

**perform** 19:5

**performing** 70:6

**perhaps** 16:19 43:21
55:10

**period** 58:1 63:23
71:4 78:14

**perishable** 77:13
80:5,14

**person** 85:1

**personal** 43:6 78:25

**persuant** 49:15
77:11 79:3,17
81:6,10 82:4,8

**pertain** 46:11

**Peter** 5:16 9:22

**Peterson** 6:24 8:14

**petition** 78:18,22

**petitions** 77:8,9,10

**ph** 46:10,22

**Phelps** 6:20
46:21,23 66:23

**Phinney** 6:4 9:14

**Phoenix** 4:5

**phone** 9:21 10:6 21:20
24:16 25:13
32:8,14 36:11,15
75:21

**phones** 23:18

**phrase** 66:1 71:15

**piece** 45:3

**piecemeal** 42:6,19
79:22,23 80:19

**Piper** 6:9 10:2 75:20

**pitched** 52:20

**placed** 47:21

**plan** 57:6 72:11 80:12

**plant** 16:12 33:21
47:1,2 78:5,6

**plants** 33:22 47:2
77:14 78:5,6

**players** 25:13

**Plaza** 5:12

**pleadings** 33:10

**please** 23:15 59:13
65:10,18 74:7

**plus** 17:7 60:19

**podium** 29:7

**point** 4:14 9:2 22:1
30:20 31:3 34:19
36:24 40:18 48:3
50:6 51:5 58:3
60:9,10 63:15,16
65:5 68:6 77:23
82:10 84:1

**pointed** 40:6 41:1
64:25 68:16 81:12

**points** 38:18

**polled** 24:10,12

**pop** 63:23

**population** 59:19

**Port** 4:21

**position** 47:10 54:2
63:9 67:11 68:8

**possession** 42:23

**possible** 15:25 19:3
29:23 31:13 47:9
48:15

**possibly** 33:21
47:14 51:12

**post** 30:23

**post-closing** 48:7

**post-compromise** 12:17

**post-petition** 79:6

**potential** 24:24 47:21

58:9 66:4

**potentially** 34:21

**practical** 13:15

**precautionary** 25:23

**prefer** 56:17

**preferred** 13:7 42:18

**prejudice** 18:25 75:24

**premised** 36:3

**prepare** 13:17 78:10

**prepared** 15:8 19:6
25:2,15 26:6 27:22
40:1 49:2,4 51:7
63:17,25 66:15

**preparing** 12:23

**present** 6:18 7:12
8:22 32:22
33:7,12,16,20
35:11 68:4 73:5 83:6

**presented** 15:10

**presenting** 37:1

**presently** 22:19 32:2

**preserve** 71:8

**preserved** 43:8 71:4

**President** 6:20 46:22

**Presiding** 1:17

**presumption** 67:5

**pretty** 59:24

**previous** 64:19

**previously** 49:10

**price** 32:7 48:15

**prior** 12:20 43:17
77:9 79:14

**probably** 54:19

**problem** 15:4 35:20
41:2 59:3

**procedural** 26:13

**procedurally** 10:19

procedure 79:16

procedures 10:19
   11:5,19 49:17 79:17

proceed 10:7 12:14
   13:12 23:16 24:23
   29:23 45:4,15
   46:17 66:15 68:1

proceeded 12:11

proceeding 21:9,10
   23:17 29:3 45:1
   52:15

proceedings 1:14
   7:3 24:1 77:6 84:8

proceeds 35:9

process 30:12 42:24
   45:17,21 47:3
   48:1,12 53:5,20
   60:17 72:9
   73:11,13 84:4

processing 77:13,14
   78:4

Processor 8:21

Processors 5:3 6:22
   30:11 74:11

produce 4:14
   9:2,3,9 34:20

products 77:14

professionals 48:11

progress 84:5

proof 29:24 46:18
   48:17 57:11
   61:6,13 62:20
   66:16 67:15,18,20
   68:1,6 81:23

proper 55:4

properly 12:20

property 38:21
   39:20,22 63:19
   66:2 67:2 68:7
   69:4,6,7 78:25

property's 39:17

proposal 17:2 19:22

propose 14:13

proposed 7:10,17
   10:10 11:13 14:25
   22:12 24:11,17
   30:1 32:3 34:3 42:14
   43:11 45:2 48:20
   49:7,9,13,21

protect 42:25
   43:14,22

protected 43:7

protection 19:15,18

protections 15:18
   19:16,17

protective
   28:4,8,14 32:25

provide 51:15 52:5
   53:12 61:16 71:6

provided 13:1 35:24
   45:5 52:16 81:10

providing 52:5

provision 17:18 19:20
   52:13 57:9 58:12
   68:22,23 70:15 71:18

provisions 39:24
   49:25 51:6 54:2

prudence 14:6

prudent 63:4 72:6

publication 60:15

pull 59:21

purchase 17:22 19:3
   30:5 31:2,6
   39:5,10,19 40:24
   45:19 46:6
   47:10,14 54:4,5 69:4
   71:15

purchaser 18:9
   30:11 49:3 56:23

purchasers 47:22

purchasing 48:6

purported 23:3

purporting 39:16
   68:17

purports 71:2

purpose 45:22 71:7

pursuant 60:12

puts 63:18

Putterman 2:16
   7:19,20 16:6
   20:3,13,16 27:7

─────────────
          Q
─────────────

qualifications
   30:22 31:15

qualified 30:20,21
   31:14

quantifying 26:2

Quesenbery 4:14
   8:25 9:1 34:17,24

question 12:25 14:2
   22:22 40:15 49:25
   55:9

questions 30:3 56:18

quickly 23:6

quite 40:7

quote 62:5

─────────────
          R
─────────────

R.F 6:13 10:5
   36:10,18,20 50:23
   70:10

raise 14:11

raised 70:1

raising 54:19

RAL-21 11:17,19
   12:2,8 49:16 51:19
   76:5,25

RAL-212 10:20

RAL-22 11:11

RAL-23 11:15,17,21,23

12:6,9 55:23 77:1

**randomly** 64:1

**rather** 32:19 33:6
58:7

**re** 1:4,7 81:20,21

**reach** 10:15 19:3
34:25

**reached** 17:4 34:14
35:14,25 36:13,19
46:12 70:12

**reaching** 12:24

**ready** 47:3 65:14

**real** 44:15 67:2 78:25

**realize** 52:1

**really** 11:5 15:21
25:24 34:2 37:8
38:18 42:9 60:2
63:24

**reason** 11:22 12:7
13:18,24 14:7
54:15 60:4 74:25

**reasonably** 81:16

**reasons** 12:11 25:24

**recall** 11:8,9 17:15
55:21

**receipt** 22:3

**receive** 22:2,3
37:15 64:3 81:8

**received** 35:2 50:10
51:13 52:6 54:24
55:6 62:23 63:6,16
64:10,12 67:6
81:25 82:5

**receiving** 80:22 81:4

**recent** 10:24 60:25

**recess** 22:16
23:5,13 58:15
59:11 65:9,16

**recital** 58:20

**recitation** 61:4

**recite** 26:23

**recited** 70:11

**recognizes** 37:19

**recollection** 51:20

**reconcilable** 54:2

**record** 15:1 18:17
20:11 22:2,5,20
23:20 24:4 25:5
30:10 31:3 38:12
49:4,11 50:6 53:18
69:15 72:2,8,19
76:22

**records** 43:16 67:1

**red** 29:25 34:12
49:8,9 69:15 71:12

**reduce** 30:12

**reduced** 34:6

**reference** 36:9
57:17 65:1,23
66:14 71:16

**referenced** 16:8

**references** 62:10

**referred** 77:3,5,7
78:21 81:12

**referring** 40:22

**reflect** 34:13

**reflected** 36:14

**reflection** 35:8

**reformed** 40:9

**regard** 12:19 41:14
49:1

**regarding** 39:16

**regards** 7:7 25:5
64:23 82:6

**rejected** 32:4

**rejection** 75:17

**relate** 41:24

**related** 17:24 25:10
29:13 35:5 41:14

58:12 67:1

**relates** 36:9 61:25

**relationship** 59:23,24

**relationships** 20:24

**relevant** 17:6 47:20
77:12 79:12 80:1

**remain** 65:18

**remember** 66:9

**removed** 38:21,22
82:19 83:7

**rendered** 33:14

**renewed** 11:13
55:19,20

**renoticed** 55:14

**reorganization** 57:6

**repeat** 74:3

**replacement** 79:6

**report** 29:15

**reported** 1:25 85:1

**Reporter** 85:1

**Reporter's** 1:14

**representation**
42:1,18 45:7

**representatives**
6:25 8:13

**represented** 22:24
38:24

**representing** 8:11
9:11,14,17,24 10:4

**represents** 32:4

**request** 11:7,14 22:16
26:23 28:12,16 48:20
55:22 56:10 61:19
81:17

**requested** 26:22 47:20
68:21 70:2

**requesting** 82:10

**required** 10:16 17:8
19:9 43:14 72:23

**DIAMOND COURT REPORTERS**
1107 2ND Street, Suite 210
Sacramento, California 95814
(916) 498-9288

requirement 50:16

requisite 63:22

rescheduled 64:20

rescue 44:11

reserve 35:23

reserves 22:2 68:24

reset 56:6

resolution 16:2
   28:5 31:11 32:21
   33:11 35:7 64:2

resolutions 10:15

resolve 16:11 68:25
   71:7

resolved 15:6 33:2
   38:10,15
   39:1,18,24,25
   40:17 41:4,10
   45:16 46:14 53:23

resolves 33:7 34:23

resolving 50:21

respect 29:8 30:17
   40:12

respective 77:18

respond 12:3

response 55:13

rest 58:22

restrict 39:16

result 56:7 78:15
   79:22,24 80:18

resulted 10:20

resume 23:8,10
   58:16,24 59:6

retained 78:2

return 79:24

reverse 40:5

review 47:17

reviewed 13:21
   34:12 47:11 49:13
   58:23 83:3

revised 49:24

revising 66:9 72:13

revisions 70:5

revisited 55:20

revolving 78:19

RHM 1:8 7:7
   77:4,5,6 78:6

Richard 2:9 7:13 38:1
   82:20

rights 22:13 24:14
   39:11 60:18 71:2,8

risk 13:15 16:20
   24:25

risks 15:18

River 4:14 9:2 34:19

RL-23 45:23 46:3

road 4:21 6:14 60:8

Robbins 6:24 8:14

Robert 1:17 5:11 8:16

Roca 4:4 8:2 74:13

Roldan 6:8 10:1 21:24
   32:9,15,16,17 75:20

room 47:17,18 66:24
   70:19

rule 21:9 23:16
   50:11,15 55:6
   61:17 63:5 77:11
   81:7,10

ruling 15:11

rushed 20:17

Ryan 4:15 9:1

---

### S

Sacramento 1:2,15
   2:24 3:5,9,14 4:9
   5:9,23 6:5 60:16
   85:1

sake 16:13

sale 10:25
   11:4,6,13 12:2 13:13

15:6,17,19,20,22
   16:2,3,12 19:9 21:21
   25:4,7 26:4
   29:8,11 30:1
   35:18,23 37:4,15
   41:9,11,14 42:5,14
   43:11 45:4,13
   46:24 47:13 49:20,24
   50:2,3,17 51:21
   52:12,14,17,21,24
   53:11 54:10,11,24
   55:3,5,7,11
   56:4,21,22 57:6
   58:17 59:15,19 60:11
   61:17 62:1,4,5,22,24
   63:4,7,11,17,22,25
   64:4,10,14,16,24
   66:18,19 67:21
   68:10,11 69:5,6
   75:23 76:3,4,24
   79:13,16,19,20
   80:1,2,7,9,11,15,16,
   23,24 81:1,2,3,14,24
   82:3,5,7 83:16,17,20

sales 15:16 25:22
   36:4 37:21

Salinas 5:18 31:21

Salyer 3:3 7:24 8:1
   15:6 17:24 19:13
   20:1 22:9 25:10
   28:12 31:1 38:8
   41:9,13,14 68:20
   74:12 78:21

Salyer's 18:24 28:3

Sam 34:10 72:24

Samuel 4:19 8:10
   74:19

San 2:6,12,18 5:13
   30:19

satisfied 13:25 58:22

saved 23:25

saw 43:10 51:21 61:6

scanning 54:9

schedule 38:19 73:8,9

75:13

**scheduled** 52:4

**schedules** 59:21

**Schnader** 2:5 7:10

**scope** 29:21 60:21

**Scott** 3:3 7:23 8:1
    38:8

**search** 44:11

**season** 78:10,11,16
    79:10,15

**seasonal** 78:8,9

**seated** 23:15 59:13
    65:18

**second** 10:25 17:19
    30:21 48:8

**secondly** 43:5

**secret** 42:21 44:14
    60:6

**secrets** 41:24 42:8,25
    43:4,6,23

**section** 39:19 52:25
    54:3,6 62:6 65:23
    79:25 80:2,25 82:4,8

**sections** 62:11 66:14

**secure** 19:2,9

**secured** 8:6,9 25:11
    35:5,16 37:18
    60:10 62:23 67:7
    74:17 78:21,24
    79:5 82:6

**security** 54:16

**Sedgwick** 5:12 8:17

**seeing** 37:13

**seeking** 17:16 54:7

**seeks** 46:7

**seemed** 25:25

**seems** 72:6

**seen** 35:14 48:21 50:7

**Segal** 2:5 3:7,8

7:10,25

**Select** 4:12 9:3 34:19

**sell** 25:6 38:25
    41:1 44:2,14 47:1
    62:19 81:8,17

**seller** 43:15 53:1

**selling** 40:16
    50:20,21,22 60:12
    62:9,13

**send** 73:17

**senior** 47:12
    78:21,23,24 79:3,5

**sent** 49:24

**sentence** 54:9 71:1,6

**separate** 50:16 77:5

**separately** 31:13
    77:3,5

**September** 78:12

**series** 34:16

**serve** 13:2 61:9,16

**served**
    61:7,8,14,19,20,22
    64:19

**service** 26:10 50:14
    55:4 61:6,13

**session** 12:22

**setting** 80:21

**settled** 28:14

**settlement** 12:24
    16:2,8 20:18
    21:3,12,13,17
    22:1,5,9,12 23:1
    26:18,19 27:4,17
    28:18 31:1 38:10
    41:11,19

**settling** 15:21

**seven** 43:15,16

**several** 34:1

**share** 52:9 55:16
    62:16

**Sharp** 2:3 6:18 7:11
    67:15 77:20

**sharper** 65:20

**short** 16:17 23:5
    25:12 66:10

**shorten** 56:1

**shortened** 51:23

**shortening**
    11:7,14,15,23
    26:8,12,21,24
    51:25 55:18,20,21,22
    56:11

**shorter** 30:13,14

**shorthand** 85:1

**shortness** 13:5

**showed** 67:1

**shown** 60:22

**sign** 27:5 40:2
    72:15,19,23,25
    73:15,17,20
    74:1,4,22 82:18
    83:20

**signature** 27:10 73:22

**signatures** 27:15
    35:15 72:12

**signed** 35:16,17 37:17
    47:15 75:8,10
    83:7,17

**significant** 78:9

**significantly** 79:24

**signing** 74:9

**silence** 67:25

**silent** 64:23

**simply** 13:13 33:24
    42:19 57:13 64:20
    66:13 67:6 82:18
    83:18,21

**sit** 40:23 41:3

**site** 47:23

**sites** 47:25

situation 19:5
35:21 44:17 60:12
64:7

six 60:20 82:21

SK 1:5 7:7 28:9 40:25
77:4,6 78:5,7

slight 14:24 20:3

slightly 10:14

Smith 6:22 8:22
48:24,25 49:5

smoothly 23:17

sold 33:24 40:13 43:4
47:2 50:4,11,13 51:5
80:14,21 81:6

solicit 67:16

solid 48:14

solution 62:17

somebody 54:16

somehow 44:15 54:17
58:2 70:20

someone 67:14

sometime 75:9

somewhat 17:25

sorry 18:19 20:9
36:23 65:21 74:8

sort 44:11 59:23

sorters 9:15

sought 46:5

sounds 22:4 75:22

space 70:22

speak 22:16 24:7

special 2:9 7:15
61:18

Specialty 7:7 77:4

specific 11:7 45:3
54:7

specifically 52:12
54:3 56:25 73:24
80:4 81:11

specifies 11:19

specify 62:4

spending 12:22

spent 23:24

Spiotto 3:16 8:7
33:3,4 37:19,25 71:2

spoke 32:18 71:1

spoken 39:23

SSC 2:15,16 7:20,21
12:18 14:25 15:5
16:6 17:10,19,23
19:7 20:1 22:12 24:4
27:8 38:8

stand-alone 12:8

standards 19:24

standpoint 53:6

stands 83:23

Star 4:8 9:18 41:22
42:4,13,22 44:21

state 32:15 42:2,16
85:1

stated 67:5 82:11

statement 27:17 55:18
67:13

statements 48:17

States 1:1,15

status 59:15

statutory 62:5

stay 27:19 57:21

stayed 42:16

step 40:1 60:19

Stephen 8:22
48:22,24,25

stepped 53:22 65:4

Steve 6:24 8:14

STEVEN 6:22

stipulated 38:5 70:13

stipulation 29:2

36:19 37:7,14
46:12 70:11,13 72:18

stipulations 30:17

stocking 31:4

Strawn 2:11 7:15
30:19 69:24

Street 2:5,12,17
3:8,17

strong 48:4

structured 39:11

subcontract 39:15

subcontracting 39:11

subcontracts 39:12

subject 34:22 36:25
37:20 39:22 40:15
50:3 52:5 71:6

submit
26:8,12,15,21
27:14 29:1 48:10
83:22

submitted 29:25
42:1 48:4 49:1,10
53:11 56:10 69:16
75:5 82:12

submitting 72:5,10

subsections 62:7

subsequent 10:23
55:22

subsequently 17:13
18:4

substantial 20:21
80:6,18

substantially 10:16
78:25 80:2,8,11

substantive 17:16
21:8

success 25:17

successful 12:24
17:21 18:9 19:2,11
22:7 29:16 79:19

successor 57:18

sufficient 65:11
 73:14 81:19

sufficiently 81:2

suggest 10:13 26:7
 64:3

suggests 42:7

Suite 2:5,17 3:5,8,13

sum 15:21 17:5

summarizing 12:7

summing 76:12

supplement 18:25

support 21:2 46:13

supportive 24:3

sure 11:17 13:23
 15:25 21:14
 40:2,17 44:15
 63:21 68:18 70:12,18

surfaced 52:9

surprise 52:10

surprised 52:18

Sutclisse 3:13 8:5
 74:17

sworn 67:16

syndicate 78:19

Systems 31:22

———————————
T

taking 48:16 56:22

talk 29:13,20,22
 51:20

talked 56:4

talking 76:15

talks 39:19

technical 29:20 30:15

T'ed 15:21,25

telephone 24:12

telephonically 5:16

temporary 78:13,14,19

ten 23:24 65:12

ten-day 27:19
 57:21,24

term 18:14 71:12,21
 78:20

terminated 12:20 39:9

terms 19:3 20:2
 23:1 30:2 39:15 40:9
 69:17 71:16

testify 47:7 65:2

testimony 64:8 67:16

thank 10:8 12:15
 23:11,23 27:24 34:25
 37:25 48:19 49:6
 59:8,9 68:2,13
 75:2,12 83:24

that's 12:4,10
 15:12 20:15 32:9
 33:8 41:5,16 45:24
 48:23 49:18 55:24
 58:18 61:15 67:9
 69:12 75:22 76:13

thereafter 85:1

therefore 38:6

they're 27:20

third 43:24,25
 62:22,23 67:22

Thompson 6:14 10:4

thoughts 59:17

three-page 61:3

Thursday 7:2 56:7

THURSDAY,_JUNE_25,
 _2009 1:16

tied 26:13

tight 73:8

timeline 75:4

tires 47:25

title 50:8 67:1

Tne 47:23

today 8:13 11:16 12:1
 13:16 14:18,21
 15:1,5
 16:2,3,14,21 21:23
 24:5,22
 25:2,4,8,13,19
 26:9,17,20,22
 32:22 42:14 46:20
 49:1 52:3,19 60:15
 64:8 69:15 73:8,9,15
 75:10 76:11 79:11
 80:10

today's 56:7 79:18

tomato 3:21 5:3
 8:21 9:6,15 18:3
 19:18 20:5,21
 22:25 30:10 42:9
 68:15 74:11 78:10,11
 79:10,14

tomatoes 17:23
 19:3,10 32:5,6,12
 47:3 77:13 78:8

tomorrow 73:4
 83:4,9,15

ton 73:12

top 37:12

Torres 2:17 7:20

total 61:20

totally 42:19

trade 41:24 42:7,8,21
 43:4,6,23

trading 25:21

transaction 36:4
 37:20 50:15

transcribed 85:1

transcript 1:14

transfer 53:12 66:2

transferred 43:23
 71:19

transmitted 44:1

treated 31:13

trial 13:17

tried 11:20

trucks 38:19,23

true 33:24

trust 18:24

trustee 2:3,9 6:18
7:11,15 12:17
13:25
17:5,12,13,21
18:4,5,7 19:8 22:7
24:6 25:10 34:14
35:16 37:17 41:1
42:23,24 43:5,7,22
44:2 46:2,5,7
57:14 58:7 61:12
62:21 63:18 64:8
65:2 66:16,22
67:12,19 68:8,25
69:24 70:3,5
77:19,21,24
79:2,9,18,20
80:16,22 81:22 82:1

trustees 16:9

trustee's 20:25 22:24
79:7 81:8,17

Trustees's 13:3

trusts 21:10

try 19:1 29:12 72:11

trying 15:24 38:24
55:16 62:17 63:15

T's 13:23

Tuesday 19:6 20:19

turn 23:18 28:2 29:6

turned 29:2

Turning 81:1

two-word 71:10

two-year 18:14

type 52:20 58:12

typewriting 85:1

typically 78:11

U

U.S 13:3 61:21

UCC 66:25

Uesugi 4:12 9:3

ultimate 30:11

ultimately 47:15
79:22

unable 17:25 48:7

uncertain 41:6

unclear 36:12

underlying 26:1 61:17

understand 12:13
13:22 14:20
15:7,15 16:3 22:23
32:9 35:15 40:6
41:23 55:8 56:15
62:25 64:18 68:23
69:9 75:15 83:2

understanding 11:16
24:2,24 36:5,19 37:5
40:14 48:1 55:13
56:11

understood 23:7 46:25
51:24 55:25 56:3

undertake 44:11

undertaken 45:21

undue 58:4

unexpired 54:16 68:18

unfortunately 34:24

United 1:1,15

University 3:23

unknown 45:4 53:7
54:15

unless 67:14

unlike 35:21

unresolved 29:19

unsecured 2:21 7:18

19:19 71:5

untrue 42:19

upcoming 78:10 79:10

upload 27:3

upon 82:23

urge 16:14

urgency 27:18

urgentness 25:6

USA 60:15

USC 62:6

V

Valley 31:22

value 32:5 35:10
80:7,15,20,23

Van 5:21 9:11 46:10

variety 14:22

various 12:23
29:15,17,20,22

VEGETABLE 4:13

vehicles 38:19
40:21,23 69:2

verifying 38:23

version 45:19 69:16

versus 81:20

Vice 6:20 46:22

view 15:16 47:21
60:9,10 69:17

viewed 36:12

Vince 32:17

Vincent 6:8 10:1
21:24 75:20

visited 47:24

visits 47:23

volume 78:12

voluntary 77:5,9,10

votes 22:18

## W

waive 21:9 27:20

waiver 57:21

walk 29:12,17 30:2 31:8

walked 47:25

Washington 4:21

wasn't 36:8

waste 12:19 20:6 39:20

water 12:19 20:6

ways 59:25

weather 47:5

web-based 47:19

week 11:2 79:11

Weintraub 9:17

we'll 27:2 69:13

West 3:17 5:3 6:8 8:20 10:2 18:10 21:25 22:2,6,8,13,22,25 24:13 30:9 31:25 32:7,10,17 48:5 74:11 75:16,21

whatever 44:11,16

wherein 30:8 35:22

WHEREOF 85:1

Whereupon 84:8

whether 12:19 29:18 39:9,21 55:9 59:15 69:2 80:13,14

whichever 77:24

wholesale 52:20

whom 20:23

whomever 26:11

WI 4:21

Wilke 5:22

Wilkie 9:11

WILLIAM 3:21

Williams 5:16 9:22 33:21 35:6 47:24 78:6

willing 16:10 19:4 50:5

Willoughby 3:4 7:23

Winchester 5:16 9:8,25

window 70:17

winning 31:5 48:9

Winston 2:11 7:14 30:19 69:23

wish 72:15

wishes 24:16

Wisotzkey 4:19 8:10,11 34:10 72:24 74:19

withdraw 75:24

withdrawing 28:12,15

withdrawn 28:10,21,24 76:1

WITNESS 85:1

wondering 14:6

wooden 38:20

work 37:25 78:12

worked 20:23 84:4

workers 78:14

works 34:3

worth 17:6,22

writing 85:1

written 60:1 82:11

wrong 43:12 64:23

## Y

yesterday 16:8 19:1 26:11 30:18 40:21 46:12 57:1 79:16

yesterday's 79:19

yet 60:9

yielded 53:21

York 6:10

yours 66:7

yourself 75:1

yourselves 32:15