Reid H. Everett #100662
PERKINS, MANN & EVERETT
A Professional Corporation
2222 W. Shaw Avenue, Suite 202
Fresno, California 93711
Telephone: (559) 447-5700
Facsimile: (559) 447-5600
Email: reverett@pmelaw.com

Attorneys for Claimant, Steve Franson, Asset Receiver

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| In re:<br><br>SK FOODS, L.P., a California limited partnership, et al.,<br><br>Debtors. | Case No. 09-29162-D-11<br><br>Chapter 11<br><br>DC. No. SH-25 |
|---|---|
| In re:<br><br>RHM INDUSTRIAL/SPECIALTY FOODS, INC., a California Corporation d/b/a Colusa County Canning Co.<br><br>Debtor | Case No. 09-29162-D-11<br><br>Chapter 11<br><br>Objection by Receiver on behalf of Salyer American Fresh Foods to Response of Chapter 11 Trustee to Producer's Lien Claim; Request to Meet and Confer re Resolution of Claim; and Request for Evidentiary Hearing if Claim Cannot be Resolved |

This Objection is filed by Steve Franson, appointed to act as Asset Receiver, in the civil action captioned as BANK OF THE WEST, a California banking corporation, as Administrative Agent for itself, AgStar Financial Services, PCA/FLCA, and FCS Financial, PCA, Plaintiff, versus SALYER AMERICAN FRESH FOODS, a California corporation, SALYER AMERICAN COOLING, a California general partnership, and DOES 1 through 50, inclusive, Defendants, and which action is now pending as Civil Case No. M98573 in the Monterey County Superior Court (hereinafter "Receiver").

Receiver previously filed a Producer's Lien Claim on behalf of Salyer American Fresh Foods ("SAFF" or "Claimant") herein in compliance with this Court's

"Amended Order Establishing and Implementing Exclusive Procedures for Administering Pre-Petition PACA and Producers' Lien Claims" (the "Amended Order"). Said Claim was served by Federal Express overnight delivery and was timely served by the Receiver as admitted by the Trustee in his Response.

This Objection is accompanied by additional documentation in the form of the declarations of Eric Schwartz and John Bryce.

The Trustee's Response was to deny the Producer's Lien Claim of SAFF in its entirety. The Trustee's Response is based on speculation, and one-sided, incomplete, and faulty information regarding the facts and circumstances of the peppers program on which the Producer's Lien claim is based. The Trustee's Response also is based on a reading of the California Producer's Lien law that is both narrow and unsupported by the express terms of the operative statutes.

**Preliminary Objections**

The Trustee objects to the Claim partly on the basis that it fails to provide evidence for the costs claimed and fails to authenticate other evidence filed in support of the claim. The Trustee is the one that established the form of the claim to be filed by claimants and the categories of information to be supplied. The requirement for filing a claim was a statement of good faith. A plain reading of the Amended Order shows that the intent of the initial claim filing was not to prove the claim beyond a shadow of a doubt but to submit evidence of a claim in good faith. The materials supplied with the Claim are sufficient to create prima facie evidence of the Claim, particularly where the merit of the Claim is substantially based on the testimony of witnesses.

The Amended Order provides for a hearing, which Claimant assumes would be an evidentiary hearing on the Claim, if the Trustee and the Claimant cannot resolve any objections, to be conducted after appropriate discussions and efforts to resolve the Claim had been conducted and appropriate discovery had taken place. Claimant believes that many of the records that support its Claim are in the custody and control of the Trustee. Claimant reserves the right to subpoena records of SK Foods,

depose witnesses, and conduct relevant discovery as necessary to prove its claim prior to any evidentiary hearing thereon. In the mean time, Claimant has met its burden of providing the Trustee with sufficient evidence for the good faith filing of its Claim to which the Trustee has now responded.

### Statement of Factual Grounds on Which Claimant Objects

The Trustee concedes SAFF was engaged by SK Foods to grow peppers for SK Foods in both Yuma, Arizona and Greenfield, California, and that SAFF actually grew and delivered peppers to SAFF. The only factual issue that seems to be in contention is the price that SK Foods agreed to pay for peppers that it required SAFF to grow for the use and benefit of SK Foods.

Claimant contends that SAFF grew peppers for the use and benefit of SK Foods and that SK Foods agreed to pay SAFF for the peppers on a farming cost per acre plus 5% basis. SK Foods contends that SK Foods never agreed to this but was willing to pay SAFF for the peppers at the rate of $500 per delivered ton.

As is shown by the documents supplied by both the Receiver and the Trustee, the terms of payment were a matter both of uncertainty and concern to both SK Foods and SAFF up until November, 2008. SAFF's position was that it should not be the company that bore the risk of producing peppers out of season in Yuma, Arizona and that it should not be the company that bore the risk of SK Foods not taking all of the peppers from the acreage planted by SAFF. SK Foods ultimately agreed with SAFF's position as set forth in the declarations of Eric Schwartz and John Bryce. The fact that SK Foods was still wondering in 2009 how to book this for accounting purposes does not change the terms of the agreement that was made in November 2008.

### Statement of Legal Grounds on Which Claimant Objects

**Objection to Assertion that California Producer's Lien laws do not apply to produce grown outside of California by a California company.** The Trustee concluded in the Trustee's Response that that portion of Claimant's Producer's Lien claim that relates to peppers grown in Yuma, Arizona, is not valid on the assertion that

California Producer's Lien laws do not apply to produce grown outside of the State of California.

The Trustee asserts that, following a conflict of laws analysis, the most appropriate law to apply is Arizona, notwithstanding the fact that Claimant is located in California.

The conflict of laws analysis actually supports the application of California law to Claimant's claim. An unbiased reading of the California Producer's Lien statutes leaves no doubt that it is applicable to "any person" that is engaged in the business of producing a farm product and to "every producer of any farm product" that sells produce grown by him to any processor.

Specifically, Cal. Food & Agric. Code Section 55631, which describes the "nature and scope" of a Producer's Lien, unequivocally states that "every producer of farm product that sells any product which is grown by him to any processor . . ., in addition to all other rights and remedies which are provided for by law, has a lien upon such product and upon all processed or manufactured forms of such farm product. . ." Moreover, Cal. Food & Agric. Code Section 56110 defines "producer" as "any person that is engaged in the business of growing or producing any farm product."

California courts have long held that the first step in evaluating a statute is to look to the words used by the Legislature and give them their usual, ordinary meaning. Garcia v. McCutchen (1997) 16 Cal.4th 469, 476, 66 Cal. Rptr.2d 319, 940 P.2d 906. Generally, the analysis of statutory language ends once a court has determined that the words used are clear and unambiguous. Hughes v. Board of Architectural Examiners (1998) 17 Cal.4th 763, 775, 72 Cal.Rptr.2d 624, 952 P.2d 641 (judicial construction is generally unnecessary where statutory language is clear and unambiguous, i.e., has only one reasonable construction). Certainly, the federal courts echo this procedure. To quote Middle Mountain Land and Produce, Inc. v. Sound Commodities, Inc., 307 F.3d 1220, 1222-24 (9th Cir. 2002): "[W]here [Congress'] will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive."

Given that the Producer's Lien statute expressly and plainly applies to "every producer" and that "producer" is defined by the statute as "any person", there should be no doubt that the statute means what it says. <u>Diamond Multimedia Systems, Inc. v. Superior Court</u>, 19 Cal. 4th 1036, 1052 (1999) (in ruling that out-of-state purchasers who were affected by market manipulation within the State of California may avail themselves of the California statutory remedy, the court noted that under the statute "relief was available to 'any person'," not just to California purchasers).

Nor is the definition of "farm product" limited to California grown produce, a limitation that the California Legislature could have easily made if it intended to limit the Producer's Lien law to California grown produce only. Cal. Food & Agric. Code Section 55403 ("'Farm product' includes every agricultural ... product of the soil..."). In short, the California Food & Agricultural Code gives a Producer's Lien to every producer, regardless of where the produce was grown.

SAFF is a California based company. It is entitled to the protections of the California Producer's Lien law even if the produce that it supplied to SK Foods was grown outside of California. Even if the California Producer's Lien law did not so unambiguously apply to all producers, the Trustee's choice of law analysis compels the application of the Producer's Lien law to California growers growing produce out of state as well as non-California growers growing produce out of state.

First, the Trustee argues that, under the Restatement (Second) of Conflict of Laws Section 251 (1971), the greatest weight should be given to "the location of the chattel at the time that the security interest attached." <u>Id</u>. Section 251(2). Under the Producer's Lien statute, the lien "attaches from the date of delivery of the product." Cal.Food & Agric. Code Section 55635. The Trustee asserts that – although there is no definition of "delivery" in the statute – "delivery" occurs when the produce is placed on the truck in the state where it is grown. Delivery in the produce context, however, does not occur until the fruits and vegetables arrive at their final destination, in this case California, where the processor, SK Foods, may accept or reject the produce.

In the produce industry, a shipper must place the produce FOB [free on board] a truck "in suitable shipping condition" so as to "assure delivery without abnormal deterioration at the contract destination." 7 C.F.R. Section 46.42(j). In addition, upon delivery at destination, the buyer has the right to inspect the produce and reject it if it does not meet the USDA's "good delivery" standards of the parties' contractual standards. 7 C.F.R. Sections 46.2(bb), (cc), (dd); 7 C.F.R. Section 46.44.

The argument of the Trustee that Erik Wilson traveled to Yuma, Arizona to "accept and/or reject the crop of peppers" has nothing to do with delivery of the peppers but only an inspection of the crop. In fact, Mr. Wilson states that "the cost of harvest far outweighed any benefit that could be recovered by the meager harvest." Why would Mr. Wilson care about the cost of harvest if in fact SK Foods was not obligated to pay those costs? Only the fact that SK Foods was responsible for the farming costs as the costs of the peppers to be paid to SAFF explains this statement. Indeed, delivery and quality of the peppers was not an issue under the agreement between SAFF and SK Foods because the agreement was for SK Foods to pay the per acre farming costs plus 5% and a producer's lien for the purchase price arises upon delivery of any produce by SAFF to SK Foods.

In addition, as the Trustee explains, other factors may come into play in determining what law to apply; however, he concludes that "California has zero interest" in extending its law to protect out-of-state growers. In so arguing, he misses the overwhelming interests that California has in these transactions, as is evident from the statute's use of the terms "any person" and "every producer". Indeed, the California Food & Agricultural Code was enacted, in part, to protect the public health, safety, and welfare, and the Legislature instructed that it should be liberally construed to accomplish this purpose. Cal.Food & Agric. Code Section 3. Certainly, "the public" includes Claimant.

Moreover, California has expressed a significant interest in regulating the activities of processors and in insuring that they are in sound financial condition and pay

for the farm product delivered to them. See Food & Agric. Code Sections 55601 (requires payment), 55521 (processors must be licensed), and 55523.2 (a processor's is in unsound financial condition is grounds for denying a license). In short, California has a legitimate and compelling interest in preserving a business climate where processors pay their suppliers, whether they grew their produce in California or elsewhere, and thereby maintain and enhance the viability of the agricultural processing industry in California.

The Trustee also fails to acknowledge that SK Foods is a licensed California processor regulated by the State of California and that payment would be issued from California. SK Foods took possession of the produce in California and the conduct that gave rise to SK Foods' liability arose in California.

All of these factors compel application of the California Producer's Lien law to all producers, regardless of where the produce was grown.

Cal. Food & Agric. Code Section 55631 also states that the Producer's Lien law is "in addition to all other rights and remedies which are provided for by law." Consequently, the California Producer's lien law applies, regardless of any other laws.

**Objection to Assertion that California Producer's Lien laws do not apply to produce grown under contract.** The Trustee objects to any claim by SAFF for payment for peppers grown under contract for SAFF and delivered to SK Foods. As set forth in the original claim filed by Claimant acknowledged that $26,742 in peppers were grown by C&G Farms for SAFF for delivery to SKF. Without belaboring the issue for the minor amount in dispute, suffice it to say that Cal. Food & Agric. Code Sec. 55408 defines a "Producer" as any person engaged in the business of growing or producing any farm product." In other word, the fact that SAFF may have produced the peppers for SK Foods via a custom farming agreement is not necessarily determinative of SAFF's status as a Producer under the statute.

**Objection to Assertion that there is no contract.** As noted by the Trustee, partial performance of a contract takes it out of the statute of frauds. The Trustee admits both delivery of the peppers by SAFF and payment for some of the

peppers by SK Foods. There is no doubt as to the existence of a contract between SAFF and SK Foods. The only issue is what is that of the correct price of the peppers under the contract.

### Requests and Reservations of Rights

For the reasons stated, Claimant objects to the Response of the Trustee. Claimant invites the Trustee to meet and confer regarding resolution of differences regarding the Claim. If the Claim cannot be resolved, then Claimant reserves the right to prove its Claim at an evidentiary hearing after opportunity for appropriate discovery. Claimant further reserves the right to advance any favorable evidence and make any further legal arguments in connection with the hearing, whether or not previously set forth, herein or otherwise.

Dated: January 23, 2010     PERKINS MANN & EVERET APC

_____
Reid H. Everett, Attorneys for
STEVE FRANSON, Asset Receiver,
Salyer American Fresh Foods

(Steve Franson is the Receiver appointed to act in the case of BANK OF THE WEST, a California banking corporation, as Administrative Agent for itself, AgStar Financial Services, PCA/FLCA, and FCS Financial, PCA, Plaintiff, versus SALYER AMERICAN FRESH FOODS, a California corporation, SALYER AMERICAN COOLING, a California general partnership, and DOES 1 through 50, inclusive, Defendants, Civil Case No. M98573, Monterey County Superior Court)