1 **TROUTMAN SANDERS LLP**
Terrence R. McInnis, Bar No. 155416
2   terrence.mcinnis@troutmansanders.com
Kevin F. Kieffer, Bar No. 192193
3   kevin.kieffer@troutmansanders.com
Peter R. Lucier, Bar No. 246397
4   peter.lucier@troutmansanders.com
5 Park Plaza, Suite 1400
5 Irvine, CA 92614-2545
Telephone:  949.622.2700
6 Facsimile:   949.622.2739

7 *Attorneys for Movants*
*Allied World National Assurance Company and*
8 *Allied World Assurance Company (U.S.) Inc.*

9                    UNITED STATES BANKRUPTCY COURT

10                        EASTERN DISTRICT OF CALIFORNIA

11

12 In re:                                        | **Case No.  09-29162-D-11**

13 SK FOODS, L.P., a California limited          | Chapter 11
partnership,
14                                               | **DC No. TRM-1**
            Debtor.

15

16 In re:                                        | **Case No. 09-29161-D-11**

17 RHM INDUSTRIAL/SPECIALTY                      | Chapter 11
FOODS, INC., a California Corporation,
18 d/b/a Colusa County Canning Co.,              | **DC No. TRM-1**

19            Debtor.                            | **DECLARATION OF PETER R. LUCIER**
**IN SUPPORT OF ALLIED WORLD**
20                                               **NATIONAL ASSURANCE COMPANY**
**AND ALLIED WORLD ASSURANCE**
21                                               **COMPANY (U.S.) INC.'S MOTION FOR**
**RELIEF FROM AUTOMATIC STAY**

22

23                                               **Date:**    June 23, 2010
**Time:**    10:00 a.m.
24                                               **Place:**   Department D, Courtroom 34
501 I Street, 6th Floor
25                                               Sacramento, CA 95814
**Judge:**   Hon. Robert S. Bardwil
26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

I, Peter R. Lucier, declare as follows:

1. This declaration is made upon my personal knowledge and if called upon as a witness, I could and would competently testify to the facts set forth herein.

2. I am an associate at Troutman Sanders LLP, counsel for Allied World National Assurance Company ("Allied World") and Allied World Assurance Company (U.S.) Inc. ("AWAC") (collectively "Movants"), and one of the attorneys responsible for the day-to-day handling of this matter.

3. Attached hereto as Exhibit 1 is a true and correct copy of a complaint for rescission and other relief that Movants seek to file against SK Foods, L.P. and RHM Industrial/Specialty Foods, Inc. (collectively "Debtors") and 30 other defendants in a non-bankruptcy forum (the "Rescission Complaint").

4. Allied World issued For Private Companies Policy No. C011427/001 to S.K. Foods PM Corp. for the February 19, 2009 to August 17, 2009 Policy Period (the "Primary Policy"). A true and correct copy of the Primary Policy, including its declarations page, policy form, endorsements and the application form and attachments (but not supporting documentation submitted therewith), is attached as Exhibit A to the Rescission Complaint attached hereto.

5. The Insureds also sought an excess policy from AWAC, specifically Excess Directors & Officers Liability Insurance Following Form Policy No. C011818/001, which was to be issued to S.K. Foods PM Corp. for the April 8, 2009 to February 19, 2010 Policy Period (the "Excess Policy"). It is AWAC's position, however, that SK Foods Group failed to pay the requisite premium to obtain the Excess Policy. Had the Excess Policy been issued, it would be "subject to all terms, conditions, agreements and limitations of the Primary Policy," unless otherwise provided. (Excess Policy Section II.F.1.)

6. Attached hereto as Exhibit 2 is a true and correct copy, without enclosures, of correspondence from Kathryn Richter, counsel for Bradley Sharp, Chapter 11 Trustee for the Debtors, dated July 27, 2009, in which Ms. Richter asserts that there is coverage under the Primary and Excess Policies for the adversary complaint filed by the Chapter 11 Trustee on behalf of the Debtors, captioned *Sharp v. Blackstone Ranch Corp., et al.*, A.P. No. 09-02342,

DECLARATION OF PETER R. LUCIER

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    Lead Case No. 09-29162 (E.D. Cal. Bankr.).

2          I declare under penalty of perjury under the laws of the State of California that the

3    foregoing is true and correct.

4          Executed on May 26, 2010, at Irvine, California.

5

6

7                                                    Peter R. Lucier

8

9

10

11

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

1    TROUTMAN SANDERS LLP
     Terrence R. McInnis, Bar No. 155416
2       terrence.mcinnis@troutmansanders.com
     Kevin F. Kieffer, Bar No. 192193
3       kevin.kieffer@troutmansanders.com
     Peter R. Lucier, Bar No. 246397
4       peter.lucier@troutmansanders.com
     5 Park Plaza, Suite 1400
5    Irvine, CA 92614-2545
     Telephone: 949.622.2700
6    Facsimile: 949.622.2739

7    *Attorneys for Plaintiffs Allied World National*
     *Assurance Company and Allied World Assurance*
8    *Company (U.S.) Inc.*

9                        UNITED STATES DISTRICT COURT

10                       EASTERN DISTRICT OF CALIFORNIA

11

12   ALLIED WORLD NATIONAL              Case No.
     ASSURANCE COMPANY, a New
13   Hampshire corporation, and ALLIED
     WORLD ASSURANCE COMPANY (U.S.)     **COMPLAINT FOR:**
14   INC., a Delaware corporation,

15                    Plaintiffs,        **1. RESCISSION**
                                         **2. REFORMATION**
16         v.                            **3. BREACH OF WARRANTY**
                                         **4. DECLARATORY RELIEF**
17   SK PM CORP., a California corporation aka  **5. DECLARATORY RELIEF**
     "S.K. Foods PM Corp.", SK FOODS, L.P., a   **6. RESCISSION**
18   California limited partnership, FREDERICK   **7. REFORMATION**
     SCOTT SALYER, an individual,               **8. BREACH OF WARRANTY**
19   BLACKSTONE RANCH, a California             **9. DECLARATORY RELIEF**
     corporation aka "Blackstone Ranch Calif 'S'
20   Corp," LISA CRIST, an individual, MARK
     MCCORMICK, an individual SCOTT            **DEMAND FOR JURY TRIAL**
21   SALYER REVOCABLE TRUST, a trust, THE
     CAROLINE GAZELLE SALYER
22   IRREVOCABLE TRUST, a trust, THE
     STEFANIE ANN SALYER IRREVOCABLE
23   TRUST, a trust, SS FARMS, LLC, a California
     limited liability company, SK FOODS, LP

24         (caption continued on next page)

25

26

27

28

1027480                                          COMPLAINT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  401K PLAN, an ERISA plan aka "SK Foods
   L.P. Blackstone Ranch & SK Foods L.P. 401K
2  Plan," SARS, LLC, a California limited
   liability company, CSSS LP, a California
3  limited partnership d/b/a Central Valley
   Shippers, SK FOODS LLC, a Nevada limited
4  liability company, S.K. FOODS PM CORP., an
   entity or a d/b/a of unknown legal capacity,
5  SKF AVIATION, LLC, a California limited
   liability company, SSC FARMING, LLC, a
6  California limited liability company, RHM
   INDUSTRIAL/SPECIALTY FOODS, INC., a
7  California corporation d/b/a Colusa County
   Canning Company and d/b/a SK Foods –
8  Colusa Canning, CARMEL WINE
   MERCHANTS LLC, a California limited
9  liability company, CIRCLE PACIFIC LTD., a
   New Zealand company, SUNRISE COAST
10 JAPAN, an entity or a d/b/a of unknown legal
   capacity, SSC FARMS I, LLC, a California
11 limited liability company, SSC FARMS II,
   LLC, a California limited liability company,
12 SK FARM SERVICES, LLC, a California
   limited liability company, SK FROZEN
13 FOODS, LLC, a California limited liability
   company, SALYER AMERICAN
14 INSURANCE SERVICES, a California limited
   liability company, SSC FARMS III, LLC, a
15 California limited liability company, SALYER
   AMERICAN COOLING, a general
16 partnership, SALYER WESTERN COOLING
   COMPANY, a general partnership, YUMA
17 AMERICAN COOLING CORPORATION, a
   California corporation, SAWTOOTH
18 COOLING, LLC, a California limited liability
   company, and SALYER AMERICAN FRESH
19 FOODS, a California corporation,

20              Defendants.

21

22

23

24

25

26

27

28

1027480                                      COMPLAINT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

Plaintiffs, Allied World National Assurance Company ("Allied World") and Allied World Assurance Company (U.S.) Inc. ("AWAC") (collectively "Plaintiffs"), are informed and believe and therefore allege as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between the parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) since a substantial part of the events or omissions giving rise to the claims at issue occurred in this District.

## THE PARTIES

3. Plaintiff Allied World is a corporation duly organized and existing under the laws of the State of New Hampshire, with its principal place of business in Massachusetts, and as such, is a citizen of New Hampshire and Massachusetts within the meaning of 28 U.S.C. § 1332(c)(1). Allied World is authorized to transact insurance business in the State of California.

4. Plaintiff AWAC is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business in Massachusetts, and as such, is a citizen of Delaware and Massachusetts within the meaning of 28 U.S.C. § 1332(c)(1). AWAC is authorized to transact insurance business in the State of California.

5. Plaintiffs state with good faith belief that Defendant SK PM Corp., also known as ("aka") "S.K. Foods PM Corp.," is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in California, and as such, is a citizen of California within the meaning of 28 U.S.C. §§ 1332(a) and 1332(c)(1).

6. Plaintiffs state with good faith belief that Defendant SK Foods, L.P. is a California limited partnership whose partners are all citizens of California, and as such, is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1     7.     Plaintiffs state with good faith belief that Defendant Frederick Scott Salyer, aka

2     "Scott Salyer" ("Scott Salyer") is an individual residing and domiciled in the County of Kings,

3     California, and as such, is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

4     8.     Plaintiffs state with good faith belief that Defendant Blackstone Ranch, aka

5     "Blackstone Ranch Calif 'S' Corp," is a corporation duly organized and existing under the laws

6     of the State of California, with its principal place of business in California, and as such, is a

7     citizen of California within the meaning of 28 U.S.C. §§ 1332(a) and 1332(c)(1).

8     9.     Plaintiffs state with good faith belief that Defendant Lisa Crist is an individual

9     residing and domiciled in the County of Monterey, California, and as such, is a citizen of

10    California within the meaning of 28 U.S.C. § 1332(a).

11    10.    Plaintiffs state with good faith belief that Defendant Mark McCormick is an

12    individual residing and domiciled in the County of Monterey, California, and as such, is a citizen

13    of California within the meaning of 28 U.S.C. § 1332(a).

14    11.    Plaintiffs state with good faith belief that Defendant Scott Salyer Revocable Trust

15    (the "SSR Trust") is a trust for which Scott Salyer is the beneficiary and trustee, and as such, is a

16    citizen of California within the meaning of 28 U.S.C. § 1332(a).

17    12.    Plaintiffs state with good faith belief that Defendant The Caroline Gazelle Salyer

18    Irrevocable Trust (the "CGS Trust") is a trust for which Scott Salyer is the trustee and Caroline

19    Salyer is the beneficiary. Plaintiffs state with good faith belief that Caroline Salyer is an

20    individual residing and domiciled in the County of Monterey, California, and as such, the CGS

21    Trust is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

22    13.    Plaintiffs state with good faith belief that Defendant The Stefanie Ann Salyer

23    Irrevocable Trust (the "SAS Trust") is a trust for which Scott Salyer is the trustee and Stefanie

24    Salyer is the beneficiary. Plaintiffs state with good faith belief that Stefanie Salyer is an

25    individual residing and domiciled in the County of Monterey, California, and as such, the SAS

26    Trust is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    14.    Plaintiffs state with good faith belief that Defendant SS Farms, LLC is a California

2    limited liability company whose members are all citizens of California, and as such, SS Farms,

3    LLC is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

4    15.    Plaintiffs state with good faith belief that Defendant SK Foods, LP 401K Plan, aka

5    "SK Foods L.P. Blackstone Ranch & SK Foods L.P. 401K Plan" ("SK Foods 401K Plan"), is an

6    ERISA plan located in the State of California whose trustees are citizens of California.  As such,

7    SK Foods 401K Plan is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

8    16.    Plaintiffs state with good faith belief that Defendant SARS, LLC is a California

9    limited liability company whose members are all citizens of California, and as such, SARS, LLC

10   is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

11   17.    Plaintiffs state with good faith belief that Defendant CSSS LP d/b/a Central Valley

12   Shippers ("CSSS LP") is a California limited partnership whose partners are all California

13   citizens, and as such, CSSS, LP is a citizen of California within the meaning of 28 U.S.C. §

14   1332(a).

15   18.    Plaintiffs state with good faith belief that Defendant SK Foods LLC is a Nevada

16   limited liability company, whose members are all citizens of California, and as such, SK Foods

17   LLC is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

18   19.    Plaintiffs state with good faith belief that Defendant SK Foods PM Corp. is an

19   entity or a d/b/a of unknown legal capacity.  Plaintiffs state with good faith belief that SK Foods

20   PM Corp. is not a citizen of Delaware, Massachusetts, or New Hampshire within the meaning of

21   28 U.S.C. § 1332(a).

22   20.    Plaintiffs state with good faith belief that Defendant SKF Aviation, LLC is a

23   California limited liability company, whose sole member is a citizen of California, and as such,

24   SKF Aviation, LLC is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

25   21.    Plaintiffs state with good faith belief that Defendant SSC Farming, LLC is a

26   California limited liability company, whose member are all citizens of California, and as such,

27   SSC Farming, LLC is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

22.     Plaintiffs state with good faith belief that Defendant RHM Industrial/Specialty Foods, Inc. d/b/a Colusa County Canning Company and d/b/a SK Foods – Colusa Canning is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in California, and as such, is a citizen of California within the meaning of 28 U.S.C. §§ 1332(a) and 1332(c)(1).

23.     Plaintiffs state with good faith belief that Defendant Carmel Wine Merchants LLC is a California limited liability company, whose sole member is a citizen of California, and as such, Carmel Wine Merchants LLC is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

24.     Plaintiffs state with good faith belief that Defendant Circle Pacific Ltd. is a New Zealand company, and that Circle Pacific Ltd. is not a citizen of Delaware, Massachusetts, or New Hampshire within the meaning of 28 U.S.C. § 1332(a).

25.     Plaintiffs state with good faith belief that Defendant Sunrise Coast Japan is an entity or a d/b/a of unknown legal capacity. Plaintiffs state with good faith belief that Sunrise Coast Japan is not a citizen of Delaware, Massachusetts, or New Hampshire within the meaning of 28 U.S.C. § 1332(a).

26.     Plaintiffs state with good faith belief that Defendant SSC Farms I, LLC is a California limited liability company whose members are all citizens of California, and as such, SSC Farms I, LLC is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

27.     Plaintiffs state with good faith belief that Defendant SSC Farms II, LLC is a California limited liability company whose members are all citizens of California, and as such, SSC Farms II, LLC is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

28.     Plaintiffs state with good faith belief that Defendant SK Farm Services, LLC is a California limited liability company whose members are all citizens of California, and as such, SK Farm Services, LLC is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

29.     Plaintiffs state with good faith belief that Defendant SK Frozen Foods, LLC is a California limited liability company whose members are all citizens of California, and as such, SK Frozen Foods, LLC is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

30.    Plaintiffs state with good faith belief that Defendant Salyer American Insurance Services is a California limited liability company whose members are all citizens of California, and as such, Salyer American Insurance Services is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

31.    Plaintiffs state with good faith belief that Defendant SSC Farms III, LLC is a California limited liability company whose members are all citizens of California, and as such, SSC Farms III, LLC is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

32.    Plaintiffs state with good faith belief that Defendant Salyer American Cooling is a general partnership, whose partners are all citizens of California, and as such, Salyer American Cooling is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

33.    Plaintiffs state with good faith belief that Defendant Salyer Western Cooling Company, is a general partnership, whose partners are all citizens of California, and as such, Salyer Western Cooling Company is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

34.    Plaintiffs state with good faith belief that Defendant Yuma American Cooling Corporation, is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in California, and as such, is a citizen of California within the meaning of 28 U.S.C. §§ 1332(a) and 1332(c)(1).

35.    Plaintiffs state with good faith belief that Defendant Sawtooth Cooling, LLC is a California limited liability company whose members are all citizens of California, and as such, Sawtooth Cooling, LLC is a citizen of California within the meaning of 28 U.S.C. § 1332(a).

36.    Plaintiffs state with good faith belief that Defendant Salyer American Fresh Foods, Inc. is a corporation duly organized and existing under the laws of the State of California, with its principal place of business in California, and as such, is a citizen of California within the meaning of 28 U.S.C. §§ 1332(a) and 1332(c)(1).

37.     Plaintiffs file this action to obtain a judicial determination and declaration regarding the parties' rights and obligations with respect to two insurance policies. Defendants are insureds under the primary insurance policy, Policy No. C011427/001, issued by Allied World to S.K. Foods PM Corp. for the February 19, 2009 to August 17, 2009 Policy Period (the "Primary Policy"). Through this action, Allied World seeks to rescind certain specified coverage provisions of the Primary Policy due to, among other things, misrepresentations and concealment of material facts made by Defendants during the underwriting process.

38.     Defendants also sought excess coverage from AWAC under Excess Directors & Officers Liability Insurance Following Form Policy No. C011818/001, which was to be issued to S.K. Foods PM Corp. for the April 8, 2009 to February 19, 2010 Policy Period (the "Excess Policy"). However, Defendants never paid the requisite premium for the Excess Policy. Through this action, AWAC seeks a declaration that the Excess Policy was never effectively issued or delivered as a result of the Defendants' non-payment of premium, and is inoperative. AWAC alternatively seeks to rescind certain specified coverage provisions of the Excess Policy due to, among other things, the misrepresentations and concealment of material facts made by Defendants during the underwriting process.

39.     Plaintiffs are informed and believe that at the time Defendants applied for the Primary and Excess Policies, Defendants used the name "SK Foods Group" to refer to the affiliated entities owned and operated by Scott Salyer and his family or their trusts that were engaged in the business of growing, harvesting, and shipping various fresh fruits and vegetables, as well as ancillary operations such as vegetable cooling, processing, and packaging. Plaintiffs are informed and believe that SK Foods Group has no separate existence as a legal entity, but includes all entity defendants named in this complaint. SK Foods Group's operations are largely based in California.

40.     As described in further detail below, in connection with the underwriting of the Primary and Excess Policies, Defendants, through their insurance broker, provided Plaintiffs with financial statements for a number of SK Foods Group's entities. Defendants also made certain

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   representations, including that SK Foods Group was in good financial health and had strong

2   revenues and profits for the periods subsequent to those for which they provided financial

3   statements, that certain credit agreements necessary to SK Foods Group's operations that were set

4   to expire would be extended, and that Defendants did not anticipate a reorganization or sale of

5   more than 10% of the assets of any SK Foods Group entities. Plaintiffs recently discovered that

6   these representations were false, and that the financial statements submitted to Plaintiffs were

7   inaccurate and unreliable.

8       41.     At the time that negotiations concerning the Primary and Excess Policies were

9   ongoing, the entities comprising SK Foods Group were experiencing significant financial

10   difficulties, and many were either insolvent or on the brink of insolvency. Plaintiffs are informed

11   and believe that Defendants were aware that the joint credit facilities for two of SK Foods

12   Group's major constituents, SK Foods, L.P. ("SK Foods") and RHM Industrial/Specialty Foods,

13   Inc. ("RHM"), would not be renewed. Plaintiffs are also informed and believe that Defendants

14   anticipated that it would be necessary for Salyer American Fresh Foods, Inc. ("SAFF"), SK

15   Foods, and RHM to reorganize, through bankruptcy or otherwise, and sell substantially all of their

16   assets in order to satisfy debts owed by these companies.

17       42.     This information came to light only after an investigation following Plaintiffs'

18   receipt of notice of a class-action complaint captioned *Estrada, et al. v. Salyer American, et al.*,

19   Monterey County Superior Court Case No. M99188 (the "*Estrada* Action"). The *Estrada* Action

20   was filed against SAFF, SK Foods, RHM, SK Frozen Foods, LLC, and others, and alleged, *inter*

21   *alia*, that these entities ceased or substantially ceased their operations as a result of their financial

22   condition, and failed to provide notices to terminated employees that were mandated under

23   federal and state law in connection with their closure.

24       43.     Had Plaintiffs known the truth regarding SK Foods Group's financial condition,

25   they would not have issued the Primary Policy, or agreed to issue the Excess Policy upon

26   payment of the requisite premium. Accordingly, pursuant to the terms of the policies, the

27   California Insurance Code, including Insurance Code Sections 331, 359, 447 and 650, and the

28   California Civil Code, including Civil Code Section 1691, Plaintiffs bring this action seeking a

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1  judgment of rescission declaring that the coverage provisions of the Primary and Excess Policies

2  specified below are void *ab initio* as to the Defendants herein. This complaint constitutes an offer

3  to return the policy premiums (to the extent any were paid) allocable to the coverage afforded

4  these Defendants. In the event that the Defendants accept this relief, or the Court grants this

5  relief, Plaintiffs will return to SK Foods PM Corp. the amount of the premiums that the Court

6  determines to be allocable to these Defendants. If the Primary and Excess Policies are not

7  rescinded as requested, Plaintiffs, in the alternative, seek to have the Primary and Excess Policies

8  reformed.

9      44.    Plaintiffs also seek a declaration that Defendants are liable to Plaintiffs for any

10  payments made by Plaintiffs, including any future payments, to or on behalf of any Insureds,

11  pursuant to Plaintiffs' obligations under any remaining coverage provisions of the Primary or

12  Excess Policies on the grounds that Plaintiffs would not have issued the Primary Policy or agreed

13  to issue the Excess Policy but for Defendants' misrepresentation or concealment of material facts

14  in connection with their application for the Primary and Excess Policies, and that such payments

15  are therefore damages resulting from Defendants' misrepresentations.

16                             **FACTUAL BACKGROUND**

17                                  **The Policies**

18      45.    Allied World issued For Private Companies Policy No. C011427/001 to S.K.

19  Foods PM Corp. for the February 19, 2009 to August 17, 2010 Policy Period (the "Primary

20  Policy"). (The Primary Policy was initially issued with a Policy Period of February 19, 2009 to

21  February 19, 2010. However, the Primary Policy was cancelled effective August 17, 2009 by

22  First Insurance Funding Corp. ("First Insurance"), the company that provided the Insureds with

23  financing for the premium of the Primary Policy.) The Primary Policy, including its declarations

24  page, policy form, endorsements and the application form and attachments (but not supporting

25  documentation submitted therewith), is attached to this Complaint as Exhibit A. AWAC was

26  authorized to and did, in fact, underwrite the Primary Policy on behalf of Allied World.

27      46.    SK Foods Group also sought an excess policy from AWAC, specifically Excess

28  Directors & Officers Liability Insurance Following Form Policy No. C011818/001, which was to

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    be issued to S.K. Foods PM Corp. for the April 8, 2009 to February 19, 2010 Policy Period (the

2    "Excess Policy"). SK Foods Group, however, failed to pay the requisite premium to obtain the

3    Excess Policy. Had the Excess Policy been effectively issued, it would be "subject to all terms,

4    conditions, agreements and limitations of the Primary Policy," unless otherwise provided.

5    (Excess Policy Section II.F.1.)

## Application

7    47.    As part of the underwriting process for the Primary and Excess Policies, Arthur J.

8    Gallagher Risk Management Services ("Gallagher & Co.") provided AWAC with an application

9    that SK Foods Group had previously completed for a St. Paul Travelers policy (the "St. Paul

10    Application"). Plaintiffs are informed and believe that Gallagher & Co. acted as insurance broker

11    and agent for all Defendants in connection with the application for and underwriting of the

12    Primary and Excess Policies.

13    48.    Question 6(a) of Part VII of the St. Paul Application asked:

14    "Does the **Applicant** anticipate any of the following in the next 12 months:

15

16    a.   Sales, distribution or divestiture of any assets or stock other than in the ordinary course of business in an amount exceeding ten percent (10%) of the **Applicant's** consolidated assets?

17

18    49.    Question 6(g) of Part VII of the St. Paul Application asked:

19    "Does the **Applicant** anticipate any of the following in the next 12 months...

20    g.   Reorganization or arrangement with creditors under federal or state law?"

21

22    50.    The "No" box is checked in response to both questions 6(a) and 6(g). The St. Paul

23    Application defines "**Applicant**" as "the Parent Corporation and all Subsidiaries." The

24    application lists the Applicant as "SK Foods PM Corp. (see attached list of named insureds)."

25    The attached "SK PM Corp, Named Insured Schedule" includes all Defendants named in this

26    action, with the exception of Lisa Crist and Mark McCormick.

27

28

51.     On or about February 20, 2009, Gallagher & Co. submitted an "Addendum to the Application, Warranty," dated February 19, 2009 (the "Primary Warranty") to AWAC. The Primary Warranty was signed by Scott Salyer as Chief Executive Officer and Chief Financial Officer of SK Foods and SAFF, dated February 19, 2009.

52.     The Primary Warranty provides that "with respect to any entity other than Salyer American Fresh Foods, the undersigned officer of the **Named Insured** acknowledges and represents to the best of his or her knowledge that: No **Insured** has knowledge, as of the date below, of any **Wrongful Act** of any **Insured**, or any fact, circumstance or situation which (s)he reasonably believes might result in a **claim** being made against any of the **Insureds** ...."

53.     The Primary Warranty further provides that: "If any **Insured** has knowledge, as of the date below, of any **Wrongful Act** of any of the **Insureds**, or any fact, circumstance, or situation which (s)he reasonably believes might result in a **Claim** being made against any of the **Insureds**, whether or not described above, the Insurer shall not be liable to pay any **Loss** resulting from any and all **Claims** subsequently emanating from such **Wrongful Act** or fact, circumstances, or situation, but solely as to any Insured who possessed knowledge of such fact, circumstance, or situation."

54.     SK Foods Group submitted a second warranty to AWAC for purposes of applying for the Excess Policy (the "Warranty for Higher Limits"). The Warranty for Higher Limits contains identical language to the Primary Warranty, and was signed by Scott Salyer on behalf of SK Foods Group, and dated April 15, 2009.

55.     The Primary Warranty and Warranty for Higher Limits both provide that they "will be attached to and become part of the Application for the policy ...."

**Financial Statements**

56.     As part of the underwriting process, Gallagher & Co. submitted financial statements for certain SK Foods Group entities to Plaintiffs. In particular, Gallagher & Co. submitted audited financial statements for SAFF, which are consolidated to include Salyer American Cooling, LP and Yuma American Cooling, SP, for the years ending December 31,

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    2006 and December 31, 2007. Gallagher & Co. also submitted audited financial statements for

2    SK Foods for the year ending June 30, 2008. Gallagher & Co. also submitted audited

3    consolidated financial statements for SK Foods and RHM for the eight months ending in June 30,

4    2007, as well as unaudited consolidated financial statements for SK Foods and RHM for the

5    second half of 2007. Finally, Gallagher & Co. submitted a one page "Financial Information"

6    sheet for SK Foods and SAFF for 2006 and the first half of 2007.

7    **January 30, 2009 Meeting**

8    57.    On January 30, 2009, representatives of SK Foods Group met with AWAC

9    underwriters to discuss SK Foods Group's operations and financial condition. Mark McCormick,

10    the Executive Vice President and Treasurer of SK Foods, and Lisa Crist, the Executive Vice

11    President of Administration and Human Resources for SK Foods, attended the meeting on behalf

12    of SK Foods Group. McCormick and Crist were authorized to act on behalf of all SK Foods

13    Group entities for the purpose of applying for insurance. In addition, Emily Erickson of

14    Gallagher & Co., SK Foods Group's broker/agent, was in attendance.

15    58.    At this meeting, Plaintiffs' underwriters made inquires regarding, among other

16    things: (a) SK Foods Group's financial performance in 2008; (b) SK Foods Group's financial

17    outlook for 2009; and (c) SK Foods Group's credit facilities.

18    59.    McCormick and Crist represented to the underwriters that SK Foods Group was in

19    good financial health, that SAFF's financials were "strong," and that SK Foods' financials were

20    "doing better." McCormick and Crist also represented that although the financials provided to

21    Plaintiffs did not provide a complete picture because they were not consolidated, SK Foods

22    Group's revenues had increased and were very strong, and that SK Foods Group's profits were

23    strong.

24    60.    Plaintiffs are informed and believe and thereon allege that prior to filing

25    bankruptcy, SK Foods and RHM, as borrowers, and SK Foods, LLC, as guarantor, were party to a

26    credit facility agreement with a number of lenders (the "SK Foods Credit Facilities") that

27    provided for: (1) a revolving credit facility in the maximum aggregate amount, subject to the

28    maintenance of a specified borrowing base, of (a) $100 million from July 1, 2008 through

1   February 28, 2009, (b) $90 million from March 1, 2009 through April 30, 2009, and (c) $55

2   million after May 1, 2009; (2) a temporary excess loan of $25 million through March 1, 2009; and

3   (3) a term loan in the amount of $100 million due July 15, 2009. At the January 30, 2009

4   meeting, McCormick and Crist provided AWAC underwriters with information regarding the SK

5   Foods Credit Facilities, and represented that SK Foods and RHM had come to an agreement with

6   their lenders and that the SK Foods Credit Facilities would be extended.

### The Primary and Excess Policies

8       61.     On the basis of the foregoing representations and warranties (among other things),

9   Allied World issued the Primary Policy to S.K. Foods PM Corp., and AWAC would have issued

10  the Excess Policy (had the premium been paid as required).

11      62.     The Primary Policy provides that "[it] is agreed that the **Insurer** has relied upon

12  the information contained in the **Application** in issuing this policy." (Primary Policy General

13  Terms & Conditions Section, Clause 10, as modified by Endorsement No. 6.) "**Application**" is

14  defined as "all signed applications, including any attachments and other materials provided

15  therewith or incorporated therein, submitted in connection with the underwriting of this policy or

16  for any other policy of which this policy is a renewal, replacement or which it succeeds in time."

17  (Primary Policy General Terms & Conditions Section, Clause 2(a).) The Primary Policy provides

18  that the Application "shall be deemed to be attached to, incorporated into, and made a part of this

19  policy." (Preamble to the Primary Policy General Terms & Conditions Section.)

### Plaintiffs Initiate Investigation

21      63.     Felisa Estrada and Sergio Zamora filed the *Estrada* Action on or about June 1,

22  2009. The defendants in the *Estrada* Action sought coverage for the *Estrada* Action from

23  Plaintiffs under the Primary and Excess Policies. Plaintiffs denied coverage for the *Estrada*

24  Action and reserved all rights under their respective policies, including the right to rescind the

25  Primary and Excess Policies. As a result of the allegations in the *Estrada* Action, Plaintiffs

26  initiated an investigation as to whether Defendants had made misrepresentations or concealed

27  material facts during the underwriting of the Primary and Excess Policies.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## SK Foods Group's Poor Financial Condition

64. Through their investigation, Plaintiffs have learned that SK Foods Group and its constituent companies, including but not limited to SK Foods, RHM, and SAFF, were experiencing serious financial difficulties prior to the inception of the Primary Policy and the intended inception of the Excess Policy.

65. Far from being in strong financial health, as Defendants had represented, Plaintiffs are informed and believe that SAFF had, at most, only been profitable in one year during the five year period from 2004 through 2008, and suffered a significant loss in 2008. Plaintiffs are also informed and believe that SAFF suffered a net loss during the first four months of 2009.

66. Plaintiffs are informed and believe that these financial difficulties resulted in part from an investigation initiated in April 2008 by the United States Department of Justice ("DOJ") into alleged commercial bribery. Plaintiffs are informed and believe that the significant negative publicity associated with the DOJ investigation negatively impacted the ability of the SK Foods Group entities to secure new business and new working capital. SAFF estimates the negative publicity from the DOJ investigation resulted in between $13 million and $15 million in lost revenue for SAFF.

67. The SAFF Consolidated Financial Statements for 2006 and 2007 stated that "the [DOJ] investigation has nothing to do with Salyer American Fresh Foods, Inc. and therefore has no impact on the amounts reported in the financial statements as of and for the year ended December 31, 2007." Plaintiffs are informed and believe that this statement was false, in that the DOJ investigation had a significant impact on SAFF's finances as a result of SAFF's relationship with SK Foods.

68. Plaintiffs are informed and believe and thereon allege that SAFF was party to an agreement whereby various lenders, represented by Bank of the West as Administrative Agent, granted SAFF a $32 million revolving line of credit, subject to the maintenance of a specified borrowing base, and a $7 million Term Loan (the "SAFF Credit Facilities"). Plaintiffs are informed and believe that as a result of, among other things, SAFF's poor cash flow, SAFF's

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    borrowing base for the SAFF Credit Facilities was reduced to a level which would not allow

2    SAFF to continue operations.

3          69.    Plaintiffs are informed and believe and thereon allege that Defendants knew prior

4    to the February 19, 2009 inception of the Primary Policy that SAFF had insufficient cash to

5    continue in business and would have to cease operations, file bankruptcy, or sell the company to

6    new owners.

7          70.    In late April 2009, SAFF instructed growers to cease planting crops because it was

8    going out of business. On April 29, 2009, Bank of the West, as administrative agent for itself and

9    other lenders on the SAFF Credit Facilities filed an action captioned *Bank of the West v. Salyer*

10   *American Fresh Foods, et al.*, Monterey County Superior Court Case No. M98573 (the "*Bank of*

11   *the West* Action") seeking, among other things, the appointment of a receiver to administer

12   substantially all of the assets of SAFF. Steve Franson was appointed receiver over substantially

13   all of the assets of SAFF by court order on May 6, 2009.

14          **SK Foods Employee Pleads Guilty to Fraudulent Sale of Defective Goods**

15          71.    Plaintiffs are informed and believe that in addition to investigating commercial

16   bribery, the DOJ's investigation of SK Foods Group uncovered fraud with respect to the quality

17   of the tomato product that was produced, purchased and sold by SK Foods. Plaintiffs are

18   informed and believe that on February 13, 2009, the United States Attorney filed a Criminal

19   Information against former SK Foods Records and Business Analyst, Jennifer Dahlman, alleging

20   that she participated in causing the shipment of processed tomato products that were adulterated

21   and unsalable domestically due to their excessive mold content. Plaintiffs are informed and

22   believe that Dahlman was also accused of, among other things, falsifying the various grading

23   factors and results of required laboratory testing contained on "Certificates of Analysis" and other

24   quality control documents that accompanied customer-bound shipments of tomato product.

25   Plaintiffs are informed and believe that on February 18, 2009, Dahlman pleaded guilty to these

26   charges.

27

28

## Financial Statements Discovered to Be Inaccurate

72. Through their investigation, Plaintiffs have learned that SK Foods and RHM were also experiencing significant financial difficulties in 2008 and early 2009.

73. Plaintiffs are informed and believe and thereon allege that SK Foods and RHM's lenders conducted a field audit in or before early February 2009 that revealed a large amount of "unallocated" costs improperly included as eligible collateral in the these companies' borrowing base. Plaintiffs are informed and believe that a proper accounting of the unallocated costs reflected that SK Foods and RHM had been over-advanced on their borrowing since November 30, 2008.

74. Plaintiffs are informed and believe that in or before early February 2009, Defendants and their auditors determined that SK Foods and RHM's unaudited financial statements for fiscal year 2009 were inaccurate. Plaintiffs are informed and believe that SK Foods' audited financial statements for the fiscal year ending June 30, 2008 and SK Foods and RHM's financial statements for the second half of 2007, all of which had been provided to Plaintiffs during the underwriting process, were also determined to be inaccurate and unreliable at that time. Plaintiffs are informed and believe that Defendants discovered that the financial statements submitted to Plaintiffs were inaccurate and unreliable prior to the respective inception dates of the Primary and Excess Policies, and prior to submitting these statements to Plaintiffs, but failed to inform Plaintiffs of these inaccuracies.

75. Plaintiffs are informed and believe that on or about March 26, 2009, SK Foods Group Chief Financial Officer, Shondale Seymour, issued a letter intended for parties who had relied on or were likely to rely on SK Foods Financial Statements, which provided that: "Subsequent to the issuance of the Annual Financial Statements of SK Foods, LP as of June 30, 2008 and for the year then ended, we have discovered information that the effect on the financial statements cannot be determined without a prolonged investigation. At this point in time, those financial statements should not be relied upon and revised financial statements and auditor's report will be issued upon completion of the investigation." Defendants did not provide Plaintiffs with a copy of Ms. Seymour's March 26, 2009 letter.

15

## The SK Foods Credit Facilities Were Not Extended

76.     At the time of the January 30, 2009 meeting between McCormick, Crist, and the AWAC underwriters, the SK Foods Credit Facilities had not been extended as McCormick and Crist had represented, and Plaintiffs are informed and believe that SK Foods and RHM had not come to any agreement regarding its extension with their lenders. Plaintiffs are informed and believe that as of January 30, 2009, the Defendants had no reasonable basis to believe that the SK Foods Credit Facilities had been or would be extended, and, in fact, had reason to believe that it would not be extended because of SK Foods and RHM's poor financial condition and the overstated borrowing base on the SK Foods Credit Facilities.

77.     Plaintiffs are informed and believe that in or before early February 2009, Defendants became aware that SK Foods and RHM were in default on the SK Foods Credit Facilities. Plaintiffs are informed and believe that on January 28, 2009, just two days before the January 30, 2009 meeting, the lenders on SK Foods Credit Facilities retained Alvarez & Marsal North America, LLC ("A&M") to "assess restructuring alternatives" proposed by SK Foods and RHM. Plaintiffs are informed and believe that on February 20, 2009, the lenders delivered SK Foods and RHM a Notice of Default. Plaintiffs are informed and believe that SK Foods and RHM's defaults included failing to provide borrowing base certificates, deficiencies in the borrowing base, failure to deliver financial statements, and failure to make necessary payments.

## Defendants' Answers to Application Questions 6(a) and 6(g) Were False

78.     Pursuant to the policies and applicable law, knowledge of Scott Salyer and other SK Foods Group executives is imputed to all of the entity Defendants in this action.

79.     Plaintiffs are informed and believe that as a result of SK Foods Group's financial problems, Defendants were aware by or before the Primary Policy inception date of February 19, 2009, that SK Foods, RHM, and SAFF would not be able to continue to operate without additional capital. Defendants anticipated that SK Foods, RHM, and SAFF would reorganize or sell more than 10% of their assets. As such, Defendants' responses to Application questions 6(a) and 6(g) were false.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1      80.    Plaintiffs are informed and believe that, prior to the inception of the Primary

2    Policy and intended inception of the Excess Policy, SK Foods and RHM were actively preparing

3    to file a Chapter 11 bankruptcy petition and to sell substantially all of their assets. Plaintiffs are

4    informed and believe that in or before early February 2009, SK Foods and RHM hired financial

5    consultant FTI Consulting ("FTI"). SK Foods and RHM also retained Winston & Strawn LLP

6    ("Winston") as their bankruptcy and restructuring counsel in or before February 2009. Plaintiffs

7    are informed and believe that from the outset, Winston provided SK Foods and RHM with

8    substantial advice and assistance regarding the structuring of a sale of their assets through

9    Chapter 11 proceedings.

10      81.    On or before March 23, 2009, SK Foods and RHM retained Chanin Capital

11    Partners, LP, a Duff and Phelps Company ("Chanin"), as financial advisors and investment

12    bankers. Plaintiffs are informed and believe that since at least that date, Chanin has been actively

13    engaged in identifying and contacting potential purchasers, organizing the sale process, and

14    assisting potential bidders in the conduct of due diligence. Plaintiffs are informed and believe

15    that although Chanin might not have been formally retained until March 23, 2009, SK Foods and

16    RHM actively sought potential purchasers of substantially all of their assets in or before early

17    February 2009. On March 31, 2009, SK Foods and RHM hired Chief Restructuring Officer,

18    Steven Sebastian.

19      82.    On May 5, 2009, BMO Capital Markets Financing, Inc., along with several other

20    creditors, filed Chapter 11 Involuntary Petitions against SK Foods and RHM in the U.S.

21    Bankruptcy Court for the Eastern District of California. On May 7, 2009, SK Foods and RHM

22    filed Chapter 11 Voluntary Petitions in the same court.

23      83.    The Defendants were obligated to inform Allied World of any material change in

24    their representations to Plaintiffs between the time the St. Paul Application was submitted or

25    other representations were made, and the February 19, 2009 inception of the Primary Policy.

26    Defendants were also obligated to inform AWAC of any material changes in their representations

27    prior to the April 8, 2009 intended inception date for the Excess Policy.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1     84.     Defendants were aware, but failed to inform Plaintiffs of the poor financial

2     condition of SK Foods Group in general, and of SK Foods, RHM, and SAFF in particular.

3     Defendants were aware but failed to inform Plaintiffs that certain financial statements provided to

4     Plaintiffs on their behalf as part of the underwriting of the Primary and Excess Policies, were

5     inaccurate and unreliable.  Defendants were aware but failed to inform Plaintiffs that the SK

6     Foods Credit Facilities would not be extended, or that SK Foods and RHM were in default on the

7     SK Foods Credit Facilities.  Defendants were also aware but failed to inform Plaintiffs that the

8     answers to Application questions 6(a) and 6(g) were false, and that Defendants anticipated a

9     reorganization or sale of substantially all of the assets of SK Foods, RHM, and SAFF.

## FIRST CAUSE OF ACTION

### (Rescission of Primary Policy – Against All Defendants)

12    85.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1

      through 84 of this Complaint as if fully set forth herein.

14    86.     Allied World issued the Primary Policy in justifiable reliance on the truth of the

      representations that were made by Defendants in connection with the application for and

      underwriting of the Primary Policy relating to the financial condition of SK Foods Group and its

      constituent companies, including the representations made in the St. Paul Application, the

      Primary Warranty, SK Foods Group's financial statements submitted to AWAC, and the

      representations made by SK Foods Group's executives' at the January 30, 2009 meeting with

      AWAC underwriters.

21    87.     As a result of Plaintiffs' investigation, it is now clear that Defendants made

      material misrepresentations regarding the financial condition of SK Foods Group and its

      constituent companies in connection with the application for and underwriting of the Primary

      Policy, including: (1) falsely representing that Defendants did not anticipate a reorganization of

      SK Foods, RHM, or SAFF; (2) falsely representing that Defendants did not anticipate the sale of

      more than 10% of the assets of SK Foods, RHM or SAFF; (3) the submission of inaccurate and

      unreliable financial statements; (4) falsely representing that the financial health of SK Foods

Group, including SK Foods, RHM, and SAFF, was strong and that these entities were profitable in 2008; and (5) falsely representing that the SK Foods Credit Facilities would be extended for the 2009 growing season.

88. Plaintiffs investigation has also revealed that Defendants' representation in the Primary Warranty, that "No **Insured** has knowledge ... of any **Wrongful Act** of any **Insured**, or any fact, circumstance or situation which (s)he reasonably believes might result in a **claim** being made against any of the **Insureds**," was false. Plaintiffs are informed and believe that Defendants were aware that an SK Foods employee had been charged with and pleaded guilty to selling tomato products with excessive mold content and falsely certifying required laboratory testing. Plaintiffs are informed and believe that Defendants were aware that circumstances related to the SK Foods employee's guilty plea were reasonably likely to give rise to claims against the Insureds.

89. Even absent these representations, Defendants were aware and were under an affirmative duty to disclose that SK Foods Group was experiencing significant financial difficulties, that SK Foods and RHM's lenders would not extend the SK Foods Credit Facilities, that SK Foods and RHM were in default on the SK Foods Credit Facilities, that SK Foods, RHM, and SAFF anticipated reorganization and sale of substantially all of their assets, that SK Foods and RHM had actively begun preparations for filing Chapter 11 bankruptcy petitions and were actively seeking a purchaser of substantially all of their assets, that certain financial statements provided to AWAC were not accurate or reliable, and that an SK Foods employee had been charged with and pleaded guilty to selling tomato products with excessive mold content and falsely certifying required laboratory testing – all of which occurred prior to the issuance of the Primary Policy. Defendants knew or reasonably should have known that such information would be material to the terms on which the Primary Policy was issued, and that Allied World had no means of ascertaining that information on its own. Yet, Defendants did not disclose this information.

90. The information that Defendants misrepresented, warranted, and omitted was material to Allied World's acceptance of the risk and the hazard assumed in the Primary Policy.

1    Had Allied World known the truth about the financial condition of SK Foods Group, that a

2    reorganization and sale of substantially all of SK Foods', RHM's and SAFF's assets was

3    anticipated, and the potential that claims might be made against the Insureds as a result of the

4    criminal activity of an SK Foods employee, it would not have issued the Primary Policy, or would

5    not have issued the Primary Policy on the same terms or for the same premium.

6        91.    Accordingly, pursuant to the terms of the Primary Policy, the California Insurance

7    Code, including Insurance Code Sections 331, 359, 447 and 650, and the California Civil Code,

8    including Civil Code Section 1691, Allied World asks that the Court declare that the following

9    coverage provisions in the Primary Policy are void *ab initio* as to all Defendants:

- Directors & Officers Liability Coverage Section, Insuring Agreement C;

- Directors & Officers Liability Coverage Section, Insuring Agreement D, as
  modified by Endorsement No. 6;

- Employment Practices Liability Coverage Section, in its entirety; and

- Fiduciary Liability Coverage Section, in its entirety, with the exception of
  coverage for "non-**Indemnifiable Loss**," as that term is used in the Fiduciary
  Liability Coverage Section.

17       92.    Upon information and belief, Allied World alleges that the Defendants herein

18   dispute Allied World's right to rescind the Primary Policy as set forth above. Therefore, an actual

19   and justiciable controversy exists between Allied World and Defendants regarding Allied World's

20   entitlement to rescission.

## SECOND CAUSE OF ACTION

### (Reformation of Primary Policy –
### Against All Defendants)

93.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1

through 92 of this Complaint as if fully set forth herein.

94.    To the extent that the Court does not grant Allied World the full relief requested in

its First Cause of Action, Allied World requests in the alternative that the Primary Policy be

reformed, as further described below.

95. As alleged above, Defendants made material misrepresentations regarding the financial condition of SK Foods Group and its constituent companies in connection with the application for and underwriting of the Primary Policy, including: (1) falsely representing that Defendants did not anticipate a reorganization of SK Foods, RHM, or SAFF; (2) falsely representing that Defendants did not anticipate the sale of more than 10% of the assets of SK Foods, RHM or SAFF; (3) the submission of inaccurate and unreliable financial statements; (4) falsely representing that the financial health of SK Foods Group, including SK Foods, RHM, and SAFF, was strong and that these entities were profitable in 2008; and (5) falsely representing that the SK Foods Credit Facilities would be extended for the 2009 growing season.

96. As described above, Defendants' representation in the Primary Warranty, that "No **Insured** has knowledge ... of any **Wrongful Act** of any **Insured**, or any fact, circumstance or situation which (s)he reasonably believes might result in a **claim** being made against any of the **Insureds**," was also false.

97. Even absent these representations, Defendants were aware and were under an affirmative duty to disclose that SK Foods Group was experiencing significant financial difficulties, that SK Foods and RHM's lenders would not extend the SK Foods Credit Facilities, that SK Foods and RHM were in default on the SK Foods Credit Facilities, that SK Foods, RHM, and SAFF anticipated reorganization and sale of substantially all of their assets, that SK Foods and RHM had actively begun preparations for filing Chapter 11 bankruptcy petitions and were actively seeking a purchaser of substantially all of their assets, that certain financial statements provided to AWAC were not accurate or reliable, and that an SK Foods employee had been charged with and pleaded guilty to selling tomato products with excessive mold content and falsely certifying required laboratory testing – all of which occurred prior to the issuance of the Primary Policy. Defendants knew or reasonably should have known that such information would be material to the terms on which the Primary Policy was issued, and that Allied World had no means of ascertaining that information on its own. Yet, Defendants did not disclose this information.

98.     Allied World was ignorant of the falsity of the above referenced representations and unaware of the facts concealed from it, and reasonably and justifiably relied upon the accuracy and truthfulness of those representations in issuing the Primary Policy.  Allied World is informed and believes that said misrepresentations were made with the intent to have Allied World issue a policy in error (or, at a minimum, there was reason to know that a policy would be issued in error), and but for the intent to deceive Allied World, or take advantage of Allied World's lack of knowledge concerning the falsity of SK Foods Group's representations, Allied World would not have issued the Primary Policy, or would have issued the Primary Policy on different terms and for a higher premium.

99.     Allied World relied on the representations and warranties in issuing the Primary Policy on the terms and in the form it was issued, and, as an alternative remedy, Allied World seeks reformation of the Primary Policy by removing the following coverage provisions:

- Directors & Officers Liability Coverage Section, Insuring Agreement C;
- Directors & Officers Liability Coverage Section, Insuring Agreement D, as modified by Endorsement No. 6;
- Employment Practices Liability Coverage Section, in its entirety; and
- Fiduciary Liability Coverage Section, in its entirety, with the exception of coverage for "non-Indemnifiable Loss," as that term is used in the Fiduciary Liability Coverage Section.

100.     Upon information and belief, Allied World alleges that the Defendants herein dispute Allied World's right to have the Primary Policy reformed as set forth above.  Therefore, an actual and justiciable controversy exists between Allied World and Defendants regarding Allied World's entitlement to reformation.

## THIRD CAUSE OF ACTION

### (Breach of Warranty/Primary Policy – Against All Defendants)

101.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 100 of this Complaint as if fully set forth herein.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

102. The Primary Policy provides that the Application "shall be deemed to be attached to, incorporated into, and made a part of this policy ...." (Preamble to the Primary Policy General Terms & Conditions Section.) **"Application"** is defined as "all signed applications, including any attachments and other materials provided therewith or incorporated therein, submitted in connection with the underwriting of this policy or for any other policy of which this policy is a renewal, replacement or which it succeeds in time." (Primary Policy General Terms & Conditions Section, Clause 2(a).) The Primary Policy provides that the Application "shall be deemed to be attached to, incorporated into, and made a part of this policy." (Preamble to the Primary Policy General Terms & Conditions Section.)

103. The representations made by Defendants in the St. Paul Application, the Primary Warranty, and the SK Foods Group's financial statements, all of which were submitted in connection with the underwriting of the Primary Policy, are part of the Application. Because the Application is expressly referred to in and made part of the Primary Policy, the representations made by Defendants in the St. Paul Application, the Primary Warranty, and the SK Foods Group's financial statements, are express warranties, as that term is used in California Insurance Code § 441.

104. These warranties were material to Allied World's acceptance of the risk. As set forth above, the Primary Policy provides that "[it] is agreed that the **Insurer** has relied upon the information contained in the **Application** in issuing this policy." (Primary Policy General Terms & Conditions Section, Clause 10, as modified by Endorsement No. 6.)

105. As alleged above, Defendants' answers to questions 6(a) and 6(g) in the St. Paul Application were false, in that Defendants anticipated by or before the Primary Policy inception date of February 19, 2009, that SK Foods, RHM, and SAFF would reorganize or sell more than 10% of their assets. In addition, representations in certain financial statements submitted by Defendants to AWAC were inaccurate and unreliable.

106. Further, as alleged above, Defendants' representation in the Primary Warranty, that "No **Insured** has knowledge ... of any **Wrongful Act** of any **Insured**, or any fact,

23

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1   circumstance or situation which (s)he reasonably believes might result in a **claim** being made

2   against any of the **Insureds**," was also false.

3       107.    Had Allied World known the truth about the financial condition of SK Foods

4   Group, that a reorganization and sale of substantially all of SK Foods', RHM's and SAFF's assets

5   was anticipated, and the potential that claims might be made against Insureds as a result of the

6   criminal activity of an SK Foods employee, it would not have issued the Primary Policy.

7       108.    By reason of the foregoing, pursuant to California Insurance Code Section 449,

8   Allied World is entitled to a judgment as against all Defendants that the breach of warranty

9   prevented the following provisions of the Primary Policy from attaching to the risk and that it is

10  therefore relieved of any liability or obligation to pay any amounts under these provisions:

11          • Directors & Officers Liability Coverage Section, Insuring Agreement C;

12          • Directors & Officers Liability Coverage Section, Insuring Agreement D, as

13              modified by Endorsement No. 6;

14          • Employment Practices Liability Coverage Section, in its entirety; and

15          • Fiduciary Liability Coverage Section, in its entirety, with the exception of

16              coverage for "non-**Indemnifiable Loss**," as that term is used in the Fiduciary

17              Liability Coverage Section.

18      109.    Allied World is further entitled to a declaration that Defendants are liable to Allied

19  World for any payments made by Allied World, including any future payments, to or on behalf of

20  any Insureds pursuant to Allied World's obligations under the Primary Policy.

21      110.    Upon information and belief, Allied World alleges that the Defendants herein

22  dispute that a breach of warranty prevented the Primary Policy from attaching to the risk or that

23  Defendants are liable to Allied World for any amounts Allied World is obligated to pay under the

24  Primary Policy. Therefore, an actual and justiciable controversy exists between Allied World and

25  Defendants regarding Allied World's entitlement to the relief sought herein due to Defendants'

26  breach of the Warranty.

27

28

## FOURTH CAUSE OF ACTION

### (Declaratory Relief/Primary Policy –
### Against All Defendants)

111.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 110 of this Complaint as if fully set forth herein.

112.    As alleged above, Defendants made material misrepresentations regarding the financial condition of SK Foods Group and its constituent companies in connection with the application for and underwriting of the Primary Policy, including: (1) falsely representing that Defendants did not anticipate a reorganization of SK Foods, RHM, or SAFF; (2) falsely representing that Defendants did not anticipate the sale of more than 10% of the assets of SK Foods, RHM or SAFF; (3) the submission of inaccurate and unreliable financial statements; (4) falsely representing that the financial health of SK Foods Group, including SK Foods, RHM, and SAFF, was strong and that these entities were profitable in 2008; and (5) falsely representing that the SK Foods Credit Facilities would be extended for the 2009 growing season.

113.    As described above, Defendants' representation in the Primary Warranty, that "No **Insured** has knowledge ... of any **Wrongful Act** of any **Insured**, or any fact, circumstance or situation which (s)he reasonably believes might result in a **claim** being made against any of the **Insureds**," was also false.

114.    Allied World is informed and believes that Defendants made these misrepresentations either with knowledge of their falsity, or without reasonable grounds for believing them to be true, for the purpose of inducing Allied World to issue the Primary Policy on the terms and in the form it was issued.

115.    Allied World was ignorant of the falsity of the above referenced representations, and reasonably and justifiably relied upon the accuracy and truthfulness of those representations in issuing the Primary Policy.  Had Allied World known the truth about SK Foods Group's financial health, Allied World would have declined to insure Defendants.

116.    Even absent these representations, Defendants were aware and were under an affirmative duty to disclose that SK Foods Group was experiencing significant financial

1    TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

difficulties, that SK Foods and RHM's lenders would not extend the SK Foods Credit Facilities, that SK Foods and RHM were in default on the SK Foods Credit Facilities, that SK Foods, RHM, and SAFF anticipated reorganization and sale of substantially all of their assets, that SK Foods and RHM had actively begun preparations for filing Chapter 11 bankruptcy petitions and were actively seeking a purchaser of substantially all of their assets, that certain financial statements provided to AWAC were not accurate or reliable, and that an SK Foods employee had been charged with and pleaded guilty to selling tomato products with excessive mold content and falsely certifying required laboratory testing – all of which occurred prior to the issuance of the Primary Policy. Defendants knew or reasonably should have known that such information would be material to the terms on which the Primary Policy was issued, and that Allied World had no means of ascertaining that information on its own. Yet, Defendants did not disclose this information. Had Defendants disclosed this information, AWAC would not have issued the Primary Policy.

117.    Allied World reasonably anticipates that claims under the Primary Policy, whether or not rescinded or reformed as prayed for in this complaint, may be made against Insureds and tendered to Allied World for coverage. Because Allied World would not have issued the Primary Policy but for Defendants' misrepresentations and concealment described above, any payments made by Allied World pursuant to its obligations under the Primary Policy are damages which are the direct and proximate result of Defendants' misrepresentations and concealment.

118.    Upon information and belief, Allied World alleges that the Defendants herein dispute that any payments that will be made by Allied World pursuant to its obligations under the Primary Policy are damages resulting from Defendants' misrepresentations. Therefore, an actual and justiciable controversy exists between Allied World and Defendants regarding Defendants' liability for these payments.

119.    Allied World asks that the Court declare that Defendants are liable to Allied World for any payments made by Allied World, including any future payments, to or on behalf of any Insured pursuant to Allied Worlds' obligations under the Primary Policy.

1

## FIFTH CAUSE OF ACTION

2

**(Declaratory Relief/Excess Policy –**

3

**Against All Defendants)**

4
120.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1

5
through 119 of this Complaint as if fully set forth herein.

6
121.    The Excess Policy was to be issued in consideration for, and on the condition

7
precedent that, the requisite premium be paid.

8
122.    SK Foods Group failed to pay the requisite premium for the Excess Policy.

9
123.    Because SK Foods Group failed to pay the requisite premium for the Excess

10
Policy, the Excess Policy was never effectively issued and delivered, and so is inoperative and of

11
no legal force or effect.

12
124.    Upon information and belief, AWAC alleges that the Defendants herein dispute

13
that the Excess Policy was never effectively issued and delivered, and contend that the Excess

14
Policy is operative.  Therefore, an actual and justiciable controversy exists between AWAC and

15
Defendants regarding whether the Excess Policy is operative.

16
125.    AWAC asks that the Court declare that the Excess Policy was never effectively

17
issued and delivered, that the Excess Policy is inoperative and of no legal force or effect, and that

18
AWAC has no duties or obligations under the Excess Policy.

19

## SIXTH CAUSE OF ACTION

20

**(Rescission of Excess Policy–**

21

**Against All Defendants)**

22
126.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1

23
through 125 of this Complaint as if fully set forth herein.

24
127.    It is AWAC's position that the Excess Policy was not effectively issued and

25
delivered due to SK Foods Group's failure to pay the requisite premium for the Excess Policy.  In

26
the event that the relief sought in the Fifth Cause of Action asserted herein is not granted to

27
AWAC, and the Excess Policy is found to have been issued and delivered, AWAC alleges that

28
the Excess Policy was issued in justifiable reliance on the truth of the representations that were

made by Defendants in connection with the application for and underwriting of the Excess Policy relating to the financial condition of SK Foods Group and its constituent companies, including the representations made in the St. Paul Application, the Primary Warranty, the Warranty for Higher Limits, SK Foods Group's financial statements submitted to AWAC, and the representations made by SK Foods Group's executives' at the January 30, 2009 meeting with AWAC underwriters.

128. As alleged above, it is now clear that Defendants made material misrepresentations regarding the financial condition of SK Foods Group and its constituent companies in connection with the application for and underwriting of the Excess Policy, including: (1) falsely representing that Defendants did not anticipate a reorganization of SK Foods, RHM, or SAFF; (2) falsely representing that Defendants did not anticipate the sale of more than 10% of the assets of SK Foods, RHM or SAFF; (3) the submission of inaccurate and unreliable financial statements; (4) falsely representing that the financial health of SK Foods Group, including SK Foods, RHM, and SAFF, was strong and that these entities were profitable in 2008; and (5) falsely representing that the SK Foods Credit Facilities would be extended for the 2009 growing season.

129. As described above, Defendants' representation in the Primary Warranty and Warranty for Higher Limits, that "No **Insured** has knowledge ... of any **Wrongful Act** of any **Insured**, or any fact, circumstance or situation which (s)he reasonably believes might result in a **claim** being made against any of the **Insureds**," was also false.

130. Even absent these representations, Defendants were aware and were under an affirmative duty to disclose that SK Foods Group was experiencing significant financial difficulties, that SK Foods and RHM's lenders would not extend the SK Foods Credit Facilities, that SK Foods and RHM were in default on the SK Foods Credit Facilities, that SK Foods' and RHM's lenders issued a Notice of Default with respect to the SK Foods Credit Facilities, that SK Foods' and RHM's filing of Chapter 11 bankruptcy petitions were imminent and that SK Foods and RHM were actively seeking a purchaser of substantially all of their assets, that certain financial statements provided to AWAC were not accurate or reliable, and that an SK Foods employee had been charged with and pleaded guilty to selling tomato products with excessive

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    mold content and falsely certifying required laboratory testing – all of which occurred prior to the

2    intended inception of the Excess Policy. Defendants knew or reasonably should have known that

3    such information would be material to the terms on which the Excess Policy was to be issued, and

4    that AWAC had no means of ascertaining that information on its own. Yet, Defendants did not

5    disclose this information.

6        131.   The information that Defendants misrepresented, warranted, and omitted was

7    material to AWAC's acceptance of the risk and the hazard assumed in the Excess Policy, if any.

8    Had AWAC known the truth about the financial condition of SK Foods Group, that a

9    reorganization and sale of substantially all of SK Foods', RHM's and SAFF's assets was

10   anticipated, and the potential that claims might be made against the Insureds as a result of the

11   criminal activity of an SK Foods employee, it would not have agreed to provide the requested

12   insurance, or would have done so on different terms and for a different premium.

13       132.   Accordingly, pursuant to the terms of the Excess Policy, the California Insurance

14   Code, including Insurance Code Sections 331, 359, 447 and 650, and the California Civil Code,

15   including Civil Code Section 1691, AWAC asks that the Court declare that the Excess Policy is

16   void *ab initio* as to all Defendants with respect to the following coverage provisions in the

17   Primary Policy:

18       • Directors & Officers Liability Coverage Section, Insuring Agreement C;

19       • Directors & Officers Liability Coverage Section, Insuring Agreement D, as

20         modified by Endorsement No. 6;

21       • Employment Practices Liability Coverage Section, in its entirety; and

22       • Fiduciary Liability Coverage Section, in its entirety, with the exception of

23         coverage for "non-**Indemnifiable Loss**," as that term is used in the Fiduciary

24         Liability Coverage Section.

25       133.   Upon information and belief, AWAC alleges that the Defendants herein dispute

26   AWAC's right to rescind the Excess Policy as set forth above. Therefore, an actual and

27   justiciable controversy exists between AWAC and Defendants regarding AWAC's entitlement to

28   rescission.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# SEVENTH CAUSE OF ACTION

### (Reformation of Excess Policy –
### Against All Defendants)

134.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 133 of this Complaint as if fully set forth herein.

135.    It is AWAC's position that the Excess Policy was not effectively issued and delivered due to SK Foods Group's failure to pay the requisite premium for the Excess Policy.  In the event that the relief sought in the Fifth or Sixth Causes of Action asserted herein is not granted to AWAC, AWAC requests in the alternative that the Excess Policy be reformed, as further described below.

136.    As alleged above, Defendants made material misrepresentations regarding the financial condition of SK Foods Group and its constituent companies in connection with the application for and underwriting of the Excess Policy, including: (1) falsely representing that Defendants did not anticipate a reorganization of SK Foods, RHM, or SAFF; (2) falsely representing that Defendants did not anticipate the sale of more than 10% of the assets of SK Foods, RHM or SAFF; (3) the submission of inaccurate and unreliable financial statements; (4) falsely representing that the financial health of SK Foods Group, including SK Foods, RHM, and SAFF, was strong and that these entities were profitable in 2008; and (5) falsely representing that the SK Foods Credit Facilities would be extended for the 2009 growing season.

137.    As described above, Defendants' representation in the Primary Warranty and Warranty for Higher Limits, that "No **Insured** has knowledge … of any **Wrongful Act** of any **Insured**, or any fact, circumstance or situation which (s)he reasonably believes might result in a **claim** being made against any of the **Insureds**," was also false.

138.    Even absent these representations, Defendants were aware and were under an affirmative duty to disclose that SK Foods Group was experiencing significant financial difficulties, that SK Foods and RHM's lenders would not extend the SK Foods Credit Facilities, that SK Foods and RHM were in default on the SK Foods Credit Facilities, that SK Foods' and RHM's lenders issued a Notice of Default with respect to the SK Foods Credit Facilities, that SK

Foods' and RHM's filing of Chapter 11 bankruptcy petitions were imminent and that SK Foods and RHM were actively seeking a purchaser of substantially all of their assets, that certain financial statements provided to AWAC were not accurate or reliable, and that an SK Foods employee had been charged with and pleaded guilty to selling tomato products with excessive mold content and falsely certifying required laboratory testing – all of which occurred prior to the intended inception of the Excess Policy. Defendants knew or reasonably should have known that such information would be material to the terms on which the Excess Policy was to be issued, and that AWAC had no means of ascertaining that information on its own. Yet, they did not disclose this information.

139. AWAC was ignorant of the falsity of the above referenced representations and unaware of the facts concealed from it, and reasonably and justifiably relied upon the accuracy and truthfulness of those representations in agreeing to issue the Excess Policy. AWAC is informed and believes that said misrepresentations were made with the intent to have AWAC issue a policy in error (or, at a minimum, there was reason to know that a policy would be issued in error), and but for the intent to deceive AWAC, or take advantage of AWAC's lack of knowledge concerning the falsity of SK Foods Group's representations, AWAC would not have agreed to issue the Excess Policy, or would have issued the Excess Policy on different terms and for a higher premium.

140. AWAC relied on the representations and warranties in agreeing to issue the Excess Policy on the terms and in the form it was to be issued, and, as an alternative remedy, AWAC seeks reformation of the Excess Policy by removing the excess coverage provided with respect to the following coverage provisions of the Primary Policy:

- Directors & Officers Liability Coverage Section, Insuring Agreement C;
- Directors & Officers Liability Coverage Section, Insuring Agreement D, as modified by Endorsement No. 6;
- Employment Practices Liability Coverage Section, in its entirety; and

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

31

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1              • Fiduciary Liability Coverage Section, in its entirety, with the exception of

2                 coverage for "non-Indemnifiable Loss," as that term is used in the Fiduciary

3                 Liability Coverage Section.

4      141.    Upon information and belief, AWAC alleges that the Defendants herein dispute

5 AWAC's right to have the Excess Policy reformed as set forth above. Therefore, an actual and

6 justiciable controversy exists between AWAC and Defendants regarding AWAC's entitlement to

7 reformation.

8                     **EIGHTH CAUSE OF ACTION**

9                  **(Breach of Warranty/Excess Policy –**

10                    **Against All Defendants)**

11     142.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1

12 through 141 of this Complaint as if fully set forth herein.

13     143.    It is AWAC's position that the Excess Policy was not effectively issued and

14 delivered due to SK Foods Group's failure to pay the requisite premium for the Excess Policy. In

15 the event that the relief sought in the Fifth Cause of Action asserted herein is not granted to

16 AWAC, and the Excess Policy is found to have been issued and delivered, AWAC seeks

17 alternative relief for breach of Warranty as set forth herein.

18     144.    As alleged above, the Excess Policy was to be issued "subject to all terms,

19 conditions, agreements and limitations of the Primary Policy," unless otherwise provided.

20 (Excess Policy Section II.F.1.) The Excess Policy also expressly follows the representation terms

21 of the Primary Policy. (Excess Policy Endorsement No. 3.)

22     145.    The representations made by Defendants in the St. Paul Application, the Primary

23 Warranty, the Warranty for Higher Limits, and the SK Foods Group's financial statements, all of

24 which were submitted in connection with the underwriting of the Primary and Excess Policies, are

25 part of the Application. Because the Application is expressly referred to in and made part of the

26 Primary Policy, the representations made by Defendants in the St. Paul Application, the Primary

27 Warranty, the Warranty for Higher Limits, and the SK Foods Group's financial statements, are

28 express warranties, as that term is used in California Insurance Code § 441.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    146.    These warranties were material to AWAC's acceptance of the risk.

2    147.    As alleged above, Defendants' answers to questions 6(a) and 6(g) in the St. Paul

3 Application were false, in that Defendants anticipated that SK Foods, RHM, and SAFF would

4 reorganize or sell more than 10% of their assets. In addition, representations in certain financial

5 statements submitted by Defendants to AWAC were inaccurate and unreliable.

6    148.    Further, as alleged above, Defendants' representation in the Primary Warranty and

7 the Warranty for Higher Limits, that "No **Insured** has knowledge … of any **Wrongful Act** of any

8 **Insured**, or any fact, circumstance or situation which (s)he reasonably believes might result in a

9 **claim** being made against any of the **Insureds**," was also false.

10    149.    Had AWAC known the truth about the financial condition of SK Foods Group,

11 that a reorganization and sale of substantially all of SK Foods', RHM's and SAFF's assets was

12 anticipated, and the potential that claims might be made against the Insureds as a result of the SK

13 Foods employee's criminal activity, it would not have agreed to issue the Excess Policy.

14    150.    By reason of the foregoing, pursuant to California Insurance Code Section 449,

15 Allied World is entitled to a judgment as against all Defendants that the breach of warranty

16 prevented the following provisions of the Primary Policy from attaching to the risk and that it is

17 therefore relieved of any liability or obligation to pay any amounts under these provisions:

18         • Directors & Officers Liability Coverage Section, Insuring Agreement C;

19         • Directors & Officers Liability Coverage Section, Insuring Agreement D, as

20           modified by Endorsement No. 6;

21         • Employment Practices Liability Coverage Section, in its entirety; and

22         • Fiduciary Liability Coverage Section, in its entirety, with the exception of

23           coverage for "non-**Indemnifiable Loss**," as that term is used in the Fiduciary

24           Liability Coverage Section.

25    151.    AWAC is further entitled to a declaration that Defendants are liable to AWAC for

26 any payments made by AWAC, including any future payments, to or on behalf of any Insureds

27 pursuant to AWAC's obligations under the Excess Policy.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    152.    Upon information and belief, AWAC alleges that the Defendants herein dispute

2    that a breach of warranty prevented the Excess Policy from attaching to the risk or that

3    Defendants are liable to AWAC for any amounts AWAC is obligated to pay under the Excess

4    Policy.  Therefore, an actual and justiciable controversy exists between AWAC and Defendants

5    regarding AWAC's entitlement to the relief sought herein due to Defendants breach of the

6    Warranty.

7                              **NINTH CAUSE OF ACTION**

8                          **(Declaratory Relief/Excess Policy –**
9                              **Against All Defendants)**

10    153.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1

11    through 152 of this Complaint as if fully set forth herein.

12    154.    It is AWAC's position that the Excess Policy was not effectively issued and

13    delivered due to SK Foods Group's failure to pay the requisite premium for the Excess Policy.  In

14    the event that the relief sought in the Fifth Cause of Action asserted herein is not granted to

15    AWAC, and the Excess Policy is found to have been issued and delivered, AWAC seeks the

16    alternative relief sought here.

17    155.    As alleged above, Defendants made material misrepresentations regarding the

18    financial condition of SK Foods Group and its constituent companies in connection with the

19    application for and underwriting of the Excess Policy, including: (1) falsely representing that

20    Defendants did not anticipate a reorganization of SK Foods, RHM, or SAFF; (2) falsely

21    representing that Defendants did not anticipate the sale of more than 10% of the assets of SK

22    Foods, RHM or SAFF; (3) the submission of inaccurate and unreliable financial statements; (4)

23    falsely representing that the financial health of SK Foods Group, including SK Foods, RHM, and

24    SAFF, was strong and that these entities were profitable in 2008; and (5) falsely representing that

25    the SK Foods Credit Facilities would be extended for the 2009 growing season.

26    156.    As described above, Defendants' representation in the Primary Warranty and the

27    Warranty for Higher Limits, that "No **Insured** has knowledge ... of any **Wrongful Act** of any

28

**Insured,** or any fact, circumstance or situation which (s)he reasonably believes might result in a **claim** being made against any of the **Insureds,**" was also false.

157. AWAC is informed and believes that Defendants made these misrepresentations either with knowledge of their falsity, or without reasonable grounds for believing them to be true, for the purpose of inducing AWAC to issue the Excess Policy on the terms and in the form it was issued.

158. AWAC was ignorant of the falsity of the above-referenced representations, and reasonably and justifiably relied upon the accuracy and truthfulness of those representations in agreeing to issue the Excess Policy. Had AWAC known the truth about SK Foods Group's financial health, AWAC would not have agreed to issue the Excess Policy.

159. Even absent these representations, Defendants were aware and were under an affirmative duty to disclose that SK Foods Group was experiencing significant financial difficulties, that SK Foods and RHM's lenders would not extend the SK Foods Credit Facilities, that SK Foods and RHM were in default on the SK Foods Credit Facilities, that SK Foods' and RHM's lenders issued a Notice of Default with respect to the SK Foods Credit Facilities, that SK Foods' and RHM's filing of Chapter 11 bankruptcy petitions were imminent and that SK Foods and RHM were actively seeking a purchaser of substantially all of their assets, that certain financial statements provided to AWAC were not accurate or reliable, and that an SK Foods employee had been charged with and pleaded guilty to selling tomato products with excessive mold content and falsely certifying required laboratory testing – all of which occurred prior to the intended inception of the Excess Policy. Defendants knew or reasonably should have known that such information would be material to the terms on which the Excess Policy was to be issued, and that AWAC had no means of ascertaining that information on its own. Yet, they did not disclose this information. Had Defendants disclosed this information, AWAC would not have agreed to issue the Excess Policy.

160. AWAC reasonably anticipates that claims under the Excess Policy (had it been effectively issued and delivered), and whether or not rescinded or reformed as prayed for in this complaint, may be made against Insureds and tendered to AWAC for coverage. Because AWAC

1   would not have agreed to issue the Excess Policy but for Defendants' misrepresentations

2   described above, any payments made by AWAC pursuant to its obligations under the Excess

3   Policy, if any, are damages which are the direct and proximate result of Defendants'

4   misrepresentations.

5       161.    Upon information and belief, AWAC alleges that the Defendants herein dispute

6   that any payments that will be made by AWAC pursuant to its obligations under the Excess

7   Policy, if any, are damages resulting from Defendants' misrepresentations.  Therefore, an actual

8   and justiciable controversy exists between AWAC and Defendants regarding Defendants' liability

9   for these payments.

10      162.    AWAC asks that the Court declare that Defendants are liable to AWAC for any

11  payments made by AWAC, including any future payments, to or on behalf of any Insureds

12  pursuant to any obligation AWAC may have under the Excess Policy.

### **PRAYER FOR RELIEF**

14  WHEREFORE, Plaintiffs pray for judgment, as follows:

### **FIRST CAUSE OF ACTION**

16      A.      Rescinding the following coverage provisions in the Primary Policy, and

17              declaring them void *ab initio* and of no legal force or effect whatsoever as to

18              all Defendants named herein: (1) Directors & Officers Liability Coverage

19              Section, Insuring Agreement C; (2) Directors & Officers Liability Coverage

20              Section, Insuring Agreement D, as modified by Endorsement No. 6; (3)

21              Employment Practices Liability Coverage Section, in its entirety; and (4)

22              Fiduciary Liability Coverage Section, in its entirety, with the exception of

23              coverage for "non-**Indemnifiable Loss**," as that term is used in the Fiduciary

24              Liability Coverage Section;

25      B.      Awarding costs of suit herein; and

26      C.      Awarding such other and further relief as this Court deems just and proper.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1

## SECOND CAUSE OF ACTION

2    A.    Reforming the Primary Policy to remove the following coverage provisions:

3          (1) Directors & Officers Liability Coverage Section, Insuring Agreement C;

4          (2) Directors & Officers Liability Coverage Section, Insuring Agreement D, as

5          modified by Endorsement No. 6; (3) Employment Practices Liability Coverage

6          Section, in its entirety; and (4) Fiduciary Liability Coverage Section, in its

7          entirety, with the exception of coverage for "non-**Indemnifiable Loss**," as that

8          term is used in the Fiduciary Liability Coverage Section;

9    B.    Awarding costs of suit herein; and

10    C.    Awarding such other and further relief as this Court deems just and proper.

11

## THIRD CAUSE OF ACTION

12    A.    Declaring the following provisions of the Primary Policy never attached to the

13          risk, and that Allied World is therefore relieved of any liability or obligation to

14          pay any amounts under these provisions: (1) Directors & Officers Liability

15          Coverage Section, Insuring Agreement C; (2) Directors & Officers Liability

16          Coverage Section, Insuring Agreement D, as modified by Endorsement No. 6;

17          (3) Employment Practices Liability Coverage Section, in its entirety; and (4)

18          Fiduciary Liability Coverage Section, in its entirety, with the exception of

19          coverage for "non-**Indemnifiable Loss**," as that term is used in the Fiduciary

20          Liability Coverage Section;

21    B.    Declaring that Defendants are liable to Allied World for any payments made

22          by Allied World, including any future payments, to or on behalf of any

23          Insureds pursuant to Allied World's obligations under the Primary Policy;

24    C.    Awarding prejudgment interest at the legal rate, according to proof;

25    D.    Awarding costs of suit herein; and

26    E.    Awarding such other and further relief as this Court deems just and proper.

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

## FOURTH CAUSE OF ACTION

A. A declaration that Defendants are liable to Allied World for any payments made by Allied World, including any future payments, to or on behalf of any Insureds pursuant to Allied Worlds' obligations under the Primary Policy;

B. Awarding prejudgment interest at the legal rate, according to proof;

C. Awarding costs of suit herein; and

D. Awarding such other and further relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION

A. A declaration that the Excess Policy was never effectively issued and delivered, that the Excess Policy is inoperative and of no legal force or effect, and that AWAC has no duties or obligations under the Excess;

B. Awarding costs of suit herein; and

C. Awarding such other and further relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION

A. Rescinding the Excess Policy and declaring it void *ab initio* as to all Defendants with respect to the following coverage provisions in the Primary Policy: (1) Directors & Officers Liability Coverage Section, Insuring Agreement C; (2) Directors & Officers Liability Coverage Section, Insuring Agreement D, as modified by Endorsement No. 6; (3) Employment Practices Liability Coverage Section, in its entirety; and (4) Fiduciary Liability Coverage Section, in its entirety, with the exception of coverage for "non-**Indemnifiable Loss**," as that term is used in the Fiduciary Liability Coverage Section;

B. Awarding costs of suit herein;

C. Awarding such other and further relief as this Court deems just and proper.

## SEVENTH CAUSE OF ACTION

A. Reforming the Excess Policy to remove the excess coverage provided with respect to the following coverage provisions of the Primary Policy: (1) Directors & Officers Liability Coverage Section, Insuring Agreement C; (2)

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

1    Directors & Officers Liability Coverage Section, Insuring Agreement D, as

2    modified by Endorsement No. 6; (3) Employment Practices Liability Coverage

3    Section, in its entirety; and (4) Fiduciary Liability Coverage Section, in its

4    entirety, with the exception of coverage for "non-**Indemnifiable Loss**," as that

5    term is used in the Fiduciary Liability Coverage Section;

6    B.    Awarding costs of suit herein; and

7    C.    Awarding such other and further relief as this Court deems just and proper.

8    **EIGHTH CAUSE OF ACTION**

9    A.    Declaring that under the Excess Policy, excess coverage with respect to the

10    following provisions of the Primary Policy never attached to the risk, and that

11    AWAC is therefore relieved of any liability or obligation to pay any amounts

12    under these provisions: (1) Directors & Officers Liability Coverage Section,

13    Insuring Agreement C; (2) Directors & Officers Liability Coverage Section,

14    Insuring Agreement D, as modified by Endorsement No. 6; (3) Employment

15    Practices Liability Coverage Section, in its entirety; and (4) Fiduciary Liability

16    Coverage Section, in its entirety, with the exception of coverage for "non-

17    **Indemnifiable Loss**," as that term is used in the Fiduciary Liability Coverage

18    Section;

19    B.    Declaring that Defendants are liable to AWAC for any payments made by

20    AWAC, including any future payments, to or on behalf of any Insureds

21    pursuant to AWAC's obligations, if any, under the Excess Policy;

22    C.    Awarding prejudgment interest at the legal rate, according to proof;

23    D.    Awarding costs of suit herein; and

24    E.    Awarding such other and further relief as this Court deems just and proper.

25    **NINTH CAUSE OF ACTION**

26    A.    A declaration that Defendants are liable to AWAC for any payments made by

27    AWAC, including any future payments, to or on behalf of any Insureds

28    pursuant to AWAC's obligations, if any, under the Excess Policy;

1       B.     Awarding prejudgment interest at the legal rate, according to proof;

2       C.     Awarding costs of suit herein; and

3       D.     Awarding such other and further relief as this Court deems just and proper.

4  Dated:       _____, 2010      Respectfully submitted,

5                                TROUTMAN SANDERS LLP

7                              By: _____

8                                  Terrence R. McInnis
                                  Kevin F. Kieffer

9                                  Peter R. Lucier
                                *Attorneys for Plaintiffs Allied World*

10                                *National Assurance Company and Allied*
                                *World Assurance Company (U.S.) Inc.*

## DEMAND FOR JURY TRIAL

Plaintiffs Allied World National Assurance Company and Allied World Assurance Company (U.S.) Inc. hereby demand a trial by jury as to all claims asserted herein as allowed by law.

Dated:       _____, 2010      Respectfully submitted,

TROUTMAN SANDERS LLP

By: _____
     Terrence R. McInnis
     Kevin F. Kieffer
     Peter R. Lucier
     *Attorneys for Plaintiffs Allied World*
     *National Assurance Company and Allied*
     *World Assurance Company (U.S.) Inc.*

# Exhibit 2



July 27, 2009

Kathryn N. Richter
Direct Dial 415-364-6742
Direct Fax 415-364-6785
E-mail krichter@schnader.com

**VIA ELECTRONIC MAIL**

Mark E. Smith, CPCU
Area Vice President
Arthur J. Gallagher & Co.
Insurance Brokers of California, Inc.
45 E. River Park Place West, Suite 408
Fresno, CA 93720

Allied World National Assurance Company
ATTN: Professional Liability Underwriting
199 Water ST
New York, NY 10038

**Re:** In re SK Foods, LP and RHM/Colusa Canning
     Allied World National D&O Policy #SC0051081/001A
     Allied World National D&O Policy # C011427
     Continental Casualty Company, Policy # 287368096
     Allied World Assurance Policy # C011818
     National Union Fire Insurance Co Policy # 01-766-57-95

Dear Mr. Smith and Representatives of Allied World National Assurance Company:

As you know, we are counsel to Bradley Sharp, the Chapter 11 Trustee appointed by the Court in the Chapter 11 proceedings pending as to SK Foods LP and RHM Industrial/ Specialty Foods, dba, Colusa Canning Co. (collectively "Debtors.") You have kindly agreed to accept all tenders made by Mr. Sharp under the above policies on behalf of the insureds and to forward same to the appropriate carriers as broker for SK Foods and RHM/Colusa Canning and related entities. We appreciate and rely on your assistance in this regard.

As you are likely aware, a Trustee in Bankruptcy stands in the shoes of the insured for purposes of insurance coverage, although coverage is interpreted as broader vis-à-vis the Insured vs.


Insured provisions. We note that there is also an express exception to the "Insured v. Insured" exclusion for claims asserted by a bankruptcy trustee, at ¶3(i)(vi) of the Allied World National policy D&O section. In this regard, claims within the meaning of the policy definitions have been asserted by the Trustee against companies and individuals insured under the above policies. On or about June 12, 2009, the Trustee filed an adversary Complaint in the United States Bankruptcy Court for the Eastern District of California captioned Sharp v. Blackstone Ranch Corp., No. 09-29162, a copy of which is enclosed. Defendants are the Salyer-Related entities/subsidiary companies (as listed on the policy endorsements identifying subsidiary and related companies covered under the policies) and certain individuals; other individuals are identified in the Complaint. The individuals include Directors, Officers, Executives or Employees of Insured companies. The Complaint sets forth the wrongful conduct of the Insureds and seeks injunctive and declaratory relief as more specifically set forth in the Complaint. There is coverage for this claim under the D&O coverage provisions of the above policies.

As the sale and transfer of the majority of the assets of the Debtors has been concluded, the Trustee has had an opportunity to begin the process of evaluating further claims to be made on behalf of the Debtor Estates. While it is early in that process, we take this opportunity to provide notice of circumstances under the above policies, in that the Trustee will be asserting additional claims against the Insureds. Said claims shall be based upon wrongful acts of the insureds resulting in loss to the Debtors' Estates. In addition to the matters stated and asserted in the Complaint, the Trustee believes that there are additional wrongful acts, breaches of duty, breaches of trust, acts, errors, omissions, neglect, misstatements and/or misleading statements that have occurred within the Debtors and other subsidiary insured entities, resulting in damage and loss to the Debtor Estates. It is believed that these wrongful acts and/or omissions were committed or omitted by Scott Salyer and other of the Insureds' Directors, Officers, Executives and/or Employees, including but not limited to Mark McCormick, Richard Lawrence, Eric Schwartz, Alan Huey, Scott Grewal, and within the scope of their duties on behalf of the insured(s).

The Trustee asserts that Scott Salyer, Mark McCormick, Richard Lawrence, Eric Schwartz, Alan Huey, Scott Grewal, and others acting in their respective capacities as the Insureds' Directors, Officers, Executives and/or Employees, have acted wrongfully in directing the course of action taken by the Debtors and/or the subsidiary companies/additional insureds, resulting in damage and loss to the Debtors' estates. The Trustee is continuing in his investigation to determine the specific acts, loss and damage, but asserts that it includes, but is not limited to: transferring cash, assets, liabilities, from one entity to another; failing to respect the integrity and separateness of the entities; failing to act at arm's length; failing to properly capitalize the entities; allowing improperly supported/improperly documented intercompany transfers; exercising dominion and control over the entities; intermingling of the entities assets and resources; acting as the Directors, Officers, Executives of multiple of the insured entities although the interests of the entities have not always been aligned, resulting in conflicts of interest; improperly conveying the assets of certain of the Debtors and/or insured entities to others of the insured entities; directing the sale of the Wastewater Discharge real estate parcels; surrendering the Debtors' opportunity to



acquire the Wastewater Discharge parcels to allow another of the insured entities to make the acquisition; failing to make payments under certain contractual obligations lease agreements and technology leases including the Microsoft financing agreement; failing to repay Debtors for certain "pre-pays" and then changing the character of said "pre-pay" to a different character; improperly charging the Debtors for certain personal expense items and/or improperly authorizing reimbursements for certain personal expenses; improperly authorizing both pre-petition and post-petition transfers of assets of the Debtors' estates.

Please forward this letter to the appropriate individuals at the insurance companies as the Trustee's tender and notice of the above claims and/or circumstances under the above policies. Do not hesitate to call should you have questions.

Best regards,

Kathryn N. Richter

KNR