

Case 09-29162   Filed 06/01/10   Doc 1818

FILED

JUN - 1 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

***POSTED ON WEBSITE***
***NOT FOR PUBLICATION***

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SK FOODS, L.P.,<br><br>           Debtor. | Case No. 09-29162-D-11<br><br>Docket Control No. MSS-4<br><br>Date:  May 26, 2010<br>Time:  10:00 a.m.<br>Dept:  D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM DECISION

On April 28, 2010, the defendants in six adversary proceedings filed by the chapter 11 trustee in this case, Bradley Sharp, filed a motion to stay the adversary proceedings pending completion of the criminal action against Scott Salyer now pending in the district court for this district. Companion motions were filed in each of the adversary proceedings -- Adv. Nos. 09-2692, 10-2014, 10-2015, 10-2016, 10-2017, and 09-2543; the court's rulings on those motions will mirror this decision. For the reasons set forth below, the court will deny the motion.

### I. THE MOVING PARTIES' CONTENTIONS

The moving parties contend that prosecution of the adversary proceedings while the criminal case is pending would jeopardize

Salyer's Fifth Amendment right against self-incrimination, that the moving parties, as defendants in the adversary proceedings, would be deprived of evidence that might be supplied by Salyer and others who are "effectively unavailable as witnesses because of their status as defendants" in related criminal cases or as cooperating government witnesses in the case against Salyer, and that forcing the moving parties to defend themselves without that evidence would deprive them of due process. The moving parties make short shrift of countervailing considerations, which are, however, analyzed in the oppositions filed by the trustee and the unsecured creditors' committee.

## II. ANALYSIS

"The Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings." Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995), citing Federal Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989). However, "a court may decide in its discretion to stay civil proceedings . . . 'when the interests of justice seem[] to require such action.'" Keating, 45 F.3d at 324, citing SEC v. Dresser Industries, Inc., 628 F.2d 1368, 1375 (D.C. Cir. 1980). The determination is to be made "'in light of the particular circumstances and competing interests involved in the case.'" Keating, 45 F.3d at 324, citing Molinaro, 889 F.2d at 902. The factors to be considered include "the extent to which the defendant's fifth amendment rights are implicated" and the following:

> (1) the interest of the plaintiffs in proceeding expeditiously with [the civil] litigation or any particular aspect of it, and the potential prejudice to

```
     plaintiffs of a delay; (2) the burden which any
     particular aspect of the proceedings may impose on
     defendants; (3) the convenience of the court in the
     management of its cases, and the efficient use of
     judicial resources; (4) the interests of persons not
     parties to the civil litigation; and (5) the interest
     of the public in the pending civil and criminal
     litigation.
```

Keating, 45 F.3d at 324-25, citing Molinaro, 889 F.2d at 902-03.

Generally, the strongest case for a stay is made where the civil and criminal cases involve the same subject matter. Dresser Industries, 628 F.2d at 1375-76. In such situations, "[t]he noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of [federal discovery rules], expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." Id. Thus, the court looks first to whether the civil and criminal actions "spring from the same nucleus of facts" such that resolution of the former will likely implicate many of the factual issues in the latter. See Cont'l Ins. Co. v. Cota, 2008 U.S. Dist. LEXIS 111050, at *8-9 (N.D. Cal. 2008).

The court has reviewed the indictment and superseding indictment against Salyer, the informations against other individuals, and the plea and cooperation agreements filed as exhibits. The court concludes that, with one minor exception, the factual allegations in the adversary proceedings bear no significant relationship to the allegations in the indictment. In fact, in four of the adversary proceedings -- Nos. 09-2543 (the drum line), 09-2692 (quiet title), 10-2016 (preferences and fraudulent transfers), and 10-2017 (money loaned to the Fred

- 3 -

Salyer Irrevocable Trust), there is no factual commonality whatsoever with the indictment against Salyer or the charges against the other individuals.

The moving parties rely on the appearance of the term "enterprise" in certain of the adversary complaints, contending that that enterprise is the same one referenced in the indictment. Even if it is, however, the premise of the indictment is that the enterprise committed mail fraud, wire fraud, and bribery with respect to the prices charged and quality of product sold to its customers, whereas the adversary complaints allege inter-company transfers among the Salyer entities themselves, commingling of assets, common ownership, management, and control, intermingling of business operations and activities, and so on. The adversary complaints touch on the issues of prices charged and product sold to customers only peripherally, if at all. Similarly, the indictment does not concern in any meaningful way the relationships among the Salyer entities. Thus, the court finds that the allegations in the indictment and those in the adversary proceedings are not substantially similar, that similar evidence is not likely to be presented in both to any great degree, and that any similarities that do exist do not significantly implicate Salyer's Fifth Amendment rights.

The moving parties contend they will need testimony of Salyer and others involved in the criminal proceedings, including Alan Huey and Steven King, in order to prepare their defenses. However, in the examples cited, it appears the testimony needed for the adversary proceedings will bear no relationship to the

allegations charged in the indictments and/or informations against these individuals. For example, the complaint in Adv. No. 09-2543 concerns the drum line, but there is no mention in the indictment of the transactions or activities concerning the drum line. Thus, although Salyer has invoked the Fifth Amendment in that adversary proceeding, the court does not foresee any testimony he might give, and the moving parties cite none, that would legitimately be subject to Salyer's Fifth Amendment rights. Similarly, there is no commonality whatsoever between the criminal informations against Steven King and Alan Huey, on the one hand, and the complaints in Adv. Nos. 09-2692 and 10-2017, in which the moving parties expect them to testify, on the other hand. Thus, the court would not reasonably expect either to have any Fifth Amendment concerns about testifying in the adversary proceedings.

As the trustee acknowledges, his complaint in Adv. No. 10-2015 touches on the allegations of the indictment, but the overwhelming majority of the allegations in the complaint are on other subjects. To whatever limited extent there is an overlap, there are alternatives to a stay that may be invoked to protect Salyer's rights and the moving parties' ability to defend themselves, including the right to invoke the Fifth Amendment on a question by question basis, the right to seek protective orders, and the parties' ability to provide discovery that does not incriminate the criminal defendants. See O. Thronas v. Blake, 2010 U.S. Dist. LEXIS 22101, at *8 (D. Haw. 2010). In any event, the Fifth Amendment cannot be used as a blanket assertion but only on a question by question basis. Garcia-Quintero v.

Gonzales, 455 F.3d 1006, 1019 (9th Cir. 2006), citing <u>Doe ex rel. Rudy-Glanzer v. Glanzer</u>, 232 F.3d 1258, 1263 (9th Cir. 2000).)

In short, the court concludes that the adversary proceedings do not significantly infringe on Salyer's or others' Fifth Amendment rights, do not raise a meaningful risk of premature disclosure of evidence, strategy, or defenses to the government, and do not raise a risk that the trustee would gain an unfair advantage by asking the court to draw adverse inferences based on the assertion of Fifth Amendment rights.

> A defendant has no absolute right not be to forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.

<u>Keating</u>, 45 F.3d at 326, citing <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 318 (1976).

In light of the foregoing, it is probably unnecessary to address the remaining <u>Keating</u> factors; however, the court will do so in the interest of completeness. First, the interest of the trustee and creditors in a speedy resolution of the adversary proceedings is of prime importance in this case. The trustee has sold the business operations of the debtor, and the adversary proceedings represent the majority of the work remaining to be done in the case, so that a stay of those proceedings would bring the chapter 11 case, or alternatively, consummation of any confirmed plan, to a virtual standstill, while the estate would continue to incur substantial administrative expenses to the detriment of creditors.

The presence of creditors in this case, who have filed 349 claims and who would be the ultimate beneficiaries of any recovery in the adversary proceedings, distinguishes this case from the others in which the district and state courts have stayed proceedings involving Salyer. If the trustee is successful in getting one or more of the defendant entities substantively consolidated with the debtor, the interests of the creditors of those entities will also be impacted.

There are numerous cases in which bankruptcy courts have denied requests for a stay by defendants in adversary proceedings who were also under criminal indictment. These courts emphasize the interests of creditors and the public in the "efficient, economical, and prompt administration of the bankruptcy estate," see Ries v. Paige (In re Paige), 2008 Bankr. LEXIS 816, at *6 (Bankr. N.D. Tex. 2008), and the resulting interest in the expeditious resolution of adversary proceedings so the trustee may make a prompt distribution to creditors. See Forman v. Otlowski (In re NJ Affordable Homes Corp.), 2007 Bankr. LEXIS 1000, at *18, 19 (Bankr. N.J. 2007); Miranda v. Vidal (In re Romany), 2006 Bankr. LEXIS 4273, at *10 (Bankr. D. Puerto Rico 2006); Carroll v. Unicom AP Chem. Corp. (In re MGL Corp.), 262 B.R. 324, 330 (Bankr. E.D. Pa. 2001); Kozyak v. Poindexter (In re Financial Federated Title & Trust, Inc.), 252 B.R. 834, 839 (Bankr. S.D. Fla. 2000); Mendelsohn v. Gordon (In re Who's Who Worldwide Registry), 197 B.R. 193, 197 (Bankr. E.D.N.Y. 1996).

The moving parties do not indicate when a trial in the criminal case might be set; they do state, however, that the case is complex and that the government has indicated it has well over

one million documents and nearly two hundred hours of tape recordings. The indictment was filed only three months ago and a superseding indictment was filed April 29, 2010, in which five counts of price fixing were added. It is reasonable to conclude that the trial will be months, quite possibly years, away. That Salyer's preparation for such a complex trial may interfere with his ability to assist in the defense of the adversary proceedings weighs in favor of a stay to some extent, but the almost certain long delay weighs heavily against. See Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 864 (9th Cir. 1979) ["A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court."]; O. Thronas v. Blake, 2010 U.S. Dist. LEXIS 22101, at *8 (D. Haw. 2010) [that the criminal case might not be resolved for years weighed against imposition of a stay]; Ebay, Inc. v. Digital Point Solutions, Inc., 2010 U.S. Dist. LEXIS 23253, at *17 (N.D. Cal. 2010) ["The fact that the time line for a criminal action is unclear strengthens eBay's argument that indefinite delay will harm its financial interests, and that Defendants may use the same funds that they allegedly obtained by fraud to support their defense."].

The court agrees with the trustee that the longer the adversary proceedings are delayed, the less likely it is the trustee will be able to recover the assets he seeks. Obviously, creditors would be severely prejudiced if assets available for recovery were dissipated during the pendency of a stay. This was a significant factor in Molinaro, in which the defendant was

attempting to dispose of his assets. Molinaro, 889 F.2d at 903. The court considered that the plaintiff, the Federal Savings & Loan Insurance Corporation, was acting in a representative capacity on behalf of non-parties -- the depositors in the defendant's savings and loan, whose interests would be prejudiced by delay. Id. The defendant's "history of hiding and attempting to dispose of his assets" was a prime factor in the court's decision to deny a stay in FTC v. J.K. Publ'ns, Inc., 99 F. Supp. 2d 1176 (C.D. Cal. 2000), an action brought by the Federal Trade Commission on behalf of thousands of defrauded credit card holders and banks. 99 F. Supp. 2d at 1197.

In the present case, the court has already been sufficiently persuaded of a similar risk of dissipation of assets to issue a preliminary injunction against the defendants in the adversary proceedings, who are the moving parties in this motion, from transferring assets previously transferred to them by or through the debtor. The moving parties now argue that the injunction would protect the trustee and creditors from any risk of further dissipation of assets during the pendency of a stay. The court concludes to the contrary -- the findings and conclusions upon which the injunction is based persuade the court that a real risk continues to exist.

The court notes that the trustee, the unsecured creditors' committee, and the Bank of Montreal, as agent for the secured creditors, have now proposed a joint plan of liquidation, and have set a hearing for consideration of their accompanying disclosure statement for June 9, 2010. The compromises necessary to enable a joint plan to be proposed are often fragile; it would

almost certainly be to the detriment of creditors if that process were jeopardized by delays in the adversary proceedings.

Next, the interests of convenience to the court and the efficient use of judicial resources do not favor the moving parties. Because the court finds, as discussed above, a lack of similarity between the adversary proceedings and the criminal cases, the court rejects the suggestion that a stay "would help to avoid duplicative judicial efforts," and might streamline discovery in the adversary proceedings. A timely resolution of the adversary proceedings is more likely to serve the interests of the court in moving along the cases on its docket and the efficient use of judicial resources.

Finally, the court considers whether the interests of the public would be served by staying the adversary proceedings. The court recognizes the public's interest in the integrity of criminal cases, see Taylor, Bean & Whitaker Mortg. Corp. v. Triduanum, 2009 U.S. Dist. LEXIS 60849, at *10 (E.D. Cal. 2009); however, the government has not sought to intervene in this case for the purpose of advancing that interest. See Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Supp. 2d 6 (D. Conn. 2002). Further, that interest is far outweighed in this case by the public's countervailing interests in 'ensuring that aggrieved persons are made whole as rapidly as possible[,]'" see Ebay, Inc., 2010 U.S. Dist. LEXIS 23253, at *18-19, and by the public's interest in the prompt resolution of civil cases. See Melendres v. Maricopa County, 2009 U.S. Dist. LEXIS 75364, at *16-17 (D. Ariz. 2009).

**III. CONCLUSION**

A balancing of the interests of the moving parties, the plaintiff, the creditors, the court, and the public in this case leads to the conclusion that the adversary proceedings should not be stayed.

For the reasons set forth above, the motion will be denied. The court will issue an appropriate order.

Dated: June 1, 2010

*Robert Bardwil*
ROBERT S. BARDWIL
United States Bankruptcy Judge

Case 09-29162     Filed 06/01/10     Doc 1818

# CERTIFICATE OF MAILING

I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Gregory Nuti
Kevin Coleman
Schnader Harrison Segal & Lewis
One Montgomery Street, Suite 2200
San Francisco, CA 94104- 5501

Jamie Dreher
Downey Brand, LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731

Donald Putterman
Kasowitz, Benson, Torres & Friedman
101 California Street, Suite 2050
San Francisco, CA 94111

James Mayo
Segal & Kirby, LLP
770 L Street, 1440
Sacramento, CA 95814

Andrea Miller
Nageley Meredith & Miller
8001 Folsom Blvd., Suite 100
Sacramento, CA 95826

Paul Pascuzzi
Felderstein Fitzgerald
   Willoughby & Pascuzzi
400 Capitol Mall, Suite 1450
Sacramento, CA 95814

Bank of Montreal
c/o James Spiotto
Chapman and Cutler
111 W Monroe Street
Chicago, IL 60603

DATE: June 1, 2010

_____
Deputy Clerk