FILED
June 09, 2010
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0002693778

**10 PAGES**
Gregory C. Nuti (CSBN 151754)
Kevin W. Coleman (CSBN 168538)
Kathryn N. Richter (CSBN 100129)
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785
gnuti@schnader.com
kcoleman@schnader.com
krichter@schnader.com

Attorneys for Bradley D. Sharp,
Chapter 11 Trustee

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>SK FOODS, L.P., a California limited partnership,<br><br>        Debtor. | Case No. 09-29162-D-11<br><br>Chapter 11<br><br>DC No. TRM-1 |
| In re :<br><br>RHM INDUSTRIAL/SPECIALTY FOODS, INC., a California Corporation, d/b/a Colusa County Canning Co.,<br><br>        Debtor. | Case No. 09-29161-D-11<br><br>Chapter 11<br><br>DC No. TRM-1<br><br>**CHAPTER 11 TRUSTEE'S OBJECTION TO MOTION OF ALLIED WORLD NATIONAL ASSURANCE COMPANY AND ALLIED WORLD ASSURANCE COMPANY (U.S.) FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Date: June 23, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom 34<br>        501 I Street, 6th Floor<br>        Sacramento, CA<br>Judge: Hon. Robert S. Bardwil |

Bradley D. Sharp (the "Trustee"), the duly appointed and acting chapter 11 trustee for SK Foods, L.P., a California limited partnership ("SK Foods"), and RHM Industrial/Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co. ("RHM" and collectively with SK Foods, the "Debtors"), herby submits this Objection to the Motion of Allied World National Assurance Company and Allied World Assurance Company (U.S.) for Relief from the Automatic Stay [Docket No. 1784] (the "Motion"), and in support thereof, states as follows:

## BACKGROUND

1. On May 5, 2009 (the "Petition Date"), involuntary bankruptcy petitions were filed against Debtors SK Foods and RHM. Thereafter, on May 7, 2009, the Debtors filed a voluntary petition for relief (the "Bankruptcy Case") under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, et. seq. (the "Bankruptcy Code").

2. On May 18, 2009, the Trustee was appointed the chapter 11 trustee in the Bankruptcy Case and presently serves in that capacity. On June 18, 2009, this Court ordered the involuntary cases each be substantively consolidated with this Case No. 09-29161 and Case No. 09-09162, respectively, and set forth that the petition dates for each of the consolidated cases shall be May 5, 2009, with the date of the order of relief as May 7, 2009.

3. On May 12, 2010, the Trustee, the Official Committee of Unsecured Creditors (the "Committee"), and the Bank of Montreal, as agent for the Debtors' prepetition secured lenders, filed their proposed Joint Chapter 11 Plan of Liquidation (the "Plan") and Disclosure Statement. A hearing on the Motion to Approve the Disclosure Statement is currently scheduled for June 23, 2010.

4. The Debtors purchased certain "claims made" directors and officers and employment practices insurance policies from Allied World National Assurance Company ("Allied World") and Allied World Assurance Company (U.S.) Inc. ("AWAC" and together with Allied World, "Allied"). Specifically, Allied World issued For Private Companies Policy No. CO11427/001 to S.K. Foods PM Corp. for the February 19, 2009 to February 19, 2010 Policy Period (the "Primary Policy"). In addition, AWAC issued Excess Directors & Officers Liability

OBJECTION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY
-2-

PHDATA 3303291_1

Insurance Following Form Policy No. CO 11818/00 1 to S.K. Foods PM Corp. for the April 8, 2009 to February 19, 2010 Policy Period (the "Excess Policy") and together with the Primary Policy, the "Policies"). The Debtors are named insureds under these Policies.

5. Allied is now seeking relief from the automatic stay to commence litigation (the "Rescission Action") related to the Policies in a non-bankruptcy forum against the Debtors, other insureds, and two former officers of the Debtors.

## ARGUMENT

6. The automatic stay is one of the fundamental protections afforded to debtors under the Bankruptcy Code. *See Midatlantic Nat'l Bank v. New Jersey Dep't of Envt'l Protection*, 474 U.S. 494, 503 (1986). The automatic stay provisions operate primarily to "stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and his creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *Taylor v. Slick*, 178 F.3d 698, 702 (3d Cir. 1999) (citation omitted); *see also Benedor Corp. v. Conejo Enterprises, Inc. (In re Conejo Enterprises, Inc.)*, 96 F.3d 346, 351-52 (9th Cir. 1996).[1]

7. One key objective of the automatic stay is to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it, and in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor. *In re Rexene Prods. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

8. Allied requests relief from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code, which provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . .

---

[1] The automatic stay broadly extends to all matters that may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtors have the opportunity to rehabilitate and reorganize their operations. *See e.g., In re S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987) (stating that the automatic stay "imposes a moratorium on all actions against the debtor or its property and assets" and thereby "ensures a respite for the debtor so that it may attempt to reorganize or decide to liquidate and promotes the overriding bankruptcy policy of equal distribution of a debtor's assets among creditors").

(1) for cause." The Bankruptcy Code does not define "cause" for purposes of section 362(d)(1). Whether "cause" exists is committed to the sound discretion of the Bankruptcy Court and is determined on a case-by-case basis." *See Conejo Enterprises*, 96 F.3d at 352; *see also Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990); *Santa Clara County Fair Ass'n v. Sanders (In re Santa Clara County Fair Ass'n)*, 180 B.R. 564 (B.A.P. 9th Cir. 1995). "Exercising discretion in determining cause for stay relief requires the balancing of hardships and consideration of the totality of the circumstances." *In re Avila*, 311 B.R. 81, 83-84 (Bankr. N.D. Cal. 2004).

9. To obtain relief from the automatic stay, the party seeking relief must first establish a prima facie case that "cause" exists for relief under section 362(d)(1). *Truebro, Inc. v. Plumberex Specialty Prods., Inc. (In re Plumberex Specialty Prods., Inc.)*, 311 B.R. 551, 557 (Bankr. C.D. Cal. 2004). If the movant establishes a prima facie case, the burden shifts to the debtor to show that relief from the automatic stay is unwarranted. *Id.* "If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied." *Id.* Because Allied has failed to establish cause, the Court should deny the Motion.

### A. The Stay Is Not Prejudicing Allied's Interests In Any Meaningful Way

10. To the best of the Trustee's knowledge, no proceeding is pending under which Allied could be compelled to cover any claim made under the Policies. Allied admits in ¶63 of its draft rescission complaint that it denied coverage in the *Estrada* action and fully reserved its rights. *See* Rescission Complaint at ¶63. While it is true that the Trustee put Allied on notice last July of the estate's possible claims (in order to preserve the estates' rights to tender claims after the policies terminated), Allied has denied coverage. Since then, the estate has not taken any affirmative action to force Allied to honor the Policies and/or pay any claims. Nor is the Trustee aware (and Allied has not shown) that any other insured or claimant under the Policies has commenced an action to compel Allied to honor its obligations thereunder. Moreover, Allied is not, as far as the Trustee can tell, paying for the defense of any claim that may be covered under the Policies. And finally, Allied is not at imminent risk of losing its rights to pursue a rescission action against any of the non-debtor parties as the limitations period for its proposed

OBJECTION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY
-4-
PHDATA 3303291.1

Rescission Action is four years. *See* Cal. Civ. Proc. Code § 337.

11. In short, Allied has not shown that its coverage declinations are not sufficient to protect it from having to pay claims under the Policies, it has not shown that it will be subjected to any liabilities (such as advancing defense costs), or that its interests will otherwise be prejudiced if the stay remains in effect.

B. **Lifting The Stay Will Prejudice The Estate**

12. Allied contends that the "Debtors will not be prejudiced by the litigation of the Rescission Action in a non-bankruptcy forum." (Motion, p. 8 at 1-2).[2] This characterization is simply inaccurate. As noted above, one purpose of the stay is to prevent the estate's assets from being depleted by having to expend resources defending claims made against it. *Rexene Prods. Co.*, 141 B.R. at 576. This consideration is particularly applicable in this case.

13. Allied's asserted basis for rescinding the Policies is intensely factual in nature over which there is likely to be a significant dispute. (For example, when, exactly, did Gallagher & Co. provide the financial statements to Allied, and had SK Foods been informed by its auditors that such information was unreliable and required restatement by that time? What, exactly, did Lisa Crist and Mark McCormick say to Allied's representatives at the January 30, 2009 meeting, and did they know that the Bank Group would not extend the line of credit?) But whatever the merits of Allied's claims that it was fraudulently induced to issue the Policies, lifting the stay will force the estate to incur significant attorneys fees to preserve the estate's rights under the Policies *before* it is clear that the estate will be benefitted from this expenditure of funds.

14. At this juncture, the Trustee has named only one individual, Scott Salyer, in a breach of fiduciary duty lawsuit that would fall within the Policies' insuring clauses. The proposed Plan contemplates assignment of the breach of fiduciary duty claims against Salyer, and potential claims against other officers of certain insureds to the Bank Group. *See* Joint Plan of Liquidation (dated May 12, 2010) at Art. 4.1[2] [Doc. No. 1714] The Plan also contemplates

---

[2] The Plan proposes to assign "Independent Claims and Causes of Action" to the Bank Group, which is defined to include the breach of fiduciary duty action against Salyer, and
...*Continued*

OBJECTION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY
-5-

PHDATA 3303291_1

that the Liquidating Trust will have to reimburse the Bank Group if more than certain amounts of the Banks' cash collateral is used. *See* Plan at Art. 5.2, 5.3, and 10.2. Thus, if the stay is lifted now, the estate and/or the liquidating trust may incur costs that wind up benefitting the Bank Group alone.

15. Moreover, to the extent the estate and/or liquidating trust retains claims against other former officers or directors besides Salyer, no litigation is pending seeking to liquidate those claims. It is certainly possible that further fact investigation will cause the Trustee to assert claims against other officers or directors, but no decision has been made at this time to do so. Finally, certain claims (such as the complaint that Salyer converted SK Foods' corporate opportunities and violated his fiduciary obligations by transferring the wastewater land to affiliates) may be resolved in a manner that does not require tender of a claim under the insurance policy – i.e., because title to that land is quieted in favor of the Trustee. In other words, granting relief from stay at this juncture will force the estate to expend significant sums defending the estate's rights in the Policies before it is clear that the Policies would in fact be a source of recovery for creditors.

16. Similarly, it should be noted that the Third, Fourth, and Eighth causes of action in Allied's draft Rescission Complaint seek a declaration that SK Foods and the would-be co-defendants are liable to Allied for any payments it may make under the Policies. *See* Rescission Complaint at 37:11-38:7; at 39:8-24. In other words, Allied is seeking relief from stay to liquidate a *pre*-petition claim against the estate. In light of the fact that a trustee has a duty to object to claims only when a purpose would be served, 11 U.S.C. § 704(a)(5), the Trustee (or the trustee of the liquidating trust), may elect not to object to any claim in light of the size of the filed claim, the size of the claims pool, and the amount of assets available for distribution. Granting relief from stay now will force the estate to incur substantial fees and costs without knowing whether such an expenditure of funds to defend against the claim is warranted.

---

*Continued from previous page*
    any other officer or director of the Debtors' general or limited partners. *See* Plan at Art. 1.51 and 1.71.

OBJECTION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY
- 6 -

PHDATA 3303291.1

## C. The Balance of Hardships Favors The Estate

17. The balance of the hardships tips in favor of the Debtors' estates. If the Court grants stay relief, the Debtors estates would be required to participate in significant federal or state court litigation at a critical juncture in these Bankruptcy Cases but without knowing if an expenditure of those funds is justified in light of any recovery the estate could obtain from the Policies, or the size of any potential unsecured claim Allied may be able to assert. On the other hand, Allied does not appear to be facing the prospect of paying any claims under the Policies in the near term since it has denied coverage for all claims made under the Policies, and – to the best of the Trustee's knowledge – no insured or claimant has filed a legal action challenging the denial of coverage. Although Allied may desire a "speedy resolution of their claims" (Motion, p. 7 at 23), any burden on Allied resulting from a delay in bringing a rescission action against the Debtors is clearly outweighed by the burden on the Debtors' preparation and participation in a trial. *See In re Comdisco*, 271 B.R. 273, 277 (Bankr. N.D. Ill. 2002) (noting that "[t]he automatic stay almost always delays litigants. That, after all, is its purpose, and the reason they call it a 'stay.'").

18. Accordingly, the balance of the hardships tips in favor of the Debtors. The Trustee submits that the stay should remain in effect until such time as the Trustee, any successor or assignee under the Plan, or another insured commences an action against Allied for wrongful denial of coverage under the Policies. Until then, a proceeding seeking a declaration of its rights to rescind is merely academic.

## D. Granting Relief From Stay Will Not Promote Judicial Economy

14. Allied's Rescission Action has not yet been filed, and as such, there is no currently pending litigation. Should an insured or claimant file an action seeking to compel Allied's performance under the Policies, this Court is nonetheless equipped to address any issues of California state law which may arise. Additionally, this Court is already familiar with the parties and the factual core of the case, including the adversary proceedings the Trustee has commenced against other insureds that could spawn claims that are covered under the Primary and Excess Insurance Policies. As such, judicial economy would be promoted by the same court

deciding the underlying insured v. insured claims and also deciding any related coverage disputes.

15. The Ninth Circuit has held that a debtor's insurance policies are property of the estate. *Minoco Group of Cos., Ltd. v. First State Underwriters Agency of New Eng. Reins. Corp. (In re The Minoco Group of Cos., Ltd.)*, 799 F.2d 517, 519 (9th Cir. 1986); *see also Groshong v. Sapp (In re Mila, Inc.)*, 423 B.R. 537, 543 (9th Cir. BAP 2010). Indeed, a "liability policy of the debtor . . . is a valuable property of the debtor [and] . . . may well be the most important asset of the estate." *Asbestosis Claimants v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re Prudential Lines, Inc.)*, 170 B.R. 222 (S.D.N.Y. 1994), *rev'd on other grounds*, 533 F.3d 151 (2d. Cir. 2008) (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986)).

16. Additionally, while the case law is not uniform, several courts have found that insurance coverage disputes are "core" proceedings under 28 U.S.C. § 157(b). *See Green v. Mass. Casualty Ins. Co.*, 269 B.R. 782, 787 (N.D. Ill. 2001) (noting that the validity of insurance policies is directly related to the debt discharge and is therefore properly considered a core proceeding); *see also Valley Forge Plaza Assocs. v. Fireman's Fund Ins. Cos.*, 107 B.R. 514, 518 (E.D. Pa. 1989) (holding that "preservation of an insurance contract is a matter concerning the administration of the estate within the meaning of § 157(b)(2)(A)" and therefore "is a core proceeding"); *In re Heaven Sent, Ltd.*, 50 B.R. 636, 638 (Bankr. E.D. Pa. 1985) (holding that "the question of preservation of insurance in a chapter 11 proceeding is directly related to the administration of the estate under § 157(b)(2)(A), thus giving us jurisdiction to enter a final order on the action before us"); *Prudential Lines*, 170 B.R. at 231 ("because of the significance insurance coverage issues often have in a bankruptcy proceeding it is proper under certain circumstances for a bankruptcy court to adjudicate such matters"); *Home Ins. Co.*, 889 F.2d 746, 748 (7th Cir. 1989), *vacated on other grounds*, 963 F.2d 1023 (7th Cir. 1992) (holding that a "policy of insurance is an asset of the estate, and a request to determine its validity with respect to the debtor is a 'core proceeding' over which a bankruptcy judge has jurisdiction." As here, *Home Ins. Co.* involved an action to determine whether an insurance policy was void because it was issued on the basis of alleged false statements.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785

17. Even if the insurance coverage dispute at issue here was deemed to be "non-core," this Court is still the appropriate forum for an action against the Debtors. Allied argues that judicial efficiency will be promoted by trying their proposed Rescission Action in a non-bankruptcy forum because the Bankruptcy Court does not have authority to enter a final judgment resolving the insurance dispute, and that such judgment may only be entered by the district court. (Motion, p. 7 at 15-17). However, "'the exception would swallow the rule' because judicial economy and efficiency would then never be promoted when a bankruptcy court hears a non-core issue." *Ha-Lo- Indus., Inc. v. Fed. Ins. Co. (In re Ha 2003, Inc.)*, 2004 U.S. Dist. LEXIS 4674, *8 (N.D. Ill. 2004) (citation omitted). In *Ha 2003*, the court held that judicial economy and efficiency would be hindered by trying the insurance coverage dispute in a non-bankruptcy forum because the Bankruptcy Court is already familiar with the parties, the factual core of the case, and many of the coverage issued involved. *Id*. The court further held that the efficiency and uniformity in the administration of the Bankruptcy Court proceedings would be harmed by trying the insurance dispute action in a non-bankruptcy forum. *Id*. at *8-9. The same reasoning holds true in the present case.

18. Accordingly, for this additional reason, Allied has failed to demonstrate "cause" for relief from the automatic stay.

### E. Any Purported Waiver of the Stay Is Unenforceable

21. Numerous courts have held that prepetition waivers of bankruptcy benefits, including waivers of the automatic stay, are unenforceable. *See In re Cole*, 226 B.R. 647, 652 (9th Cir. BAP 1998); see also *Fallick v. Kehr (In re Fallick)*, 369 F.2d 899, 904 (2d Cir. 1966) (stating that advance agreements to waive the benefits of bankruptcy are void); *In re Weitzen*, 3 F. Supp. 698, 698 (S.D.N.Y. 1933) ("The agreement to waive the benefit of bankruptcy is unenforceable. To sustain a contractual obligation of this character would frustrate the object of the Bankruptcy Act . . . ."); *In re Shady Grove Tech Ctr. Assocs. Ltd. P'ship*, 216 B.R. 386, 390 (Bankr. D. Md. 1998) ("self-executing clauses in pre-petition agreements purporting to provide that no automatic stay arises in a bankruptcy case are contrary to law and hence unenforceable, and . . . self-executing clauses in pre-petition agreements . . . to vacate the automatic stay are

likewise unenforceable."); *In re Southeast Fin. Assocs., Inc.*, 212 B.R. 1003, 1005 (Bankr. M.D. Fla. 1997) (recognizing that a prepetition waiver of bankruptcy benefits is not self-executing or binding on third parties); *In re Tru Block Concrete Prods., Inc.*, 27 B.R. 486, 492 (Bankr. S.D. Cal. 1983) ("It is a well settled principal that an advance agreement to waive the benefits conferred by the bankruptcy laws is wholly void as against public policy"); *In re Pease*, 195 B.R. 431, 435 (Bankr. D. Neb. 1996) (concluding that "any attempt by a creditor in a private pre-bankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable. The Bankruptcy Code pre-empts the private right to contract around its essential provisions, such [as] those found in 11 U.S.C. § 362.").

22. Accordingly, any purported waiver or release of the automatic stay, or waiver of the right to oppose Allied's motion for relief from the automatic stay, by the Debtors is void and unenforceable.

WHEREFORE, the Trustee respectfully requests that the Motion be denied.

Dated: June 9, 2010            SCHNADER HARRISON SEGAL & LEWIS LLP

/s/ *Kevin W. Coleman*
Kevin W. Coleman
Attorneys for Bradley D. Sharp,
Chapter 11 Trustee

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CALIFORNIA 94104-5501
TELEPHONE: 415-364-6700
FACSIMILE: 415-364-6785