| | | | |
|---|---|---|---|
| Case Title : | SK Foods, L.P. | Case No : | 09-29162 - D - 11 |
| | | Date : | 6/23/10 |
| | | Time : | 10:00 |

| | | |
|---|---|---|
| Matter : | [1784] - Motion/Application for Relief from Stay [TRM-1] Filed by Creditors Allied World Assurance Company (U.S.) Inc., Allied World National Assurance Company (Fee Paid $0.00) (jris) | UNOPPOSED |

| | |
|---|---|
| Judge : | Robert S. Bardwil |
| Courtroom Deputy : | Nancy Williams |
| Reporter : | Diamond Reporters |
| Department : | D |

**APPEARANCES for :**
**Movant(s) :**
    Creditor's Attorney - Kevin Kieffer
**Respondent(s) :**
    Trustee's Attorney - Christopher Hart

MOTION was :

Final ruling:

Allied World and AWAC (collectively "Allied World") seek relief from stay to commence and pursue litigation in the district court for rescission of a directors and officers liability insurance policy, for a declaration that an excess coverage policy either was never effectively issued or is also subject to rescission, and for other related relief. The court agrees with Allied World that granting this relief will promote judicial economy and prevent undue prejudice to Allied World, and that such considerations in this case outweigh any likely prejudice to the trustee from granting relief. Thus, the court intends to grant the motion with a limitation on enforcement of any monetary judgment, as proposed by Allied World.

A few months into this chapter 11 case, the court would have been more inclined to agree with the trustee that the more compelling considerations may have been the "breathing room" afforded a debtor in possession or trustee in the early stages of a case, avoidance of interference with administration of the case, and protection against depletion of estate assets in the defense of proceedings in another forum. The latter continues to be a concern, but the former lessen in significance as the case progresses.

The trustee suggests that Allied World's motion is premature in that, although he put it on notice of possible claims in July 2009, he has done nothing since then "to force Allied to honor the Policies and/or pay any claims." The court acknowledges that the trustee's counsel's July 27, 2009 letter (Exhibit 2 to declaration of Peter R. Lucier, filed May 26, 2010) was necessary to preserve the estate's right to tender claims. However, the letter explicitly stated that "claims within the meaning of the policy definitions have been asserted by the Trustee against companies and individuals insured under the above policies" (emphasis added), and added that "the Trustee will be asserting additional claims against the Insureds." The trustee's counsel set forth a long list of factual allegations, and concluded that this letter represented "the Trustee's tender and notice of the above claims and/or circumstances under the above policy." It is simply not credible for the trustee now to state that "[t]o the best of [his] knowledge, no proceeding is pending under which Allied could be compelled to cover any claim made under the Policies." Further, the trustee's argument in favor of delay overlooks the near certainty that evidence will be harder to secure as time

passes, that the financial ability of the proposed defendants to respond to a judgment is uncertain, and that a litigant's interest in a prompt determination of its rights and responsibilities is itself deserving of protection.

Also on Allied World's side of the scale are its contentions that this court would not have jurisdiction over the 30 non-debtor defendants and that the rescission action is not a core proceeding, so that this court would be unable to render a final judgment. It is unnecessary that the court determine either of these issues at this time. Certainly, if the matter were litigated in this court, both issues would be hotly contested, and there would remain the "considerable risk that after resolution of the claim by the bankruptcy court, these issues would be revisited by the losing party in the district court." Santa Clara County Fair Ass'n v. Sanders (In re Santa Clara County Fair Ass'n), 180 B.R. 564, 566 (9th Cir. BAP 1995). Further, the court does not share the trustee's view of the extent of commonality between the factual issues raised in the rescission complaint and those this court has previously encountered in the chapter 11 case and adversary proceedings. Thus, the court is not persuaded that it is any better suited than the district court to handle the rescission action.

In short, if the stay is not lifted and Allied World proceeds in this court as against the debtors and the non-debtor defendants, there is the risk that the matter would need to be relitigated in the district court. If the stay is not lifted and Allied World decides to proceed on a double track here against the debtors and in the district court against the non-debtors, the resources of both courts would be required to resolve the same issues. Thus, lifting the stay would further the goal of judicial economy. If the stay is not lifted, there would also be a real risk of inconsistent results.

The concern that estate assets would be depleted by the expenses of litigating in another court generally weighs against lifting the stay. The trustee adds that in this case, he would have to incur legal fees "before it is clear that the estate will be benefitted" thereby. He points to the provision in the currently proposed joint plan that the breach of fiduciary duty claim against Scott Salyer would be assigned to the Bank Group, and that the liquidating trust would need to reimburse the Bank Group if excess amounts of its cash collateral are used, such that estate funds used to litigate the rescission claims at this time might ultimately benefit only the Bank Group. However, the joint plan proponents chose to structure this aspect of the plan in this fashion knowing of the potential rescission claims. Further, this argument requires far too much speculation for the court to give it as much weight as the detriment to Allied World from delaying a determination of its rights and responsibilities under the policies. The trustee also argues that if the stay is lifted, the estate may be required to expend funds when ultimately, "certain claims . . . may be resolved in a manner that does not require tender of a claim" under the policies, and that Allied World seeks to liquidate pre-petition claims against the estate when there may be no estate funds to pay those claims, such that liquidation of those claims would be unnecessary. These arguments also are entirely speculative.

In the court's view, the joint plan would be funded virtually entirely by the proceeds of litigation, much of which is likely to implicate the insurance policies. Thus, completion of the plan will necessarily entail incurring legal costs to resolve the issues raised by Allied World. That circumstance, together with the trustee's counsel's correspondence in both July and December of 2009 and the letter of counsel for the farm entities (Exhibits 1, 2, 4 to declaration of Terrence R. McInnis, filed June 16, 2010) lead the court to conclude that it is far more likely than not that claims will be made against the policies and that the rescission issues will need to be decided at some point. Further, if the stay is not lifted, Allied World may decide to file suit in this court and the trustee would have to expend funds to litigate these matters in any event.

Finally and importantly, the court finds that the resolution of outstanding issues such as the availability of insurance coverage will lend clarity to the plan and disclosure statement. Especially now that the chapter 11 case is over a year old and the court and creditors are being asked to consider a plan funded through the proceeds of litigation, these issues need to be resolved one way or the other, and the court sees no valid purpose to be served by delay.