

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

FILED
JAN 27 2011
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 09-29162-D-11 |
| SK FOODS, L.P., | Docket Control No. SH-75 |
|     Debtor. | Date: January 24, 2011<br>Time: 9:30 a.m.<br>Dept: D |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

## MEMORANDUM DECISION

On September 29, 2010, the chapter 11[1] trustee in this case, Bradley D. Sharp (the "trustee"), filed a Motion to Approve Compromise Between Trustee and Certain Holders of Unliquidated Claims Pursuant to Federal Rule of Bankruptcy [Procedure] 9019 (the "Motion"). The Motion was heard and continued, and on December 22, 2010, the trustee filed an Amended Agreement for Allowance of Claims ("Amended Agreement"), by which the proposed compromise was modified, as discussed below. For the reasons set forth below, the court will grant the Motion.

### I. THE COMPROMISE

The claims proposed to be compromised are those of certain entities that, prior to the commencement of this chapter 11 case,

---

1. Unless otherwise indicated, all Code, chapter, and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

had been engaged in litigation against the debtor. The claimants are:

(1) Bruce Foods Corp., Cliffstar Corp., Diversified Foods and Seasonings, Inc., and Four In One Co. Inc. (the "Class Representatives"), each on behalf of themselves and in their capacities as representatives of a class of similarly situated purchasers of tomato paste and other products described in Case Nos. 08-cv-03017 MCE, 08-cv-03074 MCE, 09-cv-00027 MCE, and 09-cv-00442 MCE, pending in the United States District Court for the Eastern District of California (the "Class Claims"), and

(2) Morning Star Packing Company, Inc. ("Morning Star"), a competitor of the debtor.

These parties have filed proofs of claim in this case in unspecified amounts; however, they have informally provided estimates to the trustee asserting claims: (1) for the Class Claims, in excess of $100 million,[2] not including treble damages, punitive damages, or attorney's fees to which they may be entitled, and (2) for Morning Star, at least $140 million, not including treble damages, punitive damages, or attorney's fees.

As reflected in the Amended Agreement, the compromise provides that each of the Class Claims and the Morning Star claim will be allocated into two allowed claims -- (a) a non-subordinated, liquidated general unsecured claim entitled to the same economic treatment as any other allowed non-subordinated general unsecured claim, and (b) a subordinated, liquidated

---

2. However, in his supplemental declaration, the trustee presents an analysis suggesting that the Class Claimants' actual damages may be in the range of $45.48 million.

general unsecured claim.[3] The amounts of these claims will be:

|  | Non-Subordinated Claims | Subordinated Claims |
|---|---|---|
| Bruce Foods Corp. | $2.65 million | $14.85 million |
| Cliffstar Corp. | $2.65 million | $14.85 million |
| Diversified Foods | $2.65 million | $14.85 million |
| Four In One Company | $2.65 million | $14.85 million |
| Morning Star | $7.65 million | $43.35 million |

## II. THE POSITIONS OF THE PARTIES

The trustee contends the compromise is fair and equitable under applicable Ninth Circuit standards. The court agrees; application of the relevant factors will be discussed below.

Scott Salyer ("Salyer"), president of SK PM Corp., general partner of debtor SK Foods, L.P., together with various entities related to Salyer (collectively, the "Salyer entities") oppose the Motion. They contend that (1) the trustee has failed to make a prima facie showing of the relevant factors, and (2) the

---

3. The parties originally agreed to compromise these claims at (1) for purposes of voting on a plan of reorganization, a total of $70 million for the Class Claims and $121 million for Morning Star, and (2) for purposes of distribution, a total of $10.5 million for the Class Claims and $18.15 million for Morning Star. In other words, the claims would be allowed at one amount for purposes of voting and a much lower amount for purposes of distribution -- an amount equal to 15% of the voting amount.

At the initial hearing, the court expressed its concern that allowing the claims at one amount for distribution purposes but at an amount more than six times higher for voting purposes appeared designed to manipulate the voting process; that is, it appeared to give these claimants voting power disproportionate to their true economic interests in the case and unfairly greater than the voting power of the other general unsecured creditors.

In response to the court's concerns, the trustee, the Class Representatives, and Morning Star modified the compromise as reflected in the Amended Agreement. The Amended Agreement addresses the court's concerns with the original agreement.

- 3 -

trustee's goals would be better met by estimating the claims.[4] [5]

As with the trustee's earlier compromise with the Bank of Montreal, it is significant that no other parties have objected to the compromise, and that the Committee and the Bank of Montreal support the compromise.

The court finds that the Amended Agreement is no less favorable to all holders of claims than the compromise as originally proposed, in that its terms do not affect any creditor adversely, as compared with the original compromise, and thus, no further notice is required.

### III. ANALYSIS

This court has jurisdiction over the request pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). The request is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O).

#### A. Applicable Legal Standards

"The law favors compromise and not litigation for its own sake, and as long as the bankruptcy court amply considered the

---

4. In response to the original compromise, the Salyer entities also contended that (1) the allowance of the claims for voting purposes at over 600% of their allowed amounts for distribution purposes was not permitted by the Code, and (2) the trustee had not justified class treatment of the claims. The first of these objections has been resolved by the Amended Agreement; the second, by the trustee's separate motion for class certification of the claims. The Salyer entities' objection to the class certification motion will be addressed in the court's decision on that motion.

5. In a portion of their argument, the Salyer entities discuss the Morning Star claim separately from the Class Claims. However, the substance of the arguments is the same, and the court finds no reason to distinguish the Morning Star claim from the Class Claims for purposes of this decision. Thus, the decision is to be taken as applicable to both the Morning Star claim and the Class Claims, even though the court may refer, for particular examples, only to one or the other.

Case 09-29162    Filed 01/27/11    Doc 2728

various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986). "Rather than an exhaustive investigation or a mini-trial on the merits, the bankruptcy court need only find that the settlement was negotiated in good faith and is reasonable, fair and equitable." Spirtos v. Ray (In re Spirtos), 2006 Bankr. LEXIS 4894 at *32 (9th Cir. BAP 2006). The court's "proper role is 'to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" Id., quoting In re Pacific Gas & Elec. Co., 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004).

**B.   The Compromise is Fair and Equitable**

Although the bankruptcy court has "great latitude in approving compromise agreements," it may approve a compromise only if it is "fair and equitable." In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988), citing A & C Properties, 784 F.2d at 1381. In making this determination, the court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

Id.

In their opposition, the Salyer entities address only the first of these factors -- the probability of success in the litigation; in this regard, they complain that the evidence offered by the trustee is insufficient to make a prima facie showing. First, the Salyer entities challenge the trustee's

reliance on a plea agreement entered into between the Government and Randall Lee Rahal, on the basis that the agreement does not contain a sworn statement and constitutes inadmissible hearsay. Second, they contend the trustee "improperly assumes the truth" of the allegations in the proofs of claim filed by the Class Representatives "without having adequately investigated the merits of the Class Action claims and what possible defenses SK Foods may have against such claims."[6]

These objections represent a misunderstanding of the court's role in ruling on a compromise. The court is not required to rule on disputed issues of fact, but only to canvas the issues. Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 423 (9th Cir. BAP 1997). Thus, the court need not determine whether the charges against Rahal, as set forth in the plea agreement, are true; with that said, it is noteworthy for purposes of this decision that at least one individual alleged to have been heavily involved with the debtor has agreed to plead guilty to charges of racketeering, money laundering, and price fixing allegedly committed while he was an agent and director of the debtor. Indeed, the trustee has asserted and the defendants have not denied that four other individuals have plead guilty to similar charges.[7]

---

6. Objection to Motion to Approve Compromise Between Trustee and Certain Holders of Unliquidated Claims Pursuant to Federal Rule of Bankruptcy [Procedure] 9019, filed October 13, 2010 ("Objection"), at 4:4-7.

7. Memorandum of Points and Authorities in Support of Motion to Approve Compromise Between Trustee and Certain Holders of Unliquidated Claims Pursuant to Federal Rule of Bankruptcy [Procedure] 9019, filed September 29, 2010 ("Memorandum"), at 2, n.2. The defendants themselves, in their motion to stay the trustee's adversary proceedings against them, brought to the
(continued...)

Case 09-29162   Filed 01/27/11   Doc 2728

The charges are outlined in considerable detail in the exhibit to the Rahal plea agreement -- they are substantially similar to the allegations of the Class Claims. Further, the trustee and the court are aware and the Salyer entities have not disputed that Salyer is facing similar charges. It was appropriate for the trustee to consider the fact that these charges have been brought and that at least five alleged participants have plead guilty. These factors clearly have a bearing on the trustee's expectations of the likelihood of success if he were to litigate the Class Claims.

Similarly, the trustee does not contend and the court need not determine that the proofs of claim are "proof" of the validity of the claims. Instead, the trustee correctly observes that the Class Representatives assert significant claims against the estate based on factual allegations that are virtually the same as the criminal charges that have been brought against several individuals associated with the debtor, to which at least five have plead guilty. The trustee also considered a declaration of FBI Special Agent Paul S. Artley containing an extremely detailed description of some of the evidence gathered during the Government's investigation. The trustee points out that there have been no facts offered that would appear to weaken

---

7.(...continued)
court's attention that criminal charges had been brought against not only Salyer but "ten other criminal defendants," alleging a pattern of racketeering activity in violation of the RICO statutes. Defendants' Motion to Stay Adversary Proceedings, filed April 28, 2010, at 7. The defendants submitted in support of that motion copies of the informations against Salyer and six of those other defendants. The Government's allegations in those documents track those made by the Class Representatives.

the Government's charges. Considering all these factors, the court concludes, with the trustee, that "there is a material risk that if the matter were litigated, SK Foods would be found to have engaged in the bribery and price-fixing activities that are the source of the Class Representatives' damage claims."[8]

Finally, the Salyer entities complain that the trustee has offered no factual basis for his conclusions as to the likely amounts of the Class Representatives' damages. On the contrary, the trustee provided an explanation of his figures in the Memorandum and considerably more detail in his reply to the Salyer entities' opposition. Given this level of detail, it is reasonable to conclude that the potential actual damages are very high. The Salyer entities have offered no contrary figures of their own and no reason to believe the potential damages are significantly lower than suggested by the trustee. Add to this that much of the conduct forming the basis of the Class Claims and Morning Star's claim is antitrust behavior for which treble damages and attorney's fees are generally available.

The trustee has succeeded in compromising these claims at amounts that are reasonable under all the circumstances, including, as discussed below, the likely costs of litigation, and the claimants have agreed to subordinate 85% of the allowed amounts of their claims to all other allowed claims. The subordination results in substantial benefit to the estate. The court concludes that the compromise amounts fall well within in the range of reasonableness.

---

8. Memorandum, at 8:20-22.

Importantly, the Salyer entities' argument views the probability of success in litigation of the Class Claims and the Morning Star claim in isolation and without any meaningful consideration of the other <u>A & C Properties</u> factors; namely, the complexity of the litigation and the associated expense, inconvenience and delay, and the paramount interests of the creditors. Litigation of the claims, with their allegations of price fixing, bribery, and racketeering, would require extensive testimony by many witnesses. The damages aspects of the claims would require extremely complex analyses of product pricing structures, market shares, and lost profits. These factors weigh heavily in favor of the compromise.

As with the Bank of Montreal compromise, the court returns to the theme of diminishing returns in a situation like this one, where the estate consists solely of cash and litigation claims; namely, that every dollar spent investigating and litigating is a dollar out of the pockets of creditors. And as with the Bank of Montreal claim, litigation of the Class Claims and the Morning Star claims could well be so costly as to deplete the estate entirely, even to the extent of leaving the estate administratively insolvent. It is important to remember that in litigating the Class Claims and the Morning Star claim, the trustee would not be pursuing assets but litigating the amounts of claims against the estate. Thus, even if he prevailed and reduced the claims to much smaller amounts -- for the sake of argument, to zero, the battle would be a meaningless exercise if there is nothing left for either the Class Claimants, Morning

Case 09-29162    Filed 01/27/11    Doc 2728

Star, or the other creditors.[9] This cost-benefit analysis weighs heavily in favor of the compromise.

Next, the district court has ordered "a stay of all further bankruptcy proceedings where Appellants [the Salyer entities] make a credible showing that discovery from or testimony of Scott Salyer or his criminal counsel is relevant to the proceedings."[10] The stay would extend to the Class Claims and the Morning Star claim, with the result that discovery likely would not commence for several months, if not years, with trial even farther in the future.[11] This factor weighs in favor of the compromise.

Finally, the compromise serves the paramount interests of creditors and reflects a proper deference to their reasonable views. No parties other than the Salyer entities have opposed the compromise. Given that there is no evidence that the trustee would be likely to prevail in the litigation, the certainty that litigation would be expensive and time-consuming, and the likelihood that even a successful outcome would be substantially offset by the costs of achieving it, the court concludes that the

---

9. "Basic to this process [of assessing a compromise] in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). In this case, even successful litigation might well result in no reward at all to creditors.

10. Sharp v. SSC Farms 1, LLC (In re SK Foods, L.P.), CIV. NO. S-10-1492 (E.D. Cal.), Order, filed December 10, 2010.

11. The putative class actions have already been pending in the district court for over two years, but because of a series of stipulated stays, no discovery has been undertaken, the plaintiffs have not yet sought certification of the class, and the parties have not commenced settlement discussions. See Joint Status Report, filed July 16, 2010 in Four in One Company, Inc. v. SK Foods, L.P., Case No. CIV S-08-3017.

compromise is clearly well within the bounds of reasonableness and is fair and equitable.

### C. The Compromise is Preferable to Estimation

The Salyer entities contend the Motion should be denied because the trustee has failed to consider estimation of the claims under § 502(c) as an alternative to the compromise.

> The Trustee does not offer any explanation of why this remedy was not pursued, the cost-benefit analysis of such an approach, and what impact, positive or negative, there would be on distributions from such an approach.[12]

In the court's view, the answer is simple. The compromise is far preferable to estimation, at least in this case, because it will avoid the need for, if not a trial, at least a certain amount of discovery and an evidentiary hearing that would likely be required for the court to be in a position to estimate the claims. Discovery would be subject to the district court's stay order, and thus, the estimation process could be years down the road. Further, there is no reason to suppose that estimating what could be over 200 claims on an individual basis would not be as costly and time-consuming as individual trials. The Salyer entities have not suggested and the court can conceive of no possible benefit to be gained by estimating the claims rather than compromising them.

/ / /
/ / /
/ / /
/ / /

---

12. Objection, 11:10-12.

Case 09-29162    Filed 01/27/11    Doc 2728

## IV. CONCLUSION

The court concludes that all the relevant <u>A & C Properties</u> factors weigh in favor of the compromise,[13] and thus, that the compromise is fair and equitable.

The court will enter an appropriate order.

Dated: Jan. 27, 2011

*Robert Bardwil*
ROBERT S. BARDWIL
United States Bankruptcy Judge

---

13. The second factor -- the difficulties to be encountered in collection -- is not relevant as the trustee would not be pursuing affirmative claims but defending the estate from claims against it.

- 12 -

**CERTIFICATE OF MAILING**

I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Kevin Coleman
Schnader Harrison Segal & Lewis
One Montgomery Street, Ste. 2200
San Francisco, CA 94104- 5501

Marc Levinson
Orrick Herrington & Sutcliffe
400 Capitol Mall, Suite 3000
Sacramento, CA 95814-4497

Jaime Dreher
Downey Brand, LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814-4731

Andrea Miller
Nageley Meredith & Miller
8001 Folsom Blvd., Suite 100
Sacramento, CA 95826

Eric Winston
Quinn Emanuel Urquhart & Sullivan
50 California Street, 22nd Floor
San Francisco, CA 94111

Malcolm Segal
Segal & Kirby, LLP
770 L Street, 1440
Sacramento, CA 95814

Julie Oelsner
Weintraub Genshlea Chediak
400 Capitol Mall, 11th Fl.
Sacramento, CA 95814

Bank of Montreal
c/o Ann Acker
Chapman and Cutler
111 W Monroe Street
Chicago, IL 60603

Paul Pascuzzi
Felderstein Fitzgerald
  Willoughby & Pascuzzi
400 Capitol Mall, Suite 1450
Sacramento, CA 95814

DATE: January 27, 2011

_____
Deputy Clerk