FILED
June 01, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003534366

**6 PAGES**

Gregory C. Nuti (CSBN 151754)
gnuti@schnader.com
Christopher H. Hart (CSBN 184117)
chart@schnader.com
Natalie Bush-Lents (CSBN 253124)
nbush-lents@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

Attorneys for Chapter 11 Trustee, Bradley D. Sharp

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>SK FOODS, L.P., a California limited partnership,<br><br>            Debtor. | Case No. 09-29162-D-11<br><br>Chapter 11<br><br>**DC No. SH-106** |
| In re :<br><br>RHM INDUSTRIAL/SPECIALTY FOODS, INC., a California Corporation, d/b/a Colusa County Canning Co.,<br><br>            Debtor. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO APPROVE COMPROMISE OF CONTROVERSY BETWEEN TRUSTEE AND CADMASTER TECHNOLOGIES LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**<br><br>Date: June 15, 2011<br>Time: 10:00 a.m.<br>Place: Courtroom 34<br>       501 I Street, 6th Floor<br>       Sacramento, CA 95814<br>Judge: Hon. Robert S. Bardwil |

Bradley D. Sharp (the "Trustee"), the duly appointed and acting Chapter 11 trustee for SK Foods, L.P., a California limited partnership ("SK Foods"), and RHM Industrial/Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co. ("RHM" and collectively with SK Foods, the "Debtors"), moves this Court for an order approving compromise, pursuant to Federal Rule of Bankruptcy Procedure 9019, between the Trustee and Cadmaster Technologies LLC ("Cadmaster"). The terms of the compromise are fully set forth in the agreement attached as Exhibit A to the declaration of Bradley D. Sharp filed herewith (the "Settlement Agreement").

## I. BACKGROUND

On May 5, 2009 ("Petition Date"), involuntary bankruptcy petitions were filed against Debtors SK Foods and RHM. SK Foods and RHM commenced the above-referenced bankruptcy case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on May 7, 2009. On May 18, 2009, the Court entered an order appointing Bradley D. Sharp as the Chapter 11 Trustee for the Debtors, and since that time, he has assumed control over the Debtors' property and affairs pursuant to Section 1104 of the Bankruptcy Code.

Prior to the Petition Date, Cadmaster provided services to the Debtors. The Trustee alleges that within ninety (90) days prior to the Petition Date (the "Preference Period"), Debtors made a series of payments by check or wire transfer ("Transfers") to Cadmaster totaling $24,030.00 (the "Preference Payments").

On April 6, 2011, the Trustee mailed a demand letter to Cadmaster asserting that the Trustee could avoid and recover the Transfers as preferential payments, pursuant to Section 547(b) of the Bankruptcy Code (the "Trustee's Demand"). Cadmaster asserts defenses under 11 U.S.C. § 547.

The parties have met and conferred and now desire to end their dispute and in good faith reach a resolution as to all current and future demands or claims between the Trustee and Cadmaster related to the Preference Payments.

## II. SUMMARY OF COMPROMISE

The Trustee and Cadmaster agree to a mutual release of claims related to the Preference Payments. Under the Settlement Agreement, Cadmaster agrees to pay the Trustee $15,000.00 and

to waive any claim to which it might have been entitled under 11 U.S.C. §502(h) resulting from satisfying the Trustee's preference demand. The parties are to pay their own fees and costs.

### III. APPLICABLE LEGAL STANDARD

By this motion, the Trustee seeks entry of an order approving the Settlement Agreement with Cadmaster. A compromise should be approved only if the Court finds "that the compromise is fair and equitable." *In re A&C Properties,* 784 F.2d 1377, 1381 (9th Cir. 1986). In determining the fairness and adequacy of a proposed settlement agreement, the Court should consider:

> "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of creditors . . ." *Id.*

***Probability of Success:*** The Trustee believes he could successfully recover a portion of the preference payments through litigation against Cadmaster. However, Cadmaster asserts an ordinary course of business defense to the preference action, and litigation always involves the risk of an adverse ruling. A *prima facie* claim under 11 U.S.C. §547 is established where there is a transfer that: (1) benefits a creditor; (2) is on account of antecedent debt; (3) is made while the debtor was insolvent; (4) is within 90 days of bankruptcy; and (5) enables the creditor to receive a larger share of the estate than if the transfer had not been made. *Union Bank v. Wolas,* 502 U.S. 151 (1991).

Cadmaster asserts that the Transfers are not avoidable as preferences under section 547(c)(2) because the payments were made in the ordinary course of business. The so-called 'ordinary course of business' defense involves a two-part subjective and objective inquiry. To qualify for "ordinary course of business" protection, a creditor must show: (1) the debt and its payment were "ordinary" in relation to past practices between the debtor and the creditor (§ 547(c)(2)(A) & (B), the "subjective test"); or (2) the payment was "ordinary" in relation to prevailing business standards (§ 547(c)(2)(C), the "objective test"). The subjective test looks at the time between invoice and payment and compares the average days during the preference period with the historic average between the debtor and creditor. *In re Healthcentral.com,* 504

2

PHDATA 3386587_1
MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO APPROVE COMPROMISE OF CONTROVERSY

F.3d 775, 790 (9th Cir. 2007). The case, *In re Grand Chevrolet, Inc.*, 25 F.3d 728, 732 (9th Cir. 1994) prescribed four nonexclusive factors to consider in the subjective test:

> 1) the length of time the parties were engaged in the transactions at issue;
> 2) whether the amount or form of tender differed from past practices;
> 3) whether the debtor or creditor engaged in any unusual collection or payment activity; and
> 4) whether the creditor took advantage of the debtor's deteriorating financial condition.

These factors do not constitute a "bright line" test and the inquiry is particularly fact sensitive. *See In re Ahaza Systems, Inc.*, 482 F.3d 1118 (9th Cir. 2007).

Under the objective test, preference period payments are not avoidable to the extent that they comport with practices common to businesses similarly situated to the debtor and creditor. *In re Jan Weilert RV, Inc.*, 315 F.3d 1192, 1197 (9th Cir. 2003). The parties' behavior is judged against the industry's 'broad range' of practices. "Only a transaction that is so unusual or uncommon as to render it an aberration in the relevant industry falls outside the broad range of terms encompassed by the meaning of ordinary business terms." *Jan Weilert RV, Inc.*, 315 F.3d at 1198. BAPCPA included a "substantial broadening of the ordinary course of business defense" by requiring that a transfer meet either the subjective or the objective test, while pre-BAPCPA law required that a transfer meet both tests to assert a successful defense. *See In re SGSM Acquisition Co., LLC,* 439 F. 3d 233, 237 n.1, n.4 (5th Cir. 2006).

The Trustee looked at the average number of days that the Debtors historically waited to pay Cadmaster and compared this figure with the average during the preference period. The average number of days between the invoice date and the payment date increased from 29 days to 78 days during the preference period. The payment history included a few payments that were made as far out as 114 and 116 days. The Trustee weighed the possibility that these late payments might constitute an 'ordinary course of business' between the Debtors and Cadmaster, and determined that there was a chance Cadmaster could prevail on its ordinary course of business defense.

Avoiding litigation costs was a significant factor considered by the Trustee in entering into the Settlement Agreement with Cadmaster. The Trustee anticipates he would incur between

$5,000 and $10,000 in litigation costs to initiate litigation against Cadmaster and proceed to judgment. Accordingly, the Trustee determined that settling without the need to initiate litigation was a favorable result for the estate.

***Likelihood of Collection:*** The Trustee believes the Transfers, or Preference Payments, would be collectable. The proposed settlement, however, avoids any delay in collection.

***Litigation Complexity and Expense:*** The legal theories on which any potential litigation would be based are not overly complex. The costs, however, associated with obtaining a judgment on this form of dispute are disproportionate to the amounts in controversy. Avoiding litigation costs by settling the dispute prior to filing an adversary proceeding was a key factor in the Trustee's decision to enter into the Settlement Agreement.

***Interests of Creditors:*** The Trustee believes the interests of creditors are better served by resolving the dispute under the proposed terms, than initiating litigation against Cadmaster and risking an adverse ruling. Furthermore, resolving this dispute for a near-immediate payment of $15,000 represents a reasonable compromise that avoids further fees and costs, including attorneys' fees. *See Declaration of Bradley D. Sharp*, attached hereto and filed herewith.

## IV.   CONCLUSION

The Trustee believes that the compromise is in the best interests of creditors and the estate and should be approved.

WHEREFORE, the Trustee prays that the Court make and enter its Order:

1.   Determining that, under the circumstances, parties in interest have received adequate notice and an opportunity to be heard;

2.   Approving the compromise with Cadmaster in the form as attached to the Declaration of Bradley D. Sharp, filed herewith; and

///

///

///

3. Granting such other or further relief as the Court deems just and proper.

Dated: June 1, 2011                    SCHNADER HARRISON SEGAL & LEWIS LLP


By: /s/ *Natalie Bush-Lents*
    Natalie Bush-Lents
    Attorneys for Bradley D. Sharp,
    Chapter 11 Trustee