FILED
August 15, 2011
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
0003703728

[8]

DEAN M. GLOSTER, State Bar No. 109313
MARK D. PETERSEN, State Bar No. 111956
KELLY A. WOODRUFF, State Bar No. 160235
FARELLA BRAUN + MARTEL LLP
235 Montgomery Street, 17th Floor
San Francisco, California 94104
Telephone:  (415) 954-4400
Facsimile:   (415) 954-4480
dgloster@fbm.com
mpetersen@fbm.com
kwoodruff@fbm.com

Attorneys for Defendants
Scott Salyer as Trustee of the Scott Salyer Revocable Trust, SKPM Corp., SK Foods, LLC, SKF Canning, LLC, Scott Salyer Revocable Trust, Blackstone Ranch Corporation, Monterey Peninsula Farms, Salyer Management Company, LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS Farms, LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III, LLC, SKF Aviation, LLC and CSSS LP dba Central Valley Shippers

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>SK FOODS, LP, a California limited partnership,<br><br>        Debtor. | Case No. 09-29162<br><br>Chapter 11<br><br>[SH-119]<br><br>Date:         August 31, 2011<br>Time:        10:00 A.M.<br>Courtroom:  34<br>                  501 "I" Street, 6th Floor<br>                  Sacramento, CA<br>Judge:       Hon. Robert S. Bardwil |

RESPONSE TO TRUSTEE'S MOTION TO SET
STATUS CONFERENCE

27019\2710587.3

# RESPONSE TO TRUSTEE'S MOTION TO SET STATUS CONFERENCE TO SCHEDULE FURTHER PROCEEDINGS RELATED TO REMAND OF ORDERS EXCLUDING BRINCKO DECLARATION AND GRANTING BMO COMPROMISE

In the Trustee's Motion to Set a Status Conference ("Motion"), the Trustee requests a status conference to schedule further proceedings on his motion to approve a compromise with the Bank of Montreal ("BMO"). Defendants Scott Salyer as Trustee of the Scott Salyer Revocable Trust, SKPM Corp., SK Foods, LLC, SKF Canning, LLC, Scott Salyer Revocable Trust, Blackstone Ranch Corporation, Monterey Peninsula Farms, Salyer Management Company, LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS Farms, LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III, LLC, SKF Aviation, LLC and CSSS LP dba Central Valley Shippers (collectively, the "Salyer Non-Debtor Entities") hereby oppose the Trustee's Motion because the request is premature and fails to consider that the bases for the Trustee's original motion to approve a compromise with BMO have fundamentally changed.

The Salyer Non-Debtor Entities respectfully assert that (1) an evidentiary hearing is unnecessary until the Settlement (as defined below) is substantially renegotiated and revised, because conduct of BMO after the date of the first approval of the Settlement has made it abundantly clear that the Settlement cannot be approved under controlling law; (2) any further proceedings should only be scheduled after an opportunity to negotiate a revised settlement consistent with the Trustee's fiduciary duty to protect creditors other than BMO; (3) any examination of John P. Brincko sought by the Trustee should be conditioned on this Court's modification of the preliminary injunction to permit payment by the Salyer Non-Debtor Entities of Mr. Brincko's fees and expenses; and (4) the Court should also, at the proposed status conference, set a schedule of discovery from BMO relevant to grounds for equitable subordination, waiver of its real property security and disgorgement, which are important to a determination of whether the Settlement (or any renegotiated and revised settlement) meets the requirements for approval as a compromise in controversy under controlling law.

## I. BACKGROUND

BMO is the principal secured creditor of the bankruptcy estate, as the lead agent for banks that lent Debtors almost $200 million, secured by certain of the Debtors' assets. BMO also asserts a "super priority claim" of between $22 million and $59 million, as a result of alleged diminution in value of its collateral when the Trustee sold substantially all operating assets of the Debtor.

On September 29, 2010, the Trustee filed a motion to approve a compromise with BMO pursuant to Federal Rules of Bankruptcy Procedure 9019. After hearing, the Trustee and BMO entered into a revised settlement agreement, and submitted the new agreement to the Court for approval on November 3, 2010 (as revised, the "Settlement"). The Settlement gave BMO, among other things, an agreed upon $27.66 million "super priority claim." The Settlement was expressly entered into based on the Trustee's assumption that BMO had a first priority secured claim in all of the estate's assets and that the estate had no claims and cause of action against BMO. The Settlement transferred to BMO certain claims and causes of action of the estate, including the "breach of fiduciary duty litigation," Sharp v. Salyer, et. al., Adv. No. 10-02015 (the "Fiduciary Duty Litigation"), in which Sharp was suing Scott Salyer, the Scott Salyer Revocable Trust, and SKPM Corp. for breach of fiduciary duty. From any recoveries on that litigation, BMO was to apply proceeds against its super priority claim so that when that claim was paid, eventually there might be recovery for unsecured creditors. The Settlement did not, however, assign to BMO any interest in the separate litigation Sharp v. Salyer, et. al., Adv. No. 10-02014 (the "Alter Ego/Substantive Consolidation Litigation"), in which the Trustee was suing Scott Salyer, the Scott Salyer Revocable Trust and SKPM Corp. (and other defendants) for substantive consolidation, alter ego, fraudulent transfers, turnover, and declaratory relief. Under the Settlement, any recovery on the Alter Ego/Substantive Consolidation Litigation was to be split so that a portion was available to pay the claims of BMO and some was available to pay the claims

of other creditors.[1] Footnote 5 of the Settlement expressly allowed BMO to retain BMO's separate assets and claims and recoveries on any of them.

The Salyer Non-Debtor Entities objected to the Settlement on various grounds. In particular, the Salyer Non-Debtor Entities engaged an expert, John P. Brincko, to analyze the value of BMO's prepetition collateral in order to determine the extent, if any, of the diminution in value of that collateral during the pendency of the bankruptcy case that might give rise to a super priority claim.

The Court granted BMO's motion in limine to exclude the declaration of Mr. Brincko as untimely and approved the settlement between the Trustee and BMO. The Salyer Non-Debtor Entities appealed to the District Court. On July 11, 2011, the District Court, Judge Karlton, held that the exclusion of the Brincko Declaration was an abuse of discretion, and that the error was not harmless. Request for Judicial Notice ("RJN") Ex. A (Order on BMO Settlement), at 17-22. Accordingly, the District Court vacated the order approving the compromise and remanded the matter to this Court to consider the Brincko testimony. *Id.* at 23.

On July 20, 2011, the Trustee filed the instant Motion (Dkt. No. 3127), in which he seeks to schedule the deposition of Mr. Brincko and set an evidentiary hearing at which Mr. Brincko can be cross-examined. Despite this request, the Trustee takes the position that the Salyer Non-Debtor entities cannot pay Mr. Brincko for his demanded services. Thus, the Salyer Non-Debtor Entities filed their Motion to Authorize Payment of Fees and Costs of John Brincko on Monday, August 8, 2011. The Salyer Non-Debtor Entities' Motion is also set to be heard by this Court on August 31, 2011.

On June 13, 2011, BMO filed an action in the District Court for the Northern District of California, San Jose Division, Case No. 11-CV-80133 (the "San Jose Action"), seeking to domesticate a foreign judgment it had obtained on a guaranty from an affiliate of the Debtor, SK Foods, LLC. In the San Jose Action, BMO filed a motion on June 27, 2011, seeking to hold Scott Salyer, the Scott Salyer Revocable Trust and SKPM Corp. liable for the judgment debt of SK

---

[1] From any recoveries on these (and various other) assets, BMO was to receive the first $2.3939 million in recoveries, and then additional recoveries were to be split 80/20 between BMO and the rest of the creditors.

Foods LLC, as its alter ego (the "Alter Ego Motion".) RJN Ex. B. BMO did not seek relief from the automatic stay from this Court to pursue substantially identical claims to those owned and asserted by the Trustee against identical defendants in the Alter Ego/Substantive Consolidation Action. BMO did not provide notice to this Court or to the Court hearing the Alter Ego Motion that it was seeking relief in the San Jose Action that was the subject of the stay granted by this Court in the Alter Ego/Substantive Consolidation Action. And BMO did not provide notice of the filing of the San Jose Action or the Alter Ego Motion to the attorney for the unsecured creditors committee.

The effect of the Alter Ego Motion would be to pay BMO ahead of all other creditors out of the same assets of the same defendants BMO was to pursue on behalf of the estate in the Fiduciary Duty Litigation and to pay BMO ahead of all creditors and the estate on substantially the same claims and causes of action in the Alter Ego/Substantive Consolidation Action that are owned by the Trustee on behalf of all creditors.

## II. ARGUMENT

The Trustee is seeking to get Mr. Brincko's deposition set and over with quickly so that this Court can once again consider and, at the Trustee's renewed request -- directly contrary to his fiduciary duty to do otherwise -- approve the Settlement with BMO. The Salyer Non-Debtor Entities' response, in essence, is "not so fast."

*First*, the actions of BMO since the Settlement was first approved point out a glaring structural flaw in the Settlement: The economics for the estate are completely illusory, and BMO has a conflict of interest that will prevent it from pursuing claims that will result in any recovery for other creditors. After the Settlement granted BMO a grossly excessive super-priority claim, various recoveries were supposed to be applied to reduce that super-priority claim to permit eventual recovery by other creditors. Because BMO could pursue its own separate assets and claims for recovery against the same defendants, however, the result of the Settlement was that while the estate's claims would be stayed, BMO could recover in full on substantially identical claims against the same defendants (and apply the collections on any credit default swaps it purchased pursuant to its credit agreements) without reducing that super-priority claim by a dime.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

RESPONSE TO TRUSTEE'S MOTION TO SET
STATUS CONFERENCE

- 5 -

27019\2710587.3

*Second*, the Settlement was only justified originally by the Trustee because BMO was supposedly entitled to a first priority secured claim in all the assets of the estate and there were supposedly no claims against BMO on behalf of the estate. Those assumptions undergirding the Settlement are no longer true (if they ever were), and the Settlement can no longer be approved under the four-factor test of *Martin v. Kane (In re A & C Propserties)*, 784 F. 2d 1377, 1380-81 (9th Cir.), *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854 (1986.)

Specifically, BMO's actions, in willfully violating the automatic stay,[2] failing to inform the District Court of the existence of the stay of a similar action by the Trustee, and seeking to recover through the Alter Ego Motion ahead of all other creditors, constitutes serious inequitable conduct to the detriment of other creditors while in control of estate property, justifying equitable subordination of BMO's claims to full recovery by all other creditors. 11 U.S.C. § 510(c); *In re Filtercorp, Inc.*, 163 F.3d 570, 583 (9th Cir. 1998); *In re Mobile Steel Corp.*, 563 F.2d 692, 700 (5th Cir. 1977).

In addition, BMO's actions, in obtaining a judgment against an entity it now states (in the Alter Ego Motion) is the same as SKPM Corp., the general partner of the Debtor, was a violation of California's one-action rule. BMO's secured claim was secured by substantially all the assets of SK Foods, L.P., the bankruptcy debtor, including its real property. SKPM Corp. was the general partner of SK Foods, LP., and thus was liable for all of the obligations of the debtor. A borrower's general partner cannot waive the protections of the California one-action rule, Cal. Code Civ. Proc. § 726(a), which prohibits recovery of a deficiency judgment against a general partner guarantor until <u>after</u> a judicial foreclosure. Taking an action to recover before such a foreclosure waives the security for the debt. *Westinghouse Credit Corp. v. Barton*, 789 F. Supp. 1043, 1046 (S.D.N.Y. 1992); *Union Bank v. Dorn*, 254 Cal. App. 2d 157, 159 (1967).

---

[2] By stepping ahead of the estate in seeking to obtain all the assets of the defendants in its Alter Ego Motion, BMO is seeking to recover assets of the estate. BMO's attempt to pursue substantially identical claims to those owned by the Trustee on behalf of the estate in the Alter Ego/Substantive Consolidation action is an attempt to obtain possession of property of the estate or to exercise control over property of the estate in violation of 11 U.S.C. § 362(a)(3). *See also In re Davy Roofing*, 167 B.R. 604, 608 (C.D. Cal. 1994) (cannot pursue general alter ego claim in a way to interfere the trustee's ability to settle the same claim on behalf of the estate.)

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

*Third*, before setting a schedule for taking further discovery from Mr. Brincko, the Salyer Non-Debtor Entities' Motion to Authorize Payment of Fees and Costs of Mr. Brincko should be heard and granted. That Motion was filed on August 8, 2011, and is set to be heard on the same day as the present Motion, August 31, 2011. Once the Salyer Non-Debtor Entities are ensured that they may pay Mr. Brincko's fees and costs without violating the preliminary injunction, they will cooperate with the Trustee to reasonably set Mr. Brincko's deposition. The Trustee should not be permitted to compel testimony of an expert witness all the while insisting he not get paid.

*Finally*, at the time the Court sets a schedule for a deposition of Mr. Brincko, the Court should also set a schedule of discovery from BMO relevant to grounds for equitable subordination, waiver of its real property security interest, and disgorgement, all of which are relevant to whether the Settlement (or any renegotiated Settlement) can be approved. Only then, after discovery on all relevant issues has been completed and the parties have had the opportunity to analyze the evidence, should this Court consider the next step in addressing the District Court's remand of the Order approving the Trustee's compromise with BMO.

## III. CONCLUSION

For all the above reasons, (1) no further proceedings are necessary until the Settlement is substantially renegotiated and revised, because it clearly cannot be confirmed under the 4-factor *Martin* test; (2) prior to any deposition of Mr. Brincko, the Court should grant the Salyer Non-Debtor Entities' motion and authorize them to pay their expert witness $86,106.24 in reasonable and necessary fees and costs incurred to date and authorize the Salyer Non-Debtor Entities to pay Mr. Brincko's future fees and costs, by following the same procedures as are currently in place; and (3) any status conference should also schedule discovery from BMO relevant to grounds for

///

///

///

equitable subordination, waiver of its real property security interest, and disgorgement, all of which are relevant to whether the Settlement (or any renegotiated Settlement) can be approved.

Dated: August 15, 2011            FARELLA BRAUN + MARTEL LLP

By: /s/ *Kelly A. Woodruff*
    Kelly A. Woodruff

Attorneys for Defendants
Scott Salyer as Trustee of the Scott Salyer Revocable Trust, SKPM Corp., SK Foods, LLC, SKF Canning, LLC, Scott Salyer Revocable Trust, Blackstone Ranch Corporation, Monterey Peninsula Farms, Salyer Management Company, LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS Farms, LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC, SSC Farms III, LLC, SKF Aviation, LLC and CSSS LP dba Central Valley Shippers